☒ FILED    ☐ LODGED

**APR 08 2024**

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

Ernest Longhini, #335286
Name and Prisoner/Booking Number

ASPC Lewis - Barchey (6B-14L)
Place of Confinement

P.O. Box 70
Mailing Address

Buckeye, AZ 85326
City, State, Zip Code

**(Failure to notify the Court of your change of address may result in dismissal of this action.)**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Ernest Joseph Longhini, III
(Full Name of Petitioner)

Petitioner,

v.

Ryan Thornell
(Name of the Director of the Department of Corrections, Jailor or authorized person having custody of Petitioner),

Respondent,
and
The Attorney General of the State of Arizona,

Additional Respondent.

CV-24-785-PHX-DJH (CDB)

CASE NO. _____
(To be supplied by the Clerk)

**PETITION UNDER 28 U.S.C. § 2254
FOR A WRIT OF HABEAS CORPUS
BY A PERSON IN STATE CUSTODY
(NON-DEATH PENALTY)**

## PETITION

1. (a)  Name and location of court that entered the judgment of conviction you are challenging: Maricopa County Superior Court, 201 W. Jefferson, 2nd Floor, Phoenix, AZ 85003

   (b)  Criminal docket or case number: CR2016-000667-001

2. Date of judgment of conviction: February 7th, 2019.

3. In this case, were you convicted on more than one count or crime?    Yes ☒    No ☐

**530**

4. Identify all counts and crimes for which you were convicted and sentenced in this case: _(1) Child Sex Trafficking w/Minor 15-17 YOA (ARS 13-3212B2); (2) Involving or Using Minors in a Drug Offense (ARS 13-3409); (3-5) Attempted Sexual Assault (ARS 13-1405A); (6) Attempted Involving or Using Minors in a Drug Offense (ARS 13-3409)_

5. Length of sentence for each count or crime for which you were convicted in this case: _(1) 13.5 years; (2) 7 years; (3-6) Lifetime Probation_

6. (a) What was your plea?
   Not guilty ☐
   Guilty ☒
   Nolo contendere (no contest) ☐

   (b) If you entered a guilty plea to one count or charge, and a not guilty plea to another count or charge, give details: _N/A_

   (c) If you went to trial, what kind of trial did you have?  (Check one) Jury ☐ Judge only ☐  _N/A_

7. Did you testify at the trial?  Yes ☐  No ☒

8. Did you file a direct appeal to the Arizona Court of Appeals from the judgment of conviction?
   Yes ☐  No ☒

   If yes, answer the following:

   (a) Date you filed: _N/A_

   (b) Docket or case number: _N/A_

   (c) Result: _N/A_

   (d) Date of result: _N/A_

   (e) Grounds raised: _N/A_

**Attach, if available, a copy of any brief filed on your behalf and a copy of the decision by the court.**

9.  Did you appeal to the Arizona Supreme Court?   Yes ☐          No ☒

If yes, answer the following:

(a)  Date you filed: _____ *N/A* _____

(b)  Docket or case number: _____ *N/A* _____

(c)  Result: _____ *N/A* _____

(d)  Date of result: _____ *N/A* _____

(e)  Grounds raised: _____ *N/A* _____

_____

_____

_____

_____

**Attach, if available, a copy of any brief filed on your behalf and a copy of the decision by the court.**

10. Did you file a petition for certiorari in the United States Supreme Court?      Yes ☐        No ☒

If yes, answer the following:

(a)  Date you filed: _____ *N/A* _____

(b)  Docket or case number: _____ *N/A* _____

(c)  Result: _____ *N/A* _____

(d)  Date of result: _____ *N/A* _____

(e)  Grounds raised: _____ *N/A* _____

_____

_____

_____

_____

**Attach, if available, a copy of any brief filed on your behalf and a copy of the decision by the court.**

11. Other than the direct appeals listed above, have you filed any other petitions, applications or motions concerning this judgment of conviction in any state court?   Yes ☒          No ☐

If yes, answer the following:

3

(a)   First Petition.

    (1)   Date you filed: _November 16TH, 2020._

    (2)   Name of court: _Maricopa County Superior Court_

    (3)   Nature of the proceeding (Rule 32, special action or habeas corpus): _Rule 32_

    (4)   Docket or case number: _CR2016-000667-001 DT_

    (5)   Result: _Summary dismissal._

    (6)   Date of result: _January 25, 2022_

    (7)   Grounds raised: _(1) A Critical Defense of Guilty Except Insane Pursuant to A.R.S. § 13-502 Was Not Raised; (2) Petitioner's Constitutional Right to Confront His Accusers Was Violated; (3) The Prosecutor Committed Prosecutorial Abuse of Power; (4) It Was Inefective Assistance of Counsel When Counsel Did Not Raise the Defense of Petitioner's Mental Health in Litigation of the Case; (5) The Plea Entered by Petitioner Was Defective._

    _See Superior, Appeals, and Supreme Court decisions and briefs at "First Petition" attachment._

**Attach, if available, a copy of any brief filed on your behalf and a copy of the decision by the court.**

(b)   Second Petition.

    (1)   Date you filed: _February 13TH, 2024_

    (2)   Name of court: _The Supreme Court of the State of Arizona_

    (3)   Nature of the proceeding (Rule 32, special action or habeas corpus): _Habeas Corpus_

    (4)   Docket or case number: _HC-24-003_

    (5)   Result: _As 2nd petition has yet to complete State Court exhaustion, Petitioner respectfully requests that this petition be treated as a "Protective Petition" under Pace v. DiGuglielmo, 544 U.S. 408 (2005), until exhaustion completes._

    (6)   Date of result: _To Be Determined (TBD)_

    (7)   Grounds raised: _(1) A proper investigation into the facts relevant to sentencing was not accomplished under the strictures of State v. Blanton, 173 Ariz. 517 (1992), and State v. Cazares, 205 Ariz. 425 (2003); (2) Sentencing error occured due to impedement of unconstitutional statute A.R.S. § 13-4433(B), abrogated by Arizona Attorneys for Criminal Justice v. Ducey, 2022 WL 16631088 (11/2/22); (3) Sentencing error rose to the level of "reasonable probability" that sentence would have been different if not for said error (United States v. Gonzalez-Aguilar, 718 F.3d 1185 (9TH Cir. 2013))._
_See copy of petition at "Second Petition" attachment._

**Attach, if available, a copy of any brief filed on your behalf and a copy of the decision by the court.**

4

(c)  Third Petition.

