Furthermore, Petitioner argues that the affirmative defense would have in fact succeeded at trial. Both Dr. Col and Dr. Blackwood's reports establish and explain the significant questions that would be evaluated by the jury at trial including establishing that the Petitioner has a cognitive disability that removes any criminal liability regarding his actions because the prosecution would be unable to prove that the Petitioner was in the correct state of mind to commit the alleged offenses. A.R.S. § 13-502(c) requires that a finding of guilty except insane must establish clear and convincing evidence by a trier of fact. Per *Hill v Lockhart*, Petitioner at trial would have been able to establish the required elements of the statute for an insanity defense more easily than the prosecution would have been able to prove that the Petitioner committed the alleged offenses beyond a reasonable doubt. Counsel however failed to conduct the proper research into all possible defenses, including once Petitioner's attorneys became aware of the prohibition of using the defense of "Diminished Capacity". Failure to discover and litigate such a similar defense that defense counsel should have known to exist and instead permitted the Petitioner to sign a plea agreement with significantly less favorable terms and greater exposure is the quintessential example of ineffective counsel.

D. Petitioner's constitutional right to enter into a plea "Knowingly and voluntarily" was violated when he was not apprised of the ability to put forth a guilty except insane defense

-30-

and the possible benefits that accompany such a defense.

A guilty plea is only valid if it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). Additionally, a defendant must posess "an understanding of the law in relation to the facts." *Boykin v. Alabama*, 395 U.S. 238, 243 n.5, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969) and that, in addition to a duty to investigate, defense counsel must ensure that the defendant understands his plea. *Smith v. Mahoney*, 611 F.3d 978, 988 (9th Cir. 2010). Petitioner argues that, in light of the circumstances of both his counsel's errors in failing to explain the defense of "guilty except insane" or the possible benefits of raising such a defense, he could not have possibly have possessed the requisite understanding of the law, nor could he voluntarily enter into such a plea deal had he in fact known of the benefits afforded him by A.R.S. §13-502.

In his efforts at obtaining post-conviction relief, Petitioner has continued to raise the novel issue of the voluntariness of his plea. However, Petitioner also argues that, in light of signing the plea agreement that he is currently serving his prison sentences for, he would have more than likely elected to go to trial based on the overwhelming amount of evidence supporting a clear and convincing showing of mental deficiencies which is needed for a jury to find him guilty except insane. A significant amount of alternatives existed to him had he in

-31-

fact known about the defense. Instead, his attorney and the circumstances presented to him at the point of his settlement conference on the eve of trial clearly shows that he would have chosen a more favorable outcome had he in fact been given a different option. The United States Supreme Court has opined that the guilty plea a criminal defendant takes must be the option that the defendant has chosen to take among all alternatives that the defendant is made aware of by his attorney. However, the plea agreement that the Petitioner signed was not the option that the petitioner chose to take, rather he had take in order to recieve a sentence that would give him a release date in a span of time that would allow him to leave prison instead of rolling the dice at trial in the face of 39 charges which if he lost trial, would require the judge to sentence him to hundreds of years, regardless of any mitigation presented at sentencing. This establishes that the Petitioner did not enter into his plea voluntarily and this court should allow the plea to be reversed due to its illegality.

## VI. Conclusion

It is for the above reasons that the Petitioner respectfully requests this court to issue a Writ of Habeas Corpus to release him from custody and correct an illegal sentence.

Respectfully submitted this 8th day of April of 2024

-32-

Ernest Longhini III
Petitioner Pro Per

EXHIBIT ONE (1)

## BACKGROUND

There were four girls involved in the case. The victims were assigned letters because they were 15 and older but under 18 years of age when the incidents occurred: 'A', 'B', 'C' & 'D'. 'A', 'B', & 'C' were sisters. 'A' & 'B' were twins, and 'D' was a girl who lived in the area where the sisters lived. A thirty-nine count Indictment was issued naming victims 'A', 'B', 'C' & 'D', (hereinafter "victims" or "girls"). All the charges were based on statements made by the victims in interviews by the police. In the Indictment the offenses with victims, 'A', 'B', & 'C', (hereinafter "sisters"), were alleged to have occurred within a ten-month period of time, and with 'D' the offenses were alleged to have occurred within a three-year period of time. During the time of the offenses, victims 'A', 'B', & 'C' were 15 years old and older, and victim 'D' was 15 to 17 years old. Each count alleged a single incident with a victim. The Indictment alleged nineteen counts of misconduct with victim 'A', nine counts of misconduct with victim 'B', four counts of misconduct with victim 'C', and four counts of misconduct with victim 'D'. The charges consisted of selling, supplying, or injecting illegal drugs, sexual contact, pornography, or prostitution, with a minor.

EXHIBIT TWO (2)

MICHAEL K. JEANES, CLERK
BY                    DEP

K. MARQUEZ, FILED

2016 SEP 21  PM 3: 56

WILLIAM G MONTGOMERY
MARICOPA COUNTY ATTORNEY

Lacey Gray
Deputy County Attorney
Bar ID #: 029732
301 W. Jefferson, 5th Floor
Phoenix, AZ 85003
Telephone: (602) 506-8556
mcaosvd@mcao.maricopa.gov
MCAO Firm #:  00032000
Attorney for Plaintiff

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

THE STATE OF ARIZONA,

    Plaintiff,

vs.

ERNEST JOSEPH LONGHINI, III,

    Defendant.

CR2016-000667-001

679 GJ 284

NOTICE OF SUPERVENING
INDICTMENT

An indictment having been filed this 21st day of September, 2016, in the Superior Court of Maricopa County, Arizona, charging you, Ernest Joseph Longhini, III, with the crimes of

**COUNT 1:** (13-1406A) ATTEMPT TO COMMIT SEXUAL ASSAULT, A CLASS 3 FELONY committed on May 18, 2015 to July 7, 2016,
**COUNT 2:** (13-3409A2) INVOLVING OR USING MINORS IN DRUG OFFENSES, A CLASS 2 FELONY committed on May 18, 2015 to July 7, 2016,
**COUNT 3:** (13-3409A2) INVOLVING OR USING MINORS IN DRUG OFFENSES, A CLASS 2 FELONY committed on May 18, 2015 to July 7, 2016,
**COUNT 4:** (13-1405A) SEXUAL CONDUCT WITH A MINOR, A CLASS 6 FELONY committed on May 18, 2015 to July 7, 2016,
**COUNT 5:** (13-3212B2) CHILD PROSTITUTION, A CLASS 2 FELONY committed on May 18, 2015 to July 7, 2016,
**COUNT 6:** (13-3409A2) INVOLVING OR USING MINORS IN DRUG OFFENSES, A CLASS 2 FELONY committed on May 8, 2015 to July 7, 2016,
**COUNT 7:** (13-1405A) SEXUAL CONDUCT WITH A MINOR, A CLASS 6 FELONY committed on May 18, 2015 to July 7, 2016,
**COUNT 8:** (13-3212B2) CHILD PROSTITUTION, A CLASS 2 FELONY committed on May 18, 2015 to July 7, 2016,

**COUNT 9:** (13-3409A2) INVOLVING OR USING MINORS IN DRUG OFFENSES, A CLASS 2 FELONY committed on May 18, 2015 to July 7, 2016,

**COUNT 10:** (13-1405A) SEXUAL CONDUCT WITH A MINOR, A CLASS 6 FELONY committed on May 18, 2015 to July 7, 2016,

**COUNT 11:** (13-3212B2) CHILD PROSTITUTION, A CLASS 2 FELONY committed on May 18, 2015 to July 7, 2016,

**COUNT 12:** (13-3409A2) INVOLVING OR USING MINORS IN DRUG OFFENSES, A CLASS 2 FELONY committed on May 18, 2015 to July 7, 2016,