    (1)  Date you filed: _____ *N/A* _____

    (2)  Name of court: _____ *N/A* _____

    (3)  Nature of the proceeding (Rule 32, special action or habeas corpus): _____ *N/A* _____

    (4)  Docket or case number: _____ *N/A* _____

    (5)  Result: _____ *N/A* _____

    (6)  Date of result: _____ *N/A* _____

    (7)  Grounds raised: _____ *N/A* _____

    _____

    _____

    _____

    _____

    **Attach, if available, a copy of any brief filed on your behalf and a copy of the decision by the court.**

(d)  Did you appeal the action taken on your petition, application, or motion to the:

|  | | Arizona Court of Appeals: | | Arizona Supreme Court: | |
|---|---|---|---|---|---|
| (1)  First petition: | Yes ☒ | No ☐ | Yes ☒ | No ☐ |
| (2)  Second petition: | Yes ☐ | No ☒ | Yes ☐ | No ☒ |
| (3)  Third petition | Yes ☐ | No ☐ | Yes ☐ | No ☐ |

(e)  If you did not appeal to the Arizona Court of Appeals, explain why you did not: *As to the second Petition the Arizona Supreme Court is the court with original jurisdiction to hear petitions regarding illegal sentences, in the plea context*

_____

_____

_____

_____

12. For this petition, **state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States**. Attach additional pages if you have more than four grounds.   State the <u>facts</u> supporting each ground.

    <u>**CAUTION:**</u>   To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court.   Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

**GROUND ONE**: _See attached petition._

_____

_____

_____

_____

_____

(a)  Supporting FACTS (Do not argue or cite law.   Just state the specific facts that support your claim.):
_See attached petition_

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

(b) Did you present the issue raised in Ground One to the Arizona Court of Appeals?   Yes ☒        No ☐

(c)  If yes, did you present the issue in a:
      Direct appeal      ☐
      First petition      ☒
      Second petition    ☐
      Third petition     ☐

(d)  If you did not present the issue in Ground One to the Arizona Court of Appeals, explain why:  _N/A_

_____

_____

_____

(e) Did you present the issue raised in Ground One to the Arizona Supreme Court?   Yes ☒        No ☐

6

**GROUND TWO**: *See attached petition*

(a)  Supporting FACTS (Do not argue or cite law.   Just state the specific facts that support your claim.):
*See attached petition*

(b) Did you present the issue raised in Ground Two to the Arizona Court of Appeals?   Yes ☒        No ☐

(c) If yes, did you present the issue in a:
Direct appeal            ☐
First petition            ☒
Second petition          ☐
Third petition           ☐

(d)   If you did not present the issue in Ground Two to the Arizona Court of Appeals, explain why: *N/A*

(e) Did you present the issue raised in Ground Two to the Arizona Supreme Court?   Yes ☒        No ☐

**GROUND THREE**: _See attached petition._

(a)  Supporting FACTS (Do not argue or cite law.   Just state the specific facts that support your claim.):
_See attached petition_

(b) Did you present the issue raised in Ground Three to the Arizona Court of Appeals?   Yes ☒        No ☐

(c) If yes, did you present the issue in a:
Direct appeal         ☐
First petition        ☒
Second petition       ☐
Third petition        ☐

(d)   If you did not present the issue in Ground Three to the Arizona Court of Appeals, explain why: _N/A_

(e) Did you present the issue raised in Ground Three to the Arizona Supreme Court?   Yes ☒        No ☐

8

**GROUND FOUR**: _See attached petition._

(a)   Supporting FACTS (Do not argue or cite law.   Just state the specific facts that support your claim.):
_See attached petition._

(b) Did you present the issue raised in Ground Four to the Arizona Court of Appeals?   Yes ☒          No ☐

(c) If yes, did you present the issue in a:
   Direct appeal          ☐
   First petition          ☒
   Second petition          ☐
   Third petition          ☐

(d)   If you did not present the issue in Ground Four to the Arizona Court of Appeals, explain why: _N/A_

(e) Did you present the issue raised in Ground Four to the Arizona Supreme Court?   Yes ☒          No ☐

9

**Please answer these additional questions about this petition:**

13. Have you previously filed any type of petition, application or motion in a federal court regarding the conviction that you challenge in this petition?        Yes ☒        No ☐

If yes, give the date of filing, the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed.   Attach a copy of any court opinion or order, if available: *(A) February 26ᵀᴴ, 2024; (B) United States District Court, District of Arizona (Sandra Day O'Connor U.S. Courthouse, 401 West Washington Street, Suite 130, SPC 1, Phoenix, AZ 85003-2118); (C) 2:24-cv-00402-DJH--CDB; (D) Habeas Corpus; (E) The loss of defendants discovery and witness interview discs required a Stay; (F) March 13ᵀᴴ, 2024; (G) Dismissal without prejudice.*

*See "Motion for Stay" attachment.*

14. Do you have any petition or appeal <u>now pending</u> (filed and not decided yet) in any court, either state or federal, as to the judgment you are challenging?      Yes ☒        No ☐