**COUNT 13:** (13-1405A) SEXUAL CONDUCT WITH A MINOR, A CLASS 6 FELONY committed on May 18, 2015 to July 7, 2016,

**COUNT 14:** (13-3212B2) CHILD PROSTITUTION, A CLASS 2 FELONY committed on May 18, 2015 to July 7, 2016,

**COUNT 15:** (13-3409A2) INVOLVING OR USING MINORS IN DRUG OFFENSES, A CLASS 2 FELONY committed on May 18, 2015 to July 7, 2016,

**COUNT 16:** (13-1406A) SEXUAL ASSAULT, A CLASS 2 FELONY committed on May 18, 2015 to July 7, 2016,

**COUNT 17:** (13-3506A) FURNISHING OBSCENE OR HARMFUL ITEMS TO MINORS, A CLASS 4 FELONY committed on May 18, 2015 to July 7, 2016,

**COUNT 18:** (13-3506A) FURNISHING OBSCENE OR HARMFUL ITEMS TO MINORS, A CLASS 4 FELONY committed on May 18, 2015 to July 7, 2016,

**COUNT 19:** (13-1403A1) PUBLIC SEXUAL INDECENCY, A CLASS 1 MISDEMEANOR committed on May 18, 2015 to July 7, 2016,

**COUNT 20:** (13-3409A2) INVOLVING OR USING MINORS IN DRUG OFFENSES, A CLASS 2 FELONY committed on May 18, 2015 to July 7, 2016,

**COUNT 21:** (13-3409A2) INVOLVING OR USING MINORS IN DRUG OFFENSES, A CLASS 2 FELONY committed on May 18, 2015 to July 7, 2016,

**COUNT 22:** (13-3409A2) INVOLVING OR USING MINORS IN DRUG OFFENSES, A CLASS 2 FELONY committed on May 18, 2015 to July 7, 2016,

**COUNT 23:** (13-3409A2) INVOLVING OR USING MINORS IN DRUG OFFENSES, A CLASS 2 FELONY committed on May 18, 2015 to July 7, 2016,

**COUNT 24:** (13-3409A2) INVOLVING OR USING MINORS IN DRUG OFFENSES, A CLASS 2 FELONY committed on May 18, 2015 to July 7, 2016,

**COUNT 25:** (13-3409A2) INVOLVING OR USING MINORS IN DRUG OFFENSES, A CLASS 2 FELONY committed on May 18, 2015 to July 7, 2016,

**COUNT 26:** (13-1402A) INDECENT EXPOSURE, A CLASS 1 MISDEMEANOR committed on May 18, 2015 to July 7, 2016,

**COUNT 27:** (13-1403A1) PUBLIC SEXUAL INDECENCY, A CLASS 1 MISDEMEANOR committed on May 18, 2015 to July 7, 2016,

**COUNT 28:** (13-1406A) ATTEMPT TO COMMIT SEXUAL ASSAULT, A CLASS 3 FELONY committed on May 18, 2015 to July 7, 2016,

**COUNT 29:** (13-3409A2) INVOLVING OR USING MINORS IN DRUG OFFENSES, A CLASS 2 FELONY committed on January 1, 2016 to July 7, 2016,

**COUNT 30:** (13-3409A2) INVOLVING OR USING MINORS IN DRUG OFFENSES, A CLASS 2 FELONY committed on January 1, 2016 to July 7, 2016,

**COUNT 31:** (13-3409A2) INVOLVING OR USING MINORS IN DRUG OFFENSES, A CLASS 2 FELONY committed on January 1, 2016 to July 7, 2016,

**COUNT 32:** (13-3409A2) INVOLVING OR USING MINORS IN DRUG OFFENSES, A CLASS 2 FELONY committed on June 1, 2013 to June 1, 2016,

**COUNT 33:** (13-3409A2) INVOLVING OR USING MINORS IN DRUG OFFENSES, A CLASS 2 FELONY committed on June 1, 2013 to June 1, 2016,

2

**COUNT 34:** (13-3409A2) INVOLVING OR USING MINORS IN DRUG OFFENSES, A CLASS 2 FELONY committed on June 1, 2013 to June 1, 2016,

**COUNT 35:** (13-3409A2) INVOLVING OR USING MINORS IN DRUG OFFENSES, A CLASS 2 FELONY committed on June 1, 2013 to June 1, 2016,

**COUNT 36:** (13-1402A) INDECENT EXPOSURE, A CLASS 1 MISDEMEANOR committed on June 1, 2013 to June 1, 2016,

**COUNT 37:** (13-3415A) POSSESSION OF DRUG PARAPHERNALIA, A CLASS 6 FELONY committed on June 1, 2016 to July 7, 2016,

**COUNT 38:** (13-3415A) POSSESSION OF DRUG PARAPHERNALIA, A CLASS 6 FELONY committed on June 1, 2016 to July 7, 2016,

**COUNT 39:** (13-2809A1) CONSPIRACY TO COMMIT TAMPERING WITH PHYSICAL EVIDENCE, A CLASS 6 FELONY committed on July 12, 2016 to July 14, 2016,

and affirming the release conditions previously ordered by this court in Direct Complaint CR2016-000667-001 in the Superior Court, Maricopa County, Arizona, you are

HEREBY NOTIFIED to appear before this court to answer the Indictment in the South Court Tower, 175 West Madison Street, 3rd Floor, Phoenix, Arizona, on September 29, 2016, at the hour of 8:30 a.m. Requests for reasonable accommodation for persons with disabilities must be made to the division assigned to the case by parties at least three judicial days in advance of a scheduled court proceeding. Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case at least ten judicial days in advance of a scheduled court proceeding.

FAILURE TO APPEAR WITHOUT GOOD CAUSE WILL PLACE YOU IN CONTEMPT OF COURT AND A WARRANT WILL BE ISSUED FOR YOUR ARREST.

3

GIVEN UNDER MY HAND AND SEAL of the said Court this 21st day of September, 2016, by order of the Court.

MICHAEL K. JEANES
CLERK OF THE SUPERIOR COURT

By_____
Deputy Clerk

Copy of the foregoing
mailed this 20 day
of September, 2016, to:

Ernest Joseph Longhini, III, Defendant
**IN CUSTODY T303224** 40520 North Territory Conv: TI, Anthem, AZ 85086
Office Public Defender's
620 W. Jackson Street, Ste. 4015 , Phoenix, AZ 85003
Defense Attorney
Court Administrator
Jail

By_____
Deputy Clerk

**EXTRADITE:** OK To Extradite
rm

4

MICHAEL K. JEANES, CLERK
BY                           DEP
K. Marquez
K. MARQUEZ. FILED

2016 SEP 21   PM 3: 56

WILLIAM G MONTGOMERY
MARICOPA COUNTY ATTORNEY

Lacey Gray
Deputy County Attorney
Bar ID #: 029732
301 W. Jefferson, 5th Floor
Phoenix, AZ 85003
Telephone: (602) 506-8556
mcaosvd@mcao.maricopa.gov
MCAO Firm #: 00032000
Attorney for Plaintiff

DR 2016018332 - Maricopa County Sheriff's Office
1623255

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

THE STATE OF ARIZONA,

    Plaintiff,

vs.

ERNEST JOSEPH LONGHINI, III, (001)

(002)

    Defendants.