If yes, give the date of filing, the name and location of the court, the docket or case number, the type of proceeding, and the issues raised: *(A) February 13ᵀᴴ, 2024; (B) Arizona Supreme Court (Arizona State Courts Building, 1501 West Washington Street, Suite 402, Phoenix, AZ 85007); (C) HC-24-003; (D) Habeas Corpus; (E) An illegal sentence.*

*See "Second Petition" attachment.*

15. Do you have any future sentence to serve after you complete the sentence imposed by the judgment you are challenging?   Yes ☐        No ☒

If yes, answer the following:

(a) Name and location of the court that imposed the sentence to be served in the future:

*N/A*

(b)   Date that the other sentence was imposed: *N/A*

(c)   Length of the other sentence: *N/A*

(d)   Have you filed, or do you plan to file, any petition challenging the judgment or sentence to be served in the future?        Yes ☐        No ☒

10

16. TIMELINESS OF PETITION: If your judgment of conviction became final more than one year ago, you must explain why the one-year statute of limitations in 28 U.S.C. § 2244(d) does not bar your petition.*

_N/A_

*Section 2244(d) provides in part that:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

17. Petitioner asks that the Court grant the following relief: _Reduction of sentence._

or any other relief to which Petitioner may be entitled. (Money damages are not available in habeas corpus cases.)

I declare under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on _April 8TH, 2024 (electronically)_ (month, day, year).

_Ernest Longhin_
**Signature of Petitioner**

_____          _____
Signature of attorney, if any                              Date

11

In the United States District Court
For the District of Arizona

Ernest Joseph Longhini III,
    Petitioner,

No.

v.

Ryan Thornell,
    Respondent.

Memorandum of Points and Authorities in Support of Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254

## I. Introduction

Petitioner Ernest Joseph Longhini III (herein "Petitioner") hereby moves this Court to issue a Writ of Habeas Corpus ordering Director Ryan Thornell, Director of the Arizona Department of Corrections, Rehabilitation, and Reentry, to release the Petitioner from custody as the Petitioner is in custody pursuant to an illegal sentence that violates provisions of the United States Constitution and Arizona law. Petitioner argues that four grounds exist that warrant the issuance of a Writ of Habeas Corpus. Petitioner hereby argues that:

1. Petitioner's Sixth Amendment right to confront his accusers was violated when he was unable to question the victims regarding their statements and that

-1-

sections of 13-4433 of the Arizona Revised Statutes has been ruled unconstitutional pursuant to the decision rendered in the opinion *Arizona Attorneys for Criminal Justice v. Ducey,* 638 F.Supp.3d 1048, 2022 U.S. Dist. LEXIS 199781 (D. Ariz. 2022) and Petitioner is now held illegally pursuant to such ruling.

2. Petitioner's right to due process under the Fifth and Fourteenth Amendments were violated when he was unable to present a defense of guilty except insane as defined under A.R.S. §13-502.

3. Petitioner's right to effective counsel under the Sixth Amendment was violated when counsel failed to raise the guilty except insane defense during pretrial proceedings.

4. Petitioner's constitutional right to enter into a plea "Knowingly and voluntarily" was violated when he was not apprised of the ability to put forth a guilty except insane defense and the possible benefits that accompany such a defense.

II. Statement of Facts

Petitioner is serving a 20.5 year prison sentence followed by a term of lifetime probation in connection with an indictment filed against him regarding events involving four underage

-2-

girls. The four victims are herein named as 'A', 'B', 'C', and 'D'.[1] 'A', 'B', and 'C' were sisters, 'A' and 'B' were twins, and 'D' was a girl who lived in the area where the victims and Petitioner lived. Over the course of the time between the time of the alleged incidents, the victims and Petitioner engaged in a variety of illegal acts, including drug use, sexual conduct, viewing of sexually exploitative material, and in the Petitioner's case, child prostitution, injection of as well as furnishing and selling drugs to the victims.

All victims were over the age of fifteen (15), but under the age of eighteen (18) at the time of the alleged offenses. Prior to as well as during their interactions with the Petitioner, all four girls were addicted to drugs, specifically Adderall, Heroin, and Methamphetamine as well as having numerous interactions with law enforcement and the criminal justice system. (see victims' court filings, exhibit one). When the sisters originally met the Petitioner in 2016, they realized he had mental health issues as well as a drug addiction and could easily be manipulated into giving them drugs and could provide a private place to get high, which happened to be the Petitioner's bedroom. This continued for several months until the Petitioner's mother began to notice that the victims had stolen multiple items within the house and filed an "Injunction Against Harassment" against victim 'A' (see Arrowhead Justice Court Case No. CC2017027262000). The injunction however was never enforced as the Petitioner continued to invite to his house to do drugs and provide him with "companionship".

This case against the Petitioner began when a police officer

---

1. Petitioner has changed the names of the victims to letters to mirror previous state court filings due to the age of the victims at the time of the offenses.

-3-

stopped victim 'A' and questioned her regarding her interactions with the Petitioner while she was in his house. Victim 'A' then then provided the police officer with an extensive list of what happened while she and the other victims spent time with the Petitioner. A search warrant was requested for the Petitioner's house and the Petitioner was arrested after a search of his residence yielded significant evidence of drug use. Petitioner was subsequently charged with 39 different offenses, partially stemming from seperate acts with each victim.

III. Procedural Background

Petitioner was charged with a 39 count indictment with crimes stemming from incidents with the 4 victims (see Indictment, exhibit two). Most counts stemmed from seperate acts with each victim and encompassed acts that were duplicitous to other related counts and were alleged to have taken place in a time frame of thirteen months (see pages 4-12 of exhibit two). After several pretrial hearings, Petitioner was evaluated by two doctors after Petitioner's counsel requested a competency evaluation pursuant to Rule 11 of the Arizona Rules of Criminal Procedure. The parties eventually stipulated to Petitioner's ability to assist his attorney in his own defense. Petitioner then pled guilty pursuant to a plea agreement to a 13.5 year prison term followed by a consecutive prison term of 5-12.5 years. At sentencing, Petitioner was sentenced to a total of 20.5 years imprisonment followed by lifetime probation after the Court found several aggravating factors outweighed

-4-

any mitigation provided by the defense.