CR2016-000667-001

INDICTMENT
679 GJ 284

**COUNT 1:** ATTEMPT TO COMMIT SEXUAL ASSAULT, A CLASS 3 FELONY (ERNEST JOSEPH LONGHINI III)
**COUNT 2:** INVOLVING OR USING MINORS IN DRUG OFFENSES, A CLASS 2 FELONY (ERNEST JOSEPH LONGHINI III)
**COUNT 3:** INVOLVING OR USING MINORS IN DRUG OFFENSES, A CLASS 2 FELONY (ERNEST JOSEPH LONGHINI III)
**COUNT 4:** SEXUAL CONDUCT WITH A MINOR, A CLASS 6 FELONY (ERNEST JOSEPH LONGHINI III)
**COUNT 5:** CHILD PROSTITUTION, A

CLASS 2 FELONY (ERNEST JOSEPH LONGHINI III)
**COUNT 6:** INVOLVING OR USING MINORS IN DRUG OFFENSES, A CLASS 2 FELONY (ERNEST JOSEPH LONGHINI III)
**COUNT 7:** SEXUAL CONDUCT WITH A MINOR, A CLASS 6 FELONY (ERNEST JOSEPH LONGHINI III)
**COUNT 8:** CHILD PROSTITUTION, A CLASS 2 FELONY (ERNEST JOSEPH LONGHINI III)
**COUNT 9:** INVOLVING OR USING MINORS IN DRUG OFFENSES, A CLASS 2 FELONY (ERNEST JOSEPH LONGHINI III)
**COUNT 10:** SEXUAL CONDUCT WITH A MINOR, A CLASS 6 FELONY (ERNEST JOSEPH LONGHINI III)
**COUNT 11:** CHILD PROSTITUTION, A CLASS 2 FELONY (ERNEST JOSEPH LONGHINI III)
**COUNT 12:** INVOLVING OR USING MINORS IN DRUG OFFENSES, A CLASS 2 FELONY (ERNEST JOSEPH LONGHINI III)
**COUNT 13:** SEXUAL CONDUCT WITH A MINOR, A CLASS 6 FELONY (ERNEST JOSEPH LONGHINI III)
**COUNT 14:** CHILD PROSTITUTION, A CLASS 2 FELONY (ERNEST JOSEPH LONGHINI III)
**COUNT 15:** INVOLVING OR USING MINORS IN DRUG OFFENSES, A CLASS 2 FELONY (ERNEST JOSEPH LONGHINI III)
**COUNT 16:** SEXUAL ASSAULT, A CLASS 2 FELONY (ERNEST JOSEPH LONGHINI III)
**COUNT 17:** FURNISHING OBSCENE OR HARMFUL ITEMS TO MINORS, A CLASS 4 FELONY (ERNEST JOSEPH LONGHINI III)
**COUNT 18:** FURNISHING OBSCENE OR HARMFUL ITEMS TO MINORS, A CLASS 4 FELONY (ERNEST JOSEPH LONGHINI III)
**COUNT 19:** PUBLIC SEXUAL INDECENCY, A CLASS 1 MISDEMEANOR (ERNEST JOSEPH LONGHINI III)
**COUNT 20:** INVOLVING OR USING MINORS IN DRUG OFFENSES, A CLASS 2 FELONY (ERNEST JOSEPH LONGHINI III)
**COUNT 21:** INVOLVING OR USING MINORS IN DRUG OFFENSES, A CLASS 2 FELONY (ERNEST JOSEPH LONGHINI III)
**COUNT 22:** INVOLVING OR USING MINORS IN DRUG OFFENSES, A CLASS 2

FELONY (ERNEST JOSEPH LONGHINI III)

**COUNT 23:** INVOLVING OR USING MINORS IN DRUG OFFENSES, A CLASS 2 FELONY (ERNEST JOSEPH LONGHINI III)

**COUNT 24:** INVOLVING OR USING MINORS IN DRUG OFFENSES, A CLASS 2 FELONY (ERNEST JOSEPH LONGHINI III)

**COUNT 25:** INVOLVING OR USING MINORS IN DRUG OFFENSES, A CLASS 2 FELONY (ERNEST JOSEPH LONGHINI III)

**COUNT 26:** INDECENT EXPOSURE, A CLASS 1 MISDEMEANOR (ERNEST JOSEPH LONGHINI III)

**COUNT 27:** PUBLIC SEXUAL INDECENCY, A CLASS 1 MISDEMEANOR (ERNEST JOSEPH LONGHINI III)

**COUNT 28:** ATTEMPT TO COMMIT SEXUAL ASSAULT, A CLASS 3 FELONY (ERNEST JOSEPH LONGHINI III)

**COUNT 29:** INVOLVING OR USING MINORS IN DRUG OFFENSES, A CLASS 2 FELONY (ERNEST JOSEPH LONGHINI III)

**COUNT 30:** INVOLVING OR USING MINORS IN DRUG OFFENSES, A CLASS 2 FELONY (ERNEST JOSEPH LONGHINI III)

**COUNT 31:** INVOLVING OR USING MINORS IN DRUG OFFENSES, A CLASS 2 FELONY (ERNEST JOSEPH LONGHINI III)

**COUNT 32:** INVOLVING OR USING MINORS IN DRUG OFFENSES, A CLASS 2 FELONY (ERNEST JOSEPH LONGHINI III)

**COUNT 33:** INVOLVING OR USING MINORS IN DRUG OFFENSES, A CLASS 2 FELONY (ERNEST JOSEPH LONGHINI III)

**COUNT 34:** INVOLVING OR USING MINORS IN DRUG OFFENSES, A CLASS 2 FELONY (ERNEST JOSEPH LONGHINI III)

**COUNT 35:** INVOLVING OR USING MINORS IN DRUG OFFENSES, A CLASS 2 FELONY (ERNEST JOSEPH LONGHINI III)

**COUNT 36:** INDECENT EXPOSURE, A CLASS 1 MISDEMEANOR (ERNEST JOSEPH LONGHINI III)

**COUNT 37:** POSSESSION OF DRUG PARAPHERNALIA, A CLASS 6 FELONY (ERNEST JOSEPH LONGHINI III)

**COUNT 38:** POSSESSION OF DRUG PARAPHERNALIA, A CLASS 6 FELONY (ERNEST JOSEPH LONGHINI III)

**COUNT 39:** CONSPIRACY TO COMMIT TAMPERING WITH PHYSICAL EVIDENCE,

A CLASS 6 FELONY (ERNEST JOSEPH LONGHINI III)
**COUNT 40:** CONSPIRACY TO COMMIT TAMPERING WITH PHYSICAL EVIDENCE, A CLASS 6 FELONY (

The Grand Jurors of Maricopa County, Arizona, accuse ERNEST JOSEPH LONGHINI, III, on September 21, 2016, charging that in Maricopa County, Arizona:

**COUNT 1:**

ERNEST JOSEPH LONGHINI III, on or between May 18, 2015 and July 7, 2016, intentionally or knowingly, did attempt to engage in sexual intercourse or oral sexual contact with Victim A, without the consent of Victim A, (To Wit: The time she woke up with her pants on) in violation of A.R.S. §§ 13-1001,13-1406, 13-1401, 13-3821, 13-610, 13-701, 13-702, and 13-801.

**COUNT 2:**

ERNEST JOSEPH LONGHINI III, on or between May 18, 2015 and July 7, 2016, knowingly did sell, transfer, or offer to sell or transfer Heroin, a narcotic drug, to Victim A, a minor, (To Wit: The first time he injected her) in violation of A.R.S. §§ 13-3401, 13-3408, 13-3409, 13-3418, 13-701, 13-702, and 13-801.

**COUNT 3:**

ERNEST JOSEPH LONGHINI III, on or between May 18, 2015 and July 7, 2016, knowingly did sell, transfer, or offer to sell or transfer Heroin, a narcotic drug, to Victim A, a minor, (To wit: The second time he injected her) in violation of A.R.S. §§ 13-3401, 13-3408, 13-3409, 13-3418, 13-701, 13-702, and 13-801.