Petitioner filed a timely notice of post-conviction relief on May 23, 2019 and filed his petition for PCR on November 16, 2020. Petitioner raised five grounds for relief: (1) Defendant's right to present a guilty except insane defense was violated (2) Defendant's right to confront his accusers was violated, (3) the prosecutor commited prosecutorial abuse of power, (4) the plea was defective, and (5) that trial counsel was ineffective for failing to (a) raise Defendant's mental health in litigation of the case and (b) ensure Defendant fully understood the alternative courses of action available to him (see State's Response to Defendant's Petition for Post-Conviction Relief). After full briefing, the Court issued a ruling on January 25, 2022 affirming Petitioner's Convictions (see Minute Entry RE Defendant's petition for Post-Conviction Relief). The Court ruled that Petitioner's first three claims were precluded due to the entry of a guilty plea pursuant to a plea deal due to Rule 33.2 (a)(1).

The Court then evaluated the Petitioner's remaining non-precluded claims which fell under an evaluation pursuant to *Strickland v. Washington*, 466 U.S.668 (1984). Under the *Strickland* test, the Court found that since the defense counsel recognized and ordered a Rule 11 evaluation for competency, the decision to not include it and stipulate to competency must have been a tactical or strategic reason. The Court Stated:

-5-

"For whatever strategic or tactical reason, defendant's trial counsel never raised a guilty except insane defense. 'Disagreements as to trial strategy or errors in trial will not support a claim of ineffective assistance of counsel as long as the challenged conduct could have some reasoned basis.' State v. Meeker, 143 Ariz. 256, 260, 693 P. 2d 911, 915 (1984). Different standards must be met to find a defendant competent to stand trial versus guilty except insane. Compare Rule 11 Ariz. R. Crim. Proc. and A.R.S. § 13-502. These different standards could be the reason why defense counsel chose not to raise a guilty except insane defense. Unfortunately, defendant failed to present any such evidence as to why his trial counsel chose not to do so. Without any such evidence, this court will defer to counsel's trial strategy." (see Trial Court's Minute Entry pages 3-4).

Petitioner then filed a timely Petition for Review in Division One of the Arizona Court of Appeals on February 25, 2022. Petitioner presented three issues for review:

1. Whether Petitioner's Constitutional Rights to present a Defense of Guilty Except Insane When Petitioner Suffered from a Mental Defect Pursuant to A.R.S. § 13-502 was violated?

2. Whether Petitioner Recieved Ineffective Assistance of Counsel?

3. Whether the Plea Entered by Petitioner Was Defective?

After briefing by both the Petitioner and the State, the Court of Appeals affirmed the Trial Court's Ruling and

-6-

evaluated each of the Petitioner's claims at length in a similar fashion and evaluation as the trial judge that issued the opinion evaluating Petitioner's Post-Conviction Relief proceedings (see Decision of the Court State v. Longhini CA-CR 22-0089 PRPC). Petitioner then filed a timely Petition for Review to the Arizona Supreme Court on April 7, 2023.

Finally, Petitioner has also filed for the issuance of a Writ of Habeas Corpus in the Arizona Supreme Court for a seperate issue he has brought after the determination of unconstitutionality and abrogation of portions of A.R.S. § 13-4433 (B), regarding Defendant's right to contact victims to initiate victim's interviews and other pretrial discovery, after the issuance of the ruling in Arizona *Attorney's for Criminal Justice v. Ducey*, 638 F. Supp.3d 1048, 2022 U.S. Dist. LEXIS 199781 (D. Ariz. 2022). Petitioner filed the Petition arguing the legality of his sentence and that the Arizona Supreme Court has jurisdiction and power pursuant to A.R.S. § 13-4037(A) to correct Petitioner's sentence. To date, Petitioner has yet to recieve a ruling on this Petition. Petitioner now files this Petition to obtain a Writ of Habeas Corpus to correct an illegal sentence.

III. Preservation of Habeas Rights under the Anti-Terrorism and Effective Death Penalty Act's provisions on Mandatory exhaustion and the filing of mixed petitions.

Petitioner hereby acknowledges and contends that this Petition is considered a "mixed" Petition and contains both exhausted and unexhausted claims. Petitioner's

-7-

accompanying Motion for a Stay and Abeyance will address such filing issues and will be addressed in that document.

## IV. Standard of Review

"The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgement of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

"(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgement of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;
or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."
(see 28 U.S.C. § 2254)

Additionally, the Anti-terrorism and Effective Death Penalty

-8-

Act of 1996 (28 U.S.C. § 2244 (d)) states:

"(d)

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgement of a state court. The limitation period shall run from the latest of --

(A) the date on which the judgement became final by conclusion of direct review or the expiration of the time for seeking such review."

Additionally, a Petitioner requesting the issuance of a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 also must establish that the lower state court's ruling resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" which the United States Supreme Court has defined as a reference to "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision" Lockyer v. Andrade, 538 U.S.C. 63, 123 S. Ct. 1166, 1172, 155 L. Ed. 2d 144 (2003).

Petitioner timely files this Petition for Writ of Habeas Corpus and will also move the Court to grant a request to stay proceedings until a ruling has been issued for the claims brought in the Arizona Supreme Court in Petitioner's Petition for Review (see Rhines v. Weber, 544 U.S. 269 (2005) regarding "stay-and-abeyance" procedure).