**COUNT 4:**

ERNEST JOSEPH LONGHINI III, on or between May 18, 2015 and July 7, 2016, intentionally or knowingly did engage in sexual intercourse or oral sexual contact with Victim A, who was a minor fifteen years of age or over, (To Wit: The last time, victim masturbated his penis) in violation of A.R.S. §§ 13-1401, 13-1405, 13-3821, 13-610, 13-701, 13-702, and 13-801.

**COUNT 5:**

ERNEST JOSEPH LONGHINI III, on or between May 18, 2015 and July 7, 2016, who was at least eighteen years of age, knowingly did engage in prostitution with Victim A, a minor who was fifteen, sixteen or seventeen years of age and ERNEST JOSEPH LONGHINI III knew or should have known Victim A was fifteen, sixteen or seventeen years of age, (To Wit: Refers to same time as Count 4) in violation of A.R.S. §§ 13-3212, 13-3211, 13-3821, 13-701, 13-702, and 13-801.

**COUNT 6:**

ERNEST JOSEPH LONGHINI III, on or between May 8, 2015 and July 7, 2016, knowingly did sell, transfer, or offer to sell or transfer Heroin, a narcotic drug, to Victim A, a minor, (To Wit: refers to same time as Count 4) in violation of A.R.S. §§ 13-3401, 13-3408, 13-3409, 13-3418, 13-701, 13-702, and 13-801.

**COUNT 7:**

ERNEST JOSEPH LONGHINI III, on or between May 18, 2015 and July 7, 2016, intentionally or knowingly did engage in sexual intercourse or oral sexual contact with Victim A, who was a minor fifteen years of age or over, (To Wit: The first time in the car, oral sex) in violation of A.R.S. §§ 13-1401, 13-1405, 13-3821, 13-610, 13-701, 13-702, and 13-801.

**COUNT 8:**

ERNEST JOSEPH LONGHINI III, on or between May 18, 2015 and July 7, 2016, who was at least eighteen years of age, knowingly did engage in prostitution with Victim A, a minor who was fifteen, sixteen or seventeen years of age and ERNEST JOSEPH LONGHINI III knew

or should have known Victim A was fifteen, sixteen or seventeen years of age, (To Wit: Refers to same time as Count 7) in violation of A.R.S. §§ 13-3212, 13-3211, 13-3821, 13-701, 13-702, and 13-801.

**COUNT 9:**

ERNEST JOSEPH LONGHINI III, on or between May 18, 2015 and July 7, 2016, knowingly did sell, transfer, or offer to sell or transfer Heroin, a narcotic drug, to Victim A, a minor, (To Wit: refers to same time as Count 7) in violation of A.R.S. §§ 13-3401, 13-3408, 13-3409, 13-3418, 13-701, 13-702, and 13-801.

**COUNT 10:**

ERNEST JOSEPH LONGHINI III, on or between May 18, 2015 and July 7, 2016, intentionally or knowingly did engage in sexual intercourse or oral sexual contact with Victim A, who was a minor fifteen years of age or over, (To Wit: The last time in the car, oral sex) in violation of A.R.S. §§ 13-1401, 13-1405, 13-3821, 13-610, 13-701, 13-702, and 13-801.

**COUNT 11:**

ERNEST JOSEPH LONGHINI III, on or between May 18, 2015 and July 7, 2016, who was at least eighteen years of age, knowingly did engage in prostitution with Victim A, a minor who was fifteen, sixteen or seventeen years of age and ERNEST JOSEPH LONGHINI III knew or should have known Victim A was fifteen, sixteen or seventeen years of age, (To Wit: Refers to same time as Count 10) in violation of A.R.S. §§ 13-3212, 13-3211, 13-3821, 13-701, 13-702, and 13-801.

**COUNT 12:**

ERNEST JOSEPH LONGHINI III, on or between May 18, 2015 and July 7, 2016, knowingly did sell, transfer, or offer to sell or transfer Heroin, a narcotic drug, to Victim A, a minor, (To Wit: Refers to same time as Count 10) in violation of A.R.S. §§ 13-3401, 13-3408, 13-3409, 13-3418, 13-701, 13-702, and 13-801.

**COUNT 13:**

ERNEST JOSEPH LONGHINI III, on or between May 18, 2015 and July 7, 2016, intentionally or knowingly did engage in sexual intercourse or oral sexual contact with Victim A, who was a minor fifteen years of age or over, (To Wit: The other time in the car, oral sex) in violation of A.R.S. §§ 13-1401, 13-1405, 13-3821, 13-610, 13-701, 13-702, and 13-801.

**COUNT 14:**

ERNEST JOSEPH LONGHINI III, on or between May 18, 2015 and July 7, 2016, who was at least eighteen years of age, knowingly did engage in prostitution with Victim A, a minor who was fifteen, sixteen or seventeen years of age and ERNEST JOSEPH LONGHINI III knew or should have known Victim A was fifteen, sixteen or seventeen years of age, (To Wit: Refers to same time as Count 13) in violation of A.R.S. §§ 13-3212, 13-3211, 13-3821, 13-701, 13-702, and 13-801.

**COUNT 15:**

ERNEST JOSEPH LONGHINI III, on or between May 18, 2015 and July 7, 2016, knowingly did sell, transfer, or offer to sell or transfer Heroin, a narcotic drug, to Victim A, a minor, (To Wit: Refers to same time as Count 13) in violation of A.R.S. §§ 13-3401, 13-3408, 13-3409, 13-3418, 13-701, 13-702, and 13-801.

**COUNT 16:**

ERNEST JOSEPH LONGHINI III, on or between May 18, 2015 and July 7, 2016, intentionally or knowingly, did engage in sexual intercourse or oral sexual contact with Victim A, without the consent of Victim A, (To Wit: The time in the car, digital/vaginal penetration) in violation of A.R.S. §§ 13-1406, 13-1401, 13-3821, 13-610, 13-701, 13-702, and 13-801.

**COUNT 17:**

ERNEST JOSEPH LONGHINI III, on or between May 18, 2015 and July 7, 2016, with knowledge of the character of the item involved, recklessly did furnish, present, provide, make available, give, lend, show, advertise, or distribute to Victim A, a minor, Pornography, an item

that is harmful to minors, (To Wit: First time she saw on his laptop) in violation of A.R.S. §§ 13-3501, 13-3506, 13-701, 13-702, and 13-801.

**COUNT 18:**

ERNEST JOSEPH LONGHINI III, on or between May 18, 2015 and July 7, 2016, with knowledge of the character of the item involved, recklessly did furnish, present, provide, make available, give, lend, show, advertise, or distribute to Victim A, a minor, Pornography, an item that is harmful to minors, (To Wit: Last time she saw on his laptop) in violation of A.R.S. §§ 13-3501, 13-3506, 13-701, 13-702, and 13-801.

**COUNT 19:**

ERNEST JOSEPH LONGHINI III, on or between May 18, 2015 and July 7, 2016, in the presence of Victim A, intentionally or knowingly did engage in an act of sexual contact and was reckless about whether such other person, as a reasonable person, would be offended or alarmed by the act, (To Wit: The time he masturbated in front of her) in violation of A.R.S. §§ 13-1403, 13-1401, 13-3821, 13-610, 13-707, and 13-802.

**COUNT 20:**

ERNEST JOSEPH LONGHINI III, on or between May 18, 2015 and July 7, 2016, knowingly did sell, transfer, or offer to sell or transfer Methamphetamine, a dangerous drug, to Victim B, a minor, (To Wit: last time she sold Methamphetamine for him) in violation of A.R.S. §§ 13-3401, 13-3407, 13-3409, 13-3418, 13-701, 13-702, and 13-801.