# V. Arguement

## A. Petitioner's Sixth Amendment Right to Confront his Accusers Was Violated and Renders his Sentence Illegal.

The Sixth Amendment to the United States Constitution establishes the basic rights of those accused of crimes and states:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence." USCS Const. Amend. 6.

Additionally, the Arizona Constitution also establishes certain provisions addressing the rights of both the accused as well as rights of crime victims, Known as the Victims Bill of Rights. Beyond provisions within the Arizona Constitution establishing the victim's bill of rights, which includes a number of impediments to a criminal defendant's access to crime victims without contacting the assigned prosecutor to be used as a proxy. Certain rights of victims are enumerated in the Arizona Revised Statutes to protect crime victims from harassment and re-victimization as well as to prevent the perpetuation of

-10-

further trauma stemming from court proceedings. More specifically, the victim's bill of rights defined in the Arizona Constitution (herein "VBR") establishes the following protection that has historically been seen as a violation of a criminal defendant's constitutional rights:

"Section 2.1.(A) To preserve and protect victims' rights to justice and due process, a victim of crime has a right:

5. To refuse an interview, deposition, or any other discovery request by the defendant, the defendant's attorney, or other person acting on behalf of the defendant."

see A.R.S. Const. Art. II § 2.1

Underscoring this is also the statutory establishment of section 5 of the victim's bill of rights which provides a specific list of procedures and rules surrounding victim interviews under A.R.S. § 13-4433 (B). This subsection of the Victims Bill of Rights and the accompanying statute has significantly infringed on a pretrial defendant's ability to corroborate or otherwise verify a victim's story other than relying on pre-arrest interviews or other conversations with the victim that had been conducted by police personnel or a prosecutor. In the case before this Court, Petitioner's indictment relied solely on such interviews and information. In his 39 count indictment, every single charge alleged facts that were established solely by the case detective's interview

-11-

with each victim as well as with the Petitioner. Once in a pretrial proceeding, Petitioner's counsel would have been unable to conduct any interviews of the victims until the final stages prior to trial in order to use such testimony and statements as exhibits if in fact the victims made conflicting statements at trial. Petitioner was unable to do this however, solely based on the fact that he chose to take a plea deal in which he would be able to eventually be released after 20 years instead of facing a possible sentence of well over 100 years if he lost at trial.

In November of 2022, a ruling was issued in the United States District Court for the District of Arizona by United States District Judge Steven P. Logan in the case of *Arizona Attorneys for Criminal Justice v. Ducey*, 638 F. Supp. 3d 1048, 2022 U.S. Dist. LEXIS 199781 (D. Ariz. 2022) which determined that section B of the A.R.S. § 13-4433 violated the First Amendment to the United States Constitution. This ruling establishes a proxy determination of the rights of a criminal defendant through their attorney. As applied, the decision further establishes that, since victims are not required to participate in depositions or or other pretrial interviews and the court determined that prosecutors generally do not relay defense requests for interviews to the victims that they are required to cooperate with, this infringes on a defendant's right to confront their accuser. Furthermore, an abundance of both state and federal convictions have been overturned as a result

-12-

of violations of a defendants Sixth Amendment right to confront their accusers. Petitioner argues that this Court should evaluate such a fundamental right under *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed. 2d 297 (1973) (holding that: "The right of an accused in a criminal trial to "due process" is, in essence the right to a fair opportunity to defend against the state's accusations. The rights to confront and cross-examine witnesses and to call witnesses on one's own behalf have long been recognized as essential to due process") and *Kentucky v. Stincer*, 482 U.S. 730, 737, 107 S.Ct. 2658, 96 L.Ed. 2d 631 (1987).

Beyond the Petitioner's fundamental right to confront his accuser, Petitioner's entire case relied on the credibility and corroboration of the victim's statements that, from the beginning, were conflicting from the statement provided by the Petitioner. A cursory review of the victim's statements show that while they disclosed various activities that they had partaken in with the Petitioner, no other proof was offered other than as far as the sexual acts that the Petitioner had allegedly engaged in throughout the thirteen month time span that the Petitioner had known the victims. However, none of this was disclosed to the charging prosecutor nor brought to the attention of the grand jury (see grand jury transcript exhibit three). As stated within the grand jury transcripts, Deputy County Attorney Sara Birkmeier failed to disclose to the grand jury or question the case detective regarding

-13-

the process for which he determined the validity of the victims' stories or any other facts to establish probable cause. The prosecution at that point knew that, unless the Petitioner chose to go to trial, the victim's stories would not be questioned or challenged. This violates the Petitioner's right to confront his accusers.

In the opinion authored by Judge Logan, the Court asseses the State's interest in regulating professional conduct for which he offered the following opinion:

"Defendants argue that the statute is merely a "straight forward application" of Rule 4.2 of the Arizona Rules of Professional Conduct ("ER 4.2"), which prohibits lawyers from communicating about a case with someone who is represented by another lawyer in that case, . But that ethical rule applies even-handedly to all lawyers in a given case and "contributes to the proper functioning of the legal system" by protecting the lawyer-client relationship. ABA Model Rules of Professional Conduct r. 4.2 cmt 1. The Statute, on the other hand, restricts only the communications of criminal defense attorneys by requiring them to initiate contact with victims through the defense's adversaries, the prosecutors, who themselves may contact victims without limitations. **And as opposed to contributing to the proper functioning of the legal system, there is evidence that the Statute actually detracts from it by inhibiting the defense team's ability to investigate the relevant facts**."

-14-

(see *Arizona Attorneys for Criminal Justice v. Ducey*, 638 F.Supp.3d 1048, 2022 U.S. Dist. LEXIS 199781 (D. Ariz. 2022), pages 16-17).