**COUNT 21:**

ERNEST JOSEPH LONGHINI III, on or between May 18, 2015 and July 7, 2016, knowingly did sell, transfer, or offer to sell or transfer Methamphetamine, a dangerous drug, to Victim B, a minor, (To Wit: Last time she sold Methamphetamine for him) in violation of A.R.S. §§ 13-3401, 13-3407, 13-3409, 13-3418, 13-701, 13-702, and 13-801.

**COUNT 22:**

ERNEST JOSEPH LONGHINI III, on or between May 18, 2015 and July 7, 2016, knowingly did sell, transfer, or offer to sell or transfer Heroin, a narcotic drug, to Victim B, a minor, (To Wit: First time he injected her with heroin) in violation of A.R.S. §§ 13-3401, 13-3408, 13-3409, 13-3418, 13-701, 13-702, and 13-801.

**COUNT 23:**

ERNEST JOSEPH LONGHINI III, on or between May 18, 2015 and July 7, 2016, knowingly did sell, transfer, or offer to sell or transfer Heroin, a narcotic drug, to Victim B, a minor, (To Wit: Last time he injected her with heroin) in violation of A.R.S. §§ 13-3401, 13-3408, 13-3409, 13-3418, 13-701, 13-702, and 13-801.

**COUNT 24:**

ERNEST JOSEPH LONGHINI III, on or between May 18, 2015 and July 7, 2016, knowingly did sell, transfer, or offer to sell or transfer Methamphetamine, a dangerous drug, to Victim B, a minor, (To Wit: First time he injected her with Methamphetamine) in violation of A.R.S. §§ 13-3401, 13-3407, 13-3409, 13-3418, 13-701, 13-702, and 13-801.

**COUNT 25:**

ERNEST JOSEPH LONGHINI III, on or between May 18, 2015 and July 7, 2016, knowingly did sell, transfer, or offer to sell or transfer Methamphetamine, a dangerous drug, to Victim B, a minor, (To Wit: Last time he injected her with Methamphetamine) in violation of A.R.S. §§ 13-3401, 13-3407, 13-3409, 13-3418, 13-701, 13-702, and 13-801.

**COUNT 26:**

ERNEST JOSEPH LONGHINI III, on or between May 18, 2015 and July 7, 2016, in the presence of Victim B, did expose his genitals and was reckless about whether Victim B, as a reasonable person, would have been offended or alarmed by the act, (To Wit: Time he exposed his penis to her) in violation of A.R.S. §§ 13-1402, 13-3821, 13-707, and 13-802.

**COUNT 27:**

ERNEST JOSEPH LONGHINI III, on or between May 18, 2015 and July 7, 2016, in the presence of Victim B, intentionally or knowingly did engage in an act of sexual contact and was reckless about whether such other person, as a reasonable person, would be offended or alarmed by the act, (To Wit: Time he masturbated in front of her) in violation of A.R.S. §§ 13-1403, 13-1401, 13-3821, 13-610, 13-707, and 13-802.

**COUNT 28:**

ERNEST JOSEPH LONGHINI III, on or between May 18, 2015 and July 7, 2016, intentionally or knowingly, did attempt to engage in sexual intercourse or oral sexual contact with Victim B, without the consent of Victim B, (To Wit: Time she woke up and he was trying to take her pants off) in violation of A.R.S. §§ 13-1001,13-1406, 13-1401, 13-3821, 13-610, 13-701, 13-702, and 13-801.

**COUNT 29:**

ERNEST JOSEPH LONGHINI III, on or between January 1, 2016 and July 7, 2016, knowingly did sell, transfer, or offer to sell or transfer Methamphetamine, a dangerous drug, to Victim C, a minor, (To Wit: First time he gave her methamphetamine in a glass smoking pipe) in violation of A.R.S. §§ 13-3401, 13-3407, 13-3409, 13-3418, 13-701, 13-702, and 13-801.

**COUNT 30:**

ERNEST JOSEPH LONGHINI III, on or between January 1, 2016 and July 7, 2016, knowingly did sell, transfer, or offer to sell or transfer Methamphetamine, a dangerous drug, to Victim C, a minor, (To Wit: First time he injected her with methamphetamine) in violation of A.R.S. §§ 13-3401, 13-3407, 13-3409, 13-3418, 13-701, 13-702, and 13-801.

**COUNT 31:**

ERNEST JOSEPH LONGHINI III, on or between January 1, 2016 and July 7, 2016, knowingly did sell, transfer, or offer to sell or transfer Methamphetamine, a dangerous drug, to

Victim C, a minor, (To Wit: Last time he injected her with Methamphetamine) in violation of A.R.S. §§ 13-3401, 13-3407, 13-3409, 13-3418, 13-701, 13-702, and 13-801.

**COUNT 32:**

ERNEST JOSEPH LONGHINI III, on or between June 1, 2013 and June 1, 2016, knowingly did sell, transfer, or offer to sell or transfer Methamphetamine, a dangerous drug, to Victim D, a minor, (To Wit: First time he gave her Methamphetamine) in violation of A.R.S. §§ 13-3401, 13-3407, 13-3409, 13-3418, 13-701, 13-702, and 13-801.

**COUNT 33:**

ERNEST JOSEPH LONGHINI III, on or between June 1, 2013 and June 1, 2016, knowingly did sell, transfer, or offer to sell or transfer Methamphetamine, a dangerous drug, to Victim D, a minor, (To Wit: Last time he gave her Methamphetamine) in violation of A.R.S. §§ 13-3401, 13-3407, 13-3409, 13-3418, 13-701, 13-702, and 13-801.

**COUNT 34:**

ERNEST JOSEPH LONGHINI III, on or between June 1, 2013 and June 1, 2016, knowingly did sell, transfer, or offer to sell or transfer Heroin, a narcotic drug, to Victim C, a minor, (To Wit: First time he gave her heroin) in violation of A.R.S. §§ 13-3401, 13-3408, 13-3409, 13-3418, 13-701, 13-702, and 13-801.

**COUNT 35:**

ERNEST JOSEPH LONGHINI III, on or between June 1, 2013 and June 1, 2016, knowingly did sell, transfer, or offer to sell or transfer Heroin, a narcotic drug, to Victim D, a minor, (To Wit: First time he gave her Heroin) in violation of A.R.S. §§ 13-3401, 13-3408, 13-3409, 13-3418, 13-701, 13-702, and 13-801.

**COUNT 36:**

ERNEST JOSEPH LONGHINI III, on or between June 1, 2013 and June 1, 2016, in the presence of Victim D, did expose his genitals and was reckless about whether Victim D, as a

reasonable person, would have been offended or alarmed by the act, (To Wit: Time at his house) in violation of A.R.S. §§ 13-1402, 13-3821, 13-707, and 13-802.

**COUNT 37:**

ERNEST JOSEPH LONGHINI III, on or between June 1, 2016 and July 7, 2016, unlawfully did use or possess with intent to use Scale, drug paraphernalia, to inject, ingest, inhale, or otherwise introduce into the human body Heroin, a narcotic drug, in violation of A.R.S. §§ 13-3401, 13-3408, 13-3415, 13-3418, 13-701, 13-702, and 13-801.

**COUNT 38:**

ERNEST JOSEPH LONGHINI III, on or between June 1, 2016 and July 7, 2016, unlawfully did use or possess with intent to use Needle, drug paraphernalia, to inject, ingest, inhale, or otherwise introduce into the human body Heroin, a narcotic drug, in violation of A.R.S. §§ 13-3401, 13-3408, 13-3415, 13-3418, 13-701, 13-702, and 13-801.