Petitioner now argues that this Court should in fact review the entirety of the circumstances of his case with the findings of the U.S. District Court balanced with an evaluation of the legality of the Petitioner's plea. "The right of cross-examination is more than a desirable rule of trial procedure; it is implicit in the constitutional rights of confrontation and helps assure the "accuracy of the truth-determining process." *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S. Ct. 1038, 1045 (1973) citing *Dutton v. Evans*, 400 U.S. 74, 89 (1970). An evaluation of the probable cause established by the investigation conducted by the Maricopa County Sheriff's Office reflects that each and every victim had a motive to manipulate the situation and lie to law enforcement in order to avoid further trouble or arrest. Victims also had to explain and provide motive behind coming from and going to Petitioner's house over the course of more than a year, which they supported by stating that they traded sexual favors for drugs.

The establishment of the weak case against the Petitioner underscores the involuntariness of his plea and illegality of his sentence after an evaluation of the validity of his plea. A guilty plea is only valid if it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina*

-15-

v. *Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed 2d 162 (1970). Additionally, a defendant must posses "an understanding of the law in relation to the facts." *Boykin v. Alabama*, 395 U.S. 238, 243, n.5, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969).

Under these evaluations, the Petitioner could not have possibly voluntarily or intelligently entered into his plea based upon the lack of knowledge of the validity or truthfulness of the victim's statements, which would have been the prosecutions case-in-chief against the Petitioner at trial. Without the ability to conduct depositions of the victims, how could the Petitioner know what would be said at trial or if trial would be the least risky choice among the plethora of options for disposition of this case, beyond the excessive sentence that the Petitioner recieved.

Alternatively, victim's interviews would have also shed light on the inaccuracy of the victims' statements in light of the circumstances which very well could have convinced the prosecutor to dismiss the charges that would have been identified as implausible and without probable cause, which also would have resulted in a significantly lower prison sentence. In both the Arizona as well as national ABA rules of Professional Conduct, prosecuting attorneys have a duty to charge defendants properly stating:

"The Prosecutor in a criminal case shall:

(a) refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause." Ariz. Rules of Prof'l Conduct

-16-

ER 3.8

The Supreme Court has also consistently held that a prosecutor has an established duty to charge an individual only with criminal offenses that are established by probable cause and with sufficient evidence that they feel is necessary to prosecute based on the statutory scheme of the statutes they wish to file charges under. In 1975, the Supreme Court determined that "the prosecutor has a professional duty not to charge a suspect with a crime unless he is satisfied of probable cause." *Gerstein v. Pugh*, 420 U.S. 103, 121 n22, 95 S. Ct. 854, 867 (1975). 11 years later, the Ninth Circuit Court of Appeals determined that a prosecutor's duty goes beyond simply determining if any probable cause exists and established that "the prosecutor has a duty to measure the facts in the report by legal standards and decide whether they add up to probable cause to prosecute. *Smiddy v. Varney*, 803 F. 2d 1469, 1472 (9th Cir. 1986). Once the prosecutor in this case came upon knowledge of the falsities of the victims' statements, based on not only their statements but the circumstances around the consequences and possible outcomes had they not provided stories that the case detective was seeking in order to make his case against the Petitioner, the prosecutor would have had to dismiss any and all charges that would not have been supported by probable cause with this new information only yielded by interviews conducted by defense counsel, which could not be done

-17-

due to A.R.S. § 13-4433 and the VBR (Victims Bill of Rights). This more than likely would have resulted in dismissal of a majority of the charges, primarily those centered around the alleged sexual acts that the victims stated they had to do in order to recieve more drugs from the Petitioner. This likelihood is what the Sixth Amendment to the United States Constitution sought to ensure would come to light but, as a result of A.R.S. § 13-4433(B) as well as the VBR, Petitioner was not able to take advantage of such protections and the inability to do so violated his constitutional rights as well as clearly established federal law.

B. Petitioner's rights to due process under the Fifth and Fourteenth Amendments were violated when he was unable to present a defense of guilty except insane as defined under A.R.S. § 13-502.

The United States Constitution guarantees certain rights to those accused of crimes which are fundamental for the fair and just continuation of the criminal justice system. Under Constitutional law, two rights create a fundamental guarantee that criminal proceedings will be fair: the Fifth and Fourteenth Amendments which state:

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger, nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb;

-18-

nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." USCS Const. Amend. 5.

"Sec. 1 [Citizens of the United States.] All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." USCS Const. Amend. 14.

The Arizona Constitution, both federal and Arizona statutory law, and decisions of the Arizona Appeals Courts establishes that criminal defendants enjoy all of the enumerated rights guaranteed by the U.S. Constitution as well as those guaranteed by the Arizona Constitution. "[T]he Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense."" *Nevada v. Jackson*, 569 U.S. 505, 509, 133 S. Ct. 1990, 1992 (2013), citing *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 90 L.Ed. 2d 636 (1986). Such rights were also underscored by Arizona's issuance of the opinion in *State v. Herrera-Rodriguez*, 164 Ariz. 49, 52, 790 P. 2d 747, 750 (App 1989) and *Oshrin v. Coulter*,

-19-

142 Ariz. 109, 688 P.2d 1001 (1984).

Arizona Revised Statutes establishes a standard for affirmative defenses, including one for adjudications and the entry of a "guilty except insane" plea which is defined under A.R.S. §13-502 which states:

"A. A person may be found guilty except insane if at the time of the commission of the criminal act the person was afflicted with a mental disease or defect of such severity that the person did not know the criminal act was wrong. A mental disease or defect constituting legal insanity is an affirmative defense. Mental disease or defect does not include disorders that result from acute voluntary intoxication or withdrawal from alcohol or drugs, character defects, psychosexual disorders or impulse control disorders. Conditions that do not constitute legal insanity include momentary, temporary conditions arising from the pressure of the circumstances, moral decadence, depravity or passion growing out of anger, jealousy, revenge, hatred, or other motives in a person who does not suffer from a mental disease or defect or an abnormality that is manifested only by criminal conduct.