**COUNT 39:**

ERNEST JOSEPH LONGHINI III, on or between July 12, 2016 and July 14, 2016, with the intent to promote or aid the commission of an offense, to-wit: Tampering with Physical Evidence, agreed with Karyl Bishop that at least one of them or another would engage in conduct constituting the offense of Tampering with Physical Evidence, and Ernest Longhini, committed the following overt act(s): Contacting cell phone company, in violation of A.R.S. §§ 13-1003, 13-501, 13-2809, 13-2801, 13-701, 13-702, and 13-801

**COUNT 40:**

on or between July 12, 2016 and July 14, 2016, with the intent to promote or aid the commission of an offense, to-wit: Tampering with Physical Evidence, agreed with Ernest Longhini that at least one of them or another would engage in conduct constituting the offense of Tampering with Physical Evidence, and Karyl Bishop, committed the following overt act(s): Contacting phone company, in violation of A.R.S. §§ 13-1003, 13-501, 13-2809, 13-2801, 13-701, 13-702, and 13-801

_A True Bill_

("A True Bill")

WILLIAM G MONTGOMERY
MARICOPA COUNTY ATTORNEY

Date: September 21, 2016

Lacey Gray
Deputy County Attorney

FOREPERSON OF THE GRAND JURY

rm

EXHIBIT THREE (3)

1

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

PROCEEDINGS BEFORE THE 679TH COUNTY GRAND JURY

In re the Investigation of:        679 GJ 284

ERNEST LONGHINI (001)               SUPERIOR COURT NO.
KARYL BISHOP  (002)          /      CR 2016-000667-001
                                    CR 2016-000667-002

REPORTER'S TRANSCRIPT OF GRAND JURY PROCEEDINGS

September 21, 2016

Phoenix, Arizona

**PREPARED BY:**

BARBARA H. STOCKFORD, RMR/CRR/CRC
Certified Court Reporter
Arizona Certificate No. 50463

**PREPARED FOR:**

ORIGINAL

GJT

MARICOPA COUNTY SUPERIOR COURT

**A P P E A R A N C E S**

**DEPUTY COUNTY ATTORNEY:**

William Moore

Lacy Gray

**679th MARICOPA COUNTY GRAND JURY:**

Grand Jury Foreperson

Alternate Foreperson

MR. MOORE:  Now, this is the 679 Grand Jury No. 284.  It's the investigation of Ernest Joseph Longhini, III, and Karyl Erin Bishop.  The time, I think, is about 2:25 in the afternoon.

JUROR ███: What was the first name? I didn't hear the first name.

MR. MOORE:  Karyl Bishop.

JUROR ███: No, the first name.

MR. MOORE:  Ernest Longhini.

There are 40 counts.  The first 39 apply only to Ernest.  The Count 40, which is a conspiracy to commit tampering with physical evidence, that's where Karyl comes in.  So 39 counts go toward Ernest and the last count goes for Karyl.  Everybody understand?

All right.  They are charged, as I said, with -- Ernest is charged with attempt to commit sexual assault involving -- there's a few counts of involving or using minors in a drug offense.  There's sexual conduct with a minor.  There's child prostitution. There's actual sexual assault.  First one was attempt. There's furnishing obscene or harmful items to minors; public sexual indecency, indecent exposure.  There's also possession of drug paraphernalia, a couple counts of that.  There's conspiracy to commit tampering with physical evidence that applies to Ernest himself.  And

there's Count 40, finally, is conspiracy to commit tampering with physical evidence.

Looks like -- this all happen at the same time -- time frame?

MS. GRAY: No.

MR. MOORE: I'm looking at --

MS. GRAY: I believe Counts 1 through 19 have a date range of May 18th, 2015, through July 7th of 2016.

MR. MOORE: It also goes up to --

MS. GRAY: And that's true as to Victim B as well. So that would actually go all the way up to Count 28. They all have that same date range of May 18th of 2015 through July 7th of 2016.

MR. MOORE: Okay. Then finally, for Count 29, Count 30, 31, all the way to what?

MS. GRAY: I believe that is just for Counts 29 through 31 have the same date range.

MR. MOORE: What about up to 38?

MS. GRAY: That's a separate victim with a separate date range, I believe. So Counts 29 through 31 have the same date range.

MR. MOORE: Okay. Well, let's do that. That's -- oh, I see. May 18, 2015, to July 7, 2016?

5

MS. GRAY:  That's correct.

MR. MOORE:  Okay.  And then from Counts 29 to -- let's see -- whoops.  Okay, I see.  29 goes -- 29 to 31, right?

MS. GRAY:  That would be the May 18th, 2015.

MR. MOORE:  No.  It's January 1, 2016, through July 7, 2016.

MS. GRAY:  That's correct.

MR. MOORE:  Okay, so that's from 29 to 31.  32 --

MS. GRAY:  To 36.

MR. MOORE:  What?

MS. GRAY:  To 36.

MR. MOORE:  -- through 36, we talk about June 1st, 2013, and up until -- between that date and June 1st, 2016.  All right.

Then Counts 37 and 38 is between June 1, 2016, and July 7, 2016, correct?

MS. GRAY:  Yes.

MR. MOORE:  Then we have Count 39 and Count 40 which are the conspiracy counts, right?

MS. GRAY:  Correct.

MR. MOORE:  Is July 12, 2016, through July 14, 2016.

MS. GRAY:  Correct.

MARICOPA COUNTY SUPERIOR COURT

MR. MOORE: Everybody get all that? All right. Anyway, those are the time frames that we're going to be talking about during the course of the testimony in this case.

JUROR ███████: What are the dates on the 32 to 36?

MR. MOORE: 32 through --

JUROR ███████: 36.

MR. MOORE: 36. Let's see. 32 through 36 looks like it's June 1, 2013, through June 1, 2016. Okay.

Now, to assist in determining if probable cause exists, the following statutes may be appropriate. They talk about attempt statutes. For the attempted sexual assault, that is 13-1001. And before I forget to say it, we also should remind you that 13-105 always applies.

Now sexual assault -- you'll see that in a few of these counts -- is 13-1401, 13-1406.

And as you know, narcotic drugs is 13-3401, 13-3408 and, if you have a minor involved in narcotics, you have 13-3409. Now, 13-3409 has not been read to you, but we'll read it to you momentarily.

So, we've got narcotics involved. We have sexual conduct with a minor. That is 13-1405. We have

child prostitution which is 13-3212, 13-3211.

We have -- Count 16 is -- no, I've already talked about sexual assault.  Sorry.

Count 17, they talk about furnishing obscene or harmful materials to minors.  That -- those statutes are 13-3501, 13-3506.  There's a couple of those.

Count 19 is public sexual indecency.  That is 13-1403.

Apparently, there's having minors involved in not only in narcotics, but also dangerous drugs.  That is 13-3407.

26 is indecent exposure.  That is 13-1402.

Paraphernalia that goes along with the drugs is 13-3415.  The conspiracy statute is 13-1003 and, finally, the tampering with evidence is 13-2801 and 13-2809.

Did I miss anything?

MS. GRAY:  I don't believe so.

MR. MOORE:  I think I got everything there. All those statutes potentially will assist you in determining if probable cause exists in this case.

Now, the one statute that has not been read to you, among all those, is the 13-3409 which involves the use of minors and drug offenses.  Okay.  At this point, Lacey is going to give you a -- she's going to

read you that statute.  I've handed out a copy to each and every one of you.  So follow along and take it away.

MS. GRAY:  Thank you.

13-3409.  Involving or using minors in drug offenses; classification.

Subsection A.  A person shall not knowingly:

1.  Hire, employ or use a minor to engage in any conduct, completed or preparatory, that is prohibited by Sections 13-3404, 13-3404.01, 13-3405, 13-3406, 13-3407 and 13-3408.