C. The defendant shall prove the defendant's legal insanity by clear and convincing evidence.

D. If the finder of fact finds the defendant guilty except insane, the court shall determine the sentence the defendant could have recieved pursuant to section 13-707 or section 13-751, subsection A or the presumptive sentence the defendant could have recieved pursuant to

-20-

section 13-702, section 13-703, section 13-704, section 13-705, section 13-706, subsection A, section 13-710 or section 13-1406 if the defendant had not been found insane, and the judge shall suspend the sentence and shall order the defendant to be placed and remain under the jurisdiction of the Superior Court and committed to secure state mental health facility under the Department of Health Services pursuant to section 13-3992 for the length of that sentence. In making this determination the court shall not consider the sentence enhancements for prior convictions under section 13-703 or 13-704. The court shall expressly identify each act that the defendant committed and seperately find whether each act involved the death or physical injury of or a substantial threat of death or physical injury to another person." see ARS. § 13-502.

Throughout both pretrial and post-conviction proceedings, it has continually been established that the Petitioner has significant mental health issues and severe cognitive impairment (exhibits four and five) which the court continuously addressed. However, Petitioner was never able to fully plead to the affirmative defense of guilty except insane. Four seperate neuro-psychological reports were completed in the years prior to and during the Petitioner's criminal case, all of which were considered and included in the Petitioner's post-conviction proceedings and confirmed a diagnosis of

-21-

being on the "autistic spectrum" which significantly impacted his mental state during the time of the offenses. In conjunction with these reports, the Court also recieved a lengthy statement from the Petitioner's mother at sentencing (exhibit six). Throughout the Post-Conviction Proceedings, Collateral review proceedings and presiding judges repeatedly stated in their opinions that the Petitioner needed to in fact include affidavits to support his assertations that he was not apprised of the defense of guilty except insane.

Petitioner now argues that, under Arizona law, he would have in fact recieved a lower sentence if the proper defense had been put forth. Such errors and accountability on the part of Petitioner's attorney will be addressed elsewhere in this Petition, however, a review of the plain language of the statute permitting guilty except insane defenses clearly shows that the Petitioner would have recieved a lower sentence and been placed in a facility that would be more favorable to his rehabilitation. Regardless of the findings of the Court of Appeals regarding the necessity of affidavits that would have been percieved as required in order to definitely prove that the Petitioner did in fact Know about the defense of guilty except insane, court filings including defense counsels submission regarding possible defenses (exhibit 7) showed an absence of any defense or even any insinuation of of a defense involving the Petitioner's mental state at the time of the commission of the offenses or throughout his life as evidenced by the multiple reports defense counsel was in possesion of during pretrial proceedings.

-22-

An evaluation of the Petitioner's plea deal which was accepted by the Court on February 7, 2019 (see plea agreement and 2/07/2019 minute entry) reflects that the Petitioner was sentenced to prison for two offenses: count 5: Child Prostitution[2] under A.R.S. § 13-3212, and count 30: Involving or using minors in a drug offense under A.R.S. § 13-3409, both class 2 felonies with no statutory offense based sentencing enhancements and both sentenced under A.R.S. § 13-702: sentencing for first time felony offenders. The plea agreement also stipulated that the Petitioner had no prior convictions. Petitioner stipulates that there is no more than speculation regarding if he would have in fact recieved a more favorable plea deal in its entirety if he had in fact brought forth a guilty except insane defense. Regardless, the Petitioner argues that, even in its current form, had he been able to present a guilty except insane defense, per the language of A.R.S. § 13-502 (D), he would have recieved a sentence of no more than 18.5 years under the current plea.

The plain language of A.R.S. § 13-502 addressing states:

"D. If the finder of fact finds the defendant guilty except insane, the court shall determine the sentence the defendant could have recieved pursuant to section 13-707 or section 13-751, subsection A or the presumptive sentence the defendant could have recieved pursuant to section 13-702."[3]

The Plea the Petitioner signed regarding count 30 is a prison sentencing ranging from 5 and 12.5 years consecutive to

2. Petitioner's plea reflects the charge of Child Prostitution under A.R.S. § 3212. However, the statute was changed in 2017 to the charge of Child Sex Trafficking.

3. A.R.S. § 13-502 (D) in part.

-23-

the 13.5 years for count 5, which is the guideline for presumptive to aggravated maximum sentence for first time felony offenders under A.R.S. §13-702 for class two felony offenses see A.R.S. §13-702 (D). This definitely would have impeded the judge's ability to hand down a sentence of any more than 18.5 years since the presumptive sentence set in his plea deal would have been 13.5 stipulated by the plea plus a 5 year presumptive sentence as required by 13-562(D)4. As the Supreme Court opined in numerous cases, due process of law is "the primary and indispensable foundation of individual freedom in our legal system." *Application of Gault.* 387 U.S. 1, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967) and this Court should consider the failure to bring forth such a vital defense and the subsequent illegal sentence to be a violation of both federal law and the Petitioner's Constitutional rights which warrants the issuance of a Writ of Habeas Corpus.