Subsection 2.  A person shall not knowingly sell, transfer or offer to sell or transfer to any minor any substance if its possession is prohibited by Sections 13-3404, 13-3401, 13-3405, 13-3407 and 13-3408.

Subsection B.  A person who violates this section is guilty of a Class 2 felony and is not eligible for suspension of sentence, probation, pardon or release from confinement on any basis until the sentence imposed by the Court has been served or commuted and, if the minor is under 15 years of age, it is punishable pursuant to Section 13-705, Subsection C.

Subsection C.  In addition to any other penalty prescribed by this title, the court shall order a person who is convicted of a violation of this section to pay a fine of not less than $2,000 or three times the

MARICOPA COUNTY SUPERIOR COURT

value as determined by the court of the substance involved in or giving rise to the charge, whichever is greater, and not more than the maximum authorized by Chapter 8 of this title.

A judge shall not suspend any part or all of the imposition of any fine required by this subsection.

MR. MOORE:  Okay.  You've heard 13-3409. Does anyone want that reread?  Anyone need it clarified?

THE GRAND JURY PANEL:  (No oral response.)

MR. MOORE:  I take it by your silence nobody does.

All right.  All those other statutes that we talked about were all read to you on the 17th day of August 2016.  At that time, all members of the grand jury were present.  In addition, copies of those statutes have been provided to all members of the grand jury.

Are there any who would like to have any of those statutes reread or clarified?

THE GRAND JURY PANEL:  (No oral response.)

MR. MOORE:  I take it by your silence that nobody does.

Okay.  The victims are as follows and I assume that these are the victims we're going to be talking about here?

10

MS. GRAY:   That's correct.

MR. MOORE:   All right.   Should you ask for a draft indictment, you will see Victim A.   Now Victim A applies through -- from Count 1 all the way through Count 21.

Okay.   Victim A is Emily, E-m-i-l-y, Pierce, P-i-e-r-c-e.   Okay.

MS. GRAY:   And I'm sorry.   That might be an error, but Victim A applies through Count 19.

MR. MOORE:   Okay.   Well, you had it.   So it goes to 19.   Oh, yeah.

Okay.   Victim B -- and you have it in here that that applies from Count 20 through 28?   Am I correct on that?

MS. GRAY:   I believe that's correct, yes.

THE COURT:   All right.   So Victim B is Abby. A-b-b-y, Pierce, P-i-e-r-c-e.   Okay.

Now, Victim C, who applies from 29 through 31, is Victim C, is Maddy, M-a-d-d-y, Pierce, P-i-e-r-c-e.

Victim D, who applies from Counts 32 through 36, is Micayla.

MS. GRAY:   Micayla, I believe.

MR. MOORE:   Micayla.   Okay.   Micayla, M-i-c-a-y-l-a, Spangler, S-p-a-n-g-l-e-r.   All right.

Now, she -- does she apply from 32 to --

MS. GRAY:   36.

MR. MOORE:   To 36?

MS. GRAY:   Um-hmm.

MR. MOORE:   All right.   Oh, and then there's --

MS. GRAY:   Victimless counts.

MR. MOORE:   Let's see.   Hold on.   So that will be Count 37.   From Count 37 through 39, the victim there.   Let's see.   It doesn't look like there's any --

MS. GRAY:   There are no victims.

MR. MOORE:   There's no victims.   All right.   What is this?

MS. GRAY:   That's the suspects.

MR. MOORE:   Never mind; never mind.   It's been a long day.   And there's no victims for Count 40.   All right.   So those are the victims in this case.

The officer appears to be -- oh, here it is.   It is Detective Graham.

MS. GRAY:   That's correct.

MR. MOORE:   Detective Graham from the Maricopa County Sheriff's Office.

Record should reflect the entire grand jury panel is present with the exceptions of ████████ and ████████.

12

Now, whenever you get a case this complicated, sometimes the news media picks up on it, and I've been told that that has happened in this case, correct?

MS. GRAY:  Correct.

MR. MOORE:  And so at this point, Lacey will give you a synopsis of what this case is about and we'll see if anyone has seen, read or heard anything about this in the news.

And can you give us a general time frame as to when they might have heard about this in the news?

MS. GRAY:  Yes, I can.  You may have seen articles or news coverage on this incident starting from July 7th of 2016.  Outlets that have covered this story include ABC 15, the Washington Times, AZCentral, AZ Daily Independent, 12 News, Wow.com, Mohave Daily News and the Arizona Daily Star.  The coverage includes a story regarding a -- one, Mr. Ernest Longhini who resides in Anthem, and the stories allege that he was injecting minors or underage girls with heroin and/or methamphetamine in exchange for sexual acts or sexual favors.  There were also subsequent news articles that came out after July 7th of this year outlining potential unrelated arrests of this man that had to do with other drug arrests.  So you may have seen stories like that

MARICOPA COUNTY SUPERIOR COURT

related to him.

MR. MOORE:  And in each of these articles, did they use his real name, Longhini?

MS. GRAY:  Yes.

MR. MOORE:  Anybody seen, read or heard anything about this case at this point?  All right. We've got at least one person.

The -- the thing you need to understand is that you cannot use any outside information to decide this case.  The only information that you can use to decide this case will come from the witness stand today. Should you find you cannot put aside the outside information to decide this case, you must disqualify yourself.

Mr. ███, is it?  Okay.  Are you willing to abide by that admonition?

JUROR ███:  (Nodding)

MR. MOORE:  Okay.  Now the rest of you, during the course of this -- this testimony, you may suddenly realize that you, too, have seen, read or heard something about this case in the media.  Should that be the case, everybody else in this room must apply -- must abide by that media admonition as well.  In other words, if you can't put aside the outside information that you've heard in making your decisions, you must

disqualify yourself.

Now, everybody in this room, is there anyone that will not follow that admonition?

THE GRAND JURY PANEL:  (No oral response.)

MR. MOORE:  I take it by your silence everyone will follow that admonition.  Now, that admonition, along with all those other admonitions concerning persons who are disqualified from serving as grand jurors, are applicable.

THE GRAND JURY PANEL:  (No oral response.)

MR. MOORE:  And I take it by your silence they don't apply to any of you.

JURY FOREPERSON ████:  We are about to consider the matter of 679 GJ 284 and the investigation involving the individuals named.  The usual admonition applies.


                    JOHN GRAHAM,

called as a witness herein, having been first duly sworn, was examined and testified as follows:


MR. MOORE:  State your name for the record and spell your last name.

THE WITNESS:  Detective John Graham.  Last name is G-r-a-h-a-m, just like the cracker.

15

MR. MOORE:  All right.  Go ahead.

MS. GRAY:  Thank you.

E X A M I N A T I O N

BY MS. GRAY:

Q.    Detective Graham, could you please introduce yourself to the members of the grand jury.

A.    Sure.  My name is John Graham.  I've been a detective with the sheriff's office for 15-plus years. I worked for patrol a little bit before that, and I mainly work narcotics and fugitives now.

Q.    And Detective, during your work in that capacity, did you become involved in an investigation of an Ernest Longhini?

A.    Yes, ma'am.

Q.    Can you please explain to the grand jurors how you became involved in that investigation?

A.    Yes, ma'am.  I had received some information from patrol guys up in the Anthem area and also an anonymous weed tip, drug complaint tip, that told me there was some drug activity at his house and the possibility of some minors being involved.

Q.    And based on that information, what did you do to proceed with the investigation?

A.    We set up surveillance on his residence, myself and the guys on my squad, and witnessed a known

missing runaway juvenile leave the residence at a rather good pace.

Q.   And when you say that you witnessed a juvenile leave the residence, what do you mean?

A.   Specifically, her name was Emmie Pierce.  She left the residence while we were watching and ran south from the house.