<u>C. Petitioner's rights to effective counsel under the Sixth Amendment was violated when counsel failed to raise the guilty except insane defense during pretrial proceedings.</u>

The Sixth Amendment guarantees, among other fundamental rights within the criminal litigation process, effective counsel for indigent persons charged with felony offenses. This right was extended to State criminal defendants in 1963, with Supreme Court case *Gideon v. Wainwright,* 372 U.S. 335, 342, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963) holding "The Sixth Amendment right to counsel in criminal proceedings applies to states through the Fourteenth Amendment and require the appointment of counsel for indigent defendants in state court." The Supreme Court's opinion in *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) established a test to determine if counsel's representation was inadequate in light of the circumstances and

4. A.R.S. §13-502 also requires a finding of defendant's legal insanity by clear and convincing evidence which the psychological reports and other findings and mitigation put forth by the defense at sentencing would have clearly established, which was a non-issue at Petitioner's sentecing as the judge used his mental impairments as mitigating factors -24-

under an objectionable standard of reasonableness. In order to state a colorable claim of ineffective assistance of counsel, Petitioner must show: (1) deficient performance - counsel's representation fell below the objective standard for reasonableness; and (2) prejudice - there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland* at 687-88. Arizona's holding equivalent that incorporated the test established in *Strickland* was established in *State v. Bennett*, 213 Ariz. 562, ¶21, 146 P. 3d 63, 68 (2006) ("To state a colorable claim of ineffective assistance of counsel, a defendant must show both that the counsel's performance fell below objectively reasonable standards and that this deficiency prejudiced the defendant"). Additionally, the Supreme Court also created precedent regarding the post-conviction claim of ineffective assistance of counsel involving the review of a claim in light of a guilty plea holding: "In order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial" and that "[w]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)

Petitioner now argues that his counsel was ineffective

for failing to put forth a defense of "guilty except insane" and, as a result, allowing Petitioner to serve a longer prison sentence than authorized by the more favorable statute and in prison instead of a mental health facility. Petitioner argues that, but for his counsel's errors, he would not have pled guilty pursuant to the plea agreement that is currently in effect. Throughout the course of pretrial proceedings, Petitioner's mental impairments were a significant point of contention between defense and prosecution that included a Rule 11 evaluation, reviews of multiple expert reports regarding the Petitioner's extensive neuro-psychological evaluations and ultimately utilized at sentencing and repeated by both the Petitioner's mother and defense attorney. At no time was the Petitioner apprised of the results of the tests nor was he told about the defense of guilty except insane and the possible benefits that such a defense would entail. Significant amounts of mitigation were available regarding mental health issues that plagued the Petitioner since birth, however trial counsel failed to review all of the possible defenses that were available to the Petitioner. To both attorneys as well as the general public, a guilty except insane defense is a common defense that an objectionably reasonable person would consider in light of the significant amount of charges stacked against the Petitioner and the significant proof that he simply was not in the right state of mind to be criminally liable for the alleged offenses, all of which require a finding of the

-26-

appropriate *mens rea in order to* convict him.

As stated above, A.R.S. § 13-502 requires the following findings by clear and convincing evidence: "A. A person may be found guilty except insane if at the time of the commission of the criminal act the person was afflicted with a mental disease or defect of such severity that the person did not know the criminal act was wrong." In pretrial proceedings, evidence of this "mental disease or defect" was available in abundance, all of which trial counsel could have, but failed to use in order to put forth a better defense than the one provided.

The second part of the *Strickland* test requires the Petitioner to make a showing that there is a reasonable probability that without the counsel's errors, the outcome of the case would have been different. This established by an evaluation in the disparagement in sentencing between the sentence that the petitioner recieved pursuant to the current plea agreement and the sentence that the Petitioner more than likely would have recieved if he had been able to put forth the "guilty except insane" defense. The Petitioner recieved a sentence of 20.5 years imprisonment pursuant to the plea agreement after the judge accepted the stipulated 13.5 year sentence and ordered a slightly aggravated sentence of 8 years that would run consecutively to the 13.5 year sentence. The judge at Petitioner's sentencing hearing specifically stated that

he was ordering a "slightly aggravated" sentence based upon a balancing of the mitigating and aggravating factors which included a significant amount of information regarding Petitioner's neuropsychological diagnoses. Petitioner argues that, but for counsel's failure to put forth a defense pursuant to A.R.S. § 13-502, Petitioner would not have been subject to the lengthy prison sentence he is currently serving, nor would he be serving it in prison, versus a psychiatric rehabilitative environment which the experts agreed would be a better environment for the Petitioner to recieve the help he needs. A competent attorney would not only have recognized the need for such a defense, but, in light of the circumstances as well as the overwhelming amount of evidence supporting the theory that Petitioner was not able to psychologically commit the crimes he is accused of, the logical choice for a defense, whether at trial or as mitigation to obtain a more favorable plea agreement, would be to rely heavily on the use of evidence and expert testimony to support the affirmative defense of "guilty except insane".

As stated above, the establishment of a colorable claim of ineffective assistance of counsel requires sufficient showing of the existence of the factors set forth in *Strickland v. Washington*, 466 U.S. 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). However, Petitioner's specific analysis of ineffective assistance of counsel regarding counsel's failure to

-28-

put forth an affirmative defense is further evaluated under the standard set in *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L.Ed.2d 203 (1985) which simplifies to: (1) a showing that the alleged error of counsel is a failure to advise the Petitioner of an affirmative defense and (2) the likelihood of that defense succeeding at trial. The Petitioner in his arguement has stated a claim for ineffective assistance of counsel regarding an affirmative defense and he has provided this Court with both an explanation as well as evidence that he was not aware of the defense due to his attorney's failure to advise him of its existence and possible benefits. The Petitioner now further argues that the affirmative defense of "guilty except insane" under Arizona law would most likely have succeeded at trial.

From the beginning of his case, Petitioner's counsel took steps to incorporate Petitioner's mental state into the overall defense of his case. Beginning with ordering a Rule 11 evaluation to obtaining multiple psychiatric evaluation reports from the Petitioner's previous doctors, and ultimately focusing on Petitioner's mental health as mitigation at sentencing, Petitioner's counsel took the basic steps to include such evidence. This, however, is very different and falls greatly short of the steps counsel must and should have taken to sufficiently inform his client of the defense as well as what is required in order to establish such a defense at trial.