Q.   And when you and your fellow officers witnessed Emmie Pierce, or Emily Pierce, leaving the residence, what did you do?

A.   Made contact with her.

Q.   As your investigation continued, was Emily Pierce interviewed?

A.   She was.

Q.   Was the suspect, Ernest Longhini, in the house when Emily Pierce left the home that day?

A.   Yes, ma'am.

Q.   And was he contacted?

A.   He was.

Q.   Can you tell the grand jurors about that?

A.   He didn't want to come out of house for about 20 minutes and then we persuaded him to come out and took him in for an interview.

Q.   So, Emily Pierce was interviewed and then the suspect, Ernest Longhini, was also interviewed?

MARICOPA COUNTY SUPERIOR COURT

A.    Yes, ma'am.

Q.    Based upon your investigation, were other juvenile females identified as possible victims?

A.    Yes, ma'am.

Q.    And could you tell the grand jurors who those people were?

A.    Sure.  Emily has a twin sister named Abby, or Abigail, and an older sister named Maddy or Madeline Pierce, also another juvenile that wasn't related -- let me grab her name real quick.  Sorry.

Q.    That's okay.

A.    First name was Micayla.  Spangler.

Q.    And so through the course of the investigation, you identified Emily Pierce and then also Abigail Pierce, Madeline Pierce and Micayla Spangler; is that correct?

A.    Yes, ma'am.

Q.    And could you tell us the date of birth first for Emily Pierce?

A.    Emily Pierce was born 5/18 of 2000.

Q.    And so when you contacted her -- and I'm sorry, what day did you contact Emily Pierce and see her fleeing Mr. Longhini's home?

A.    July 7th, 2016.

Q.    So on that date, she would have been 16 years

18

old?

A.    Yes, ma'am.

Q.    And you said that you identified another juvenile, Abigail Pierce.  Could you please tell the grand jurors what her date of birth was?

A.    Same as her twin sister, May 18th, 2000.

Q.    And so Abigail Pierce, or Abby Pierce, and Emily Pierce are twins?

A.    Yes, ma'am.

Q.    You then mentioned a third victim or possible involved juvenile, Madeline Pierce or Maddy Pierce.  Could you please tell the grand jurors her date of birth?

A.    Maddy Pierce's date of birth is December 3rd, 1998.

Q.    So then at the time that she was contacted, would she have been 17 years old?

A.    Yes, ma'am.

Q.    And then finally, you identified a fourth possible juvenile involved, Micayla Spangler; is that correct?

A.    Yes, ma'am.

Q.    And could you please tell the grand jurors her date of birth?

A.    June 21st, 1998.

MARICOPA COUNTY SUPERIOR COURT

Q.    And so when you -- when she was contacted on -- or after this date in July, she would have just turned 18; is that correct?

A.    Yes, ma'am.

Q.    So to walk us through your investigation, starting with Emily if you wouldn't mind, you mentioned that Emily was interviewed; is that correct?

A.    Yes, ma'am.

Q.    Could you please tell us -- well, first of all, did you interview Emily or did someone else interview Emily?  Could you please tell us a little bit about that?

A.    I spoke to her very briefly at the scene, but then she was transported to one of our other divisions where she could be forensically interviewed.

Q.    What is a forensic interview?

A.    Somebody that's trained to specially interview juveniles who are victims of sex assault kind of thing.

Q.    And Emily Pierce participated in the forensic interview that day on July 7th of 2016?

A.    Yes, ma'am.

Q.    During her forensic interview, did she disclose several incidents that occurred between her and Mr. Longhini?

A.    She did.

Q.    I'd like to discuss a few of those with you. Did she first explain whether or not she knew Mr. Longhini?

A.    She did.

Q.    Did she then explain an incident that occurred with Mr. Longhini in which she woke up and he was trying to take her pants off?

A.    Yes.

Q.    Could you tell the grand jury about that?

A.    Emily stated that she had gotten really high on heroin.  And typically heroin users will go to sleep after they use heroin.  And when she woke up, Mr. Longhini had taken her pants off and was kissing the inside of her thighs.

Q.    Did Emily state how this made her feel?

A.    It scared her to the point where she actually told her mom about it and they reported that to the sheriff's office.

Q.    Did Emily indicate when this may have occurred?

A.    In February.

Q.    February?

A.    2016.  Sorry.

Q.    You mentioned that the suspect in this case,

Mr. Longhini, was also interviewed?

A.   Yes, he was.

Q.   Prior to his interview, was he read his Miranda rights?

A.   Yes, ma'am.

Q.   And he agreed to participate in the interview?

A.   He did.

Q.   When he was interviewed, was he questioned about this incident that Emily disclosed about him taking off her pants and kissing on the inside of her thighs?

A.   He did.

Q.   And what did he state when he was questioned about this incident?

A.   He -- he basically, you know, admitted to the incident and stated that she was responding to him during the time and then, at one point, freaked out.  He also admitted that he was near her vagina, because she was basically saying yes during the -- during the incident.

Q.   But he ultimately admitted in the interview to taking her pants off and kissing or having his mouth near her vagina?

A.   He did.  He stated it was because she

suggested it and didn't argue with him.

Q.    But to clarify, in Emily's interview, she stated that she was unconscious?

A.    Right.

Q.    Did Emily disclose during her interview any times in which Mr. Longhini would have provided her with any illicit drugs?

A.    She did.

Q.    Could you tell the grand jurors about that?

A.    She stated that, on numerous occasions, he injected her with heroin.  She stated the first time she shot up with heroin was when she was 15 years old.  And she stated the last day that she -- that he injected her with heroin was the day that she was contacted by us on the 7th of July.

Q.    So she indicated he had been shooting her up with heroin since she was 15?

A.    Yes, ma'am.

Q.    And that was the first time was when she was 15 years old?

A.    Yes, ma'am.

Q.    And again, you said that you had -- the suspect was interviewed in this case.  Did he also admit to shooting Emily up with heroin?

A.    He did.  He admitted to 10 to 15 times.

MARICOPA COUNTY SUPERIOR COURT

Q.    Did Emily indicate what happened on the last time or the time on July 7th that she was seen leaving Mr. Longhini's house?

A.    Yes.

Q.    Can you please tell the grand jurors about that?

A.    She basically said that she went to his house to get some heroin and that he refused to go get heroin unless she masturbated his penis.

Q.    And so did they then formulate an agreement in which she would masturbate his penis in exchange for heroin?

A.    They did.  He requested that she count backwards from 150 while she was doing it.

Q.    And so that was the length of time that she had to masturbate his penis for?

A.    Yes, ma'am.

Q.    Did she, in fact, masturbate his penis?

A.    She did.

Q.    When she finished doing that, did he, in fact, go and retrieve the heroin for her?

A.    He did.

Q.    When he came back with the heroin, what happened?

A.    He prepared it and injected it into her arms.

Q.    When Emily was contacted by the interviewer and then later when she was examined by a nurse, was there evidence on her body that she had been injected with a needle?

A.    There was numerous injection sites on her arms.

Q.    And when you say "numerous injection sites," what do you mean?

A.    I believe there were 17 individual puncture marks from a needle, you know, going through the skin.

Q.    On her arms?

A.    Yes.

Q.    And again, you said that the suspect was interviewed in this case.  Did he -- was he questioned about this incident with Emily?

A.    He was.

Q.    And what did he say?

A.    He admitted to her having masturbated his penis that morning.

Q.    And was he questioned about whether there was an agreement or whether he provided heroin to her that morning?

A.    He basically -- basically said that he made her feel guilty about all the times that she had promised to do a sex act on him and didn't fulfill her

MARICOPA COUNTY SUPERIOR COURT