Anders V. Rosenquist, Bar #002724
**ROSENQUIST & ASSOCIATES**
**ATTORNEYS AT LAW**
42104 N. Venture Drive, Ste. A122
ANTHEM, AZ 85086
TELEPHONE: (480) 861-7115
rosenquistlegal@gmail.com
*Attorney for Petitioner*
*Ernest Longhini*

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

| | |
|---|---|
| STATE OF ARIZONA, | No. CR2016-000667-001 |
| Plaintiff, | |
| vs. | **REPLY** |
| ERNEST JOSEPH LONGHINI III | PETITION FOR POST- CONVICTION RELIEF |
| Defendant/Petitioner. | (Post-Conviction Relief Management Unit) |

Petitioner's Reply to State's Response to Post-Conviction Relief Petition.

The Response, pages 1-11, allege a number of conclusions that were taken from the lead investigating police officer's reports, which are not supported or contradicted by the (video) interviews of the victims. The video interviews were lengthy and covered the time before the victims met Petitioner to the time he was charged.

The Petition raised valid reasons why the victims' statements are suspect. The victims had a strong motive to lie, to avoid prosecution for crimes they committed. The police gave the victims the opportunity to set out all the crimes they committed without fear of punishment, because they

were given immunity for any crimes they admitted to in the interview. The victims knew the police were trying to make a case against Petitioner, so to satisfy them, and ensure their immunity, they blame Petitioner for all the crimes they were involved in or had committed. All they had to do was make small changes to the scenario of what happened, to shift blame to Petitioner, and make themselves out as victims. Even though the victims were underage, over 15 but under 18, they were not naive, and were smart enough to know the police would not scrutinize their statements blaming Petitioner.

The prosecutor and lead police officer were complicit in the victims' misconduct. A seasoned narcotics police officer ignoring the obvious, that the victims were long time drug addicts, who would lie to protect themselves from being caught. Yet the officer took their allegations as the truth, and strong enough to support the charges without questioning their veracity.

The prosecutor had a duty to independently evaluate the case against Petitioner, to make sure each charge is supported by reliable facts. The prosecutor failed to adhere to this responsibility, by ignoring the victims' motives, and criminal history with the police and courts, which provided ample reason to question their honesty. Counts 1 thru 36 of the 40 count Indictment were based solely on the victim's statements. The prosecutor took every statement the victims made as the truth, and strong enough to support a charge.

The prosecutor protected the weaknesses in the victims' statements from being exposed, by relying on a strict interpretation of the statute that allows a victim to refuse to be questioned and ignoring the case law that provides an exception when there is an issue of credibility. The prosecutor went further to protect the victims' statements from being challenged, by putting the Petitioner in a position where he had to either enter a plea, or risk a possible sentence of over 100 years in prison, if he went to trial, where he could challenge the victims' credibility.

The State did not offer any opposing facts that contradicting the independent evidence presented in the Petition. That Petitioner was suffering from cognitive mental disorders caused by brain injuries. That the mental problems affected his ability to make decisions in social situations, and there is more than a reasonable probability Petitioner's mental defects rendered him unable

to 'actually know' the criminal act[s] he purportedly committed were wrong. That in the social/romantic relationship he perceived he had with the victims he did not understand he was doing anything wrong.

Two doctors evaluated Petitioner, Dr. Col and Dr. Blackwood. Dr. Col evaluated him three times as he was growing up, and Dr. Blackwood evaluated him in reference to the charges in the case. Both doctors agreed, Petitioner had multiple disorders that caused a defect in his reasoning abilities. They concluded, in social situations like the one Petitioner was in with the victims, he was 'clueless', and 'at best dealing with peers.' Based on their conclusions, Petitioner has a Constitutional and statutory right to present a defense. He has a Constitutional right to present any credible defense, and has a statutory right to present a defense pursuant to A.R.S. §13-502, Guilty except Insane.

## A.R.S. § 13-502. Insanity test; burden of proof; guilty except insane verdict

**A.** A person may be found guilty except insane if at the time of the commission of the criminal act the person was afflicted with a mental disease or defect of such severity that the person did not know the criminal act was wrong. A mental disease or defect constituting legal insanity is an affirmative defense. Mental disease or defect does not include disorders that result from acute voluntary intoxication or withdrawal from alcohol or drugs, character defects, psychosexual disorders or impulse control disorders. Conditions that do not constitute legal insanity include but are not limited to momentary, temporary conditions arising from the pressure of the circumstances, moral decadence, depravity or passion growing out of anger, jealousy, revenge, hatred or other motives in a person who does not suffer from a mental disease or defect or an abnormality that is manifested only by criminal conduct.

B. (Death Penalty provision).

**C.** The defendant shall prove the defendant's legal insanity by clear and convincing evidence.

**D.** If the finder of fact finds the defendant guilty except insane, the court shall determine the sentence the defendant could have received pursuant to section 13-707 or section 13-751, subsection A or the presumptive sentence the defendant could have received pursuant to section 13-702, section 13-703, section 13-704, section 13-705, section 13-706, subsection A, section 13-

-3-

710 or section 13-1406 if the defendant had not been found insane, and the judge shall sentence the defendant to a term of incarceration in the state department of corrections and shall order the defendant to be placed under the jurisdiction of the psychiatric security review board and committed to a state mental health facility under the department of health services pursuant to section 13-3994 for that term. In making this determination the court shall not consider the sentence enhancements for prior convictions under section 13-703 or 13-704. The court shall expressly identify each act that the defendant committed and separately find whether each act involved the death or physical injury of or a substantial threat of death or physical injury to another person.

E. A guilty except insane verdict is not a criminal conviction for sentencing enhancement purposes under section 13-703 or 13-704.

---

Therefore, based on the Issues and facts presented in the Petition and this Reply, the court should set aside the plea and dismiss the case, or set aside the plea and order a new trial, or at a minimum, order a hearing be held where the victims can be examined as to their truthfulness, and the prosecutor and the investigating police officer can be examined as to their motives and truthfulness.

Respectfully submitted this 12th day of January 2021.

/s/ Anders V. Rosenquist
Anders V. Rosenquist
*Attorney for Petitioner*

Filed this 12th day of January 2021,
with the Clerk of the Superior Court, Div. 1,
Post-Conviction Relief Management Unit.

Copies of the foregoing served on the
12th day of January 2021 on
Deputy Maricopa Counrty Attorney
Daniel Strange by:

/s/ Tanya R. Hill

-4-

Clerk of the Superior Court
\*\*\* Electronically Filed \*\*\*
01/26/2022 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CR2016-000667-001 DT                              01/25/2022

                                                 CLERK OF THE COURT
HONORABLE MICHAEL C. BLAIR                          C. Jackson/K. Faso
                                                    Deputy

STATE OF ARIZONA                                 DANIEL STRANGE

v.

ERNEST JOSEPH LONGHINI III (001)                 ANDERS V ROSENQUIST JR.

                                                 COURT ADMIN-CRIMINAL-PCR
                                                 JUDGE BLAIR

## MINUTE ENTRY
## RE DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF

Pending before this court is defendant's November 16, 2020, *Petition for Post-Conviction Relief Under Rule 33*, the State's December 28, 2020, *Response*, and defendant's January 12, 2021, *Reply*.

On September 21, 2016, defendant was indicted on 40 charges, including two counts of Attempt to Commit Sexual Assault, a class 3 felony; nineteen counts of Involving or Using Minors in Drug Offenses, a class 2 felony; four counts of Sexual Conduct with a Minor, a class 6 felony; four counts of Child Prostitution, a class 2 felony; one count of Sexual Assault, a class 2 felony; two counts of Furnishing Obscene or Harmful Items to Minors, a class 4 felony; two counts of Public Sexual Indecency, a class 1 misdemeanor; two counts of Indecent Exposure, a class 1 misdemeanor; two counts of Possession of Drug Paraphernalia, a class 6 felony; and two counts of Conspiracy to Commit Tampering with Physical Evidence, a class 6 felony.

On February 7, 2019, defendant plead guilty to one count of Child Prostitution, a class 2 felony; three counts of Attempted Sexual Assault, a class 3 felony; one count of Involving or Using Minors in a Drug Offense, a class 2 felony; and one count of Attempted Involving or Using Minors in a Drug Offense, a class 3 felony. He was sentenced on April 23, 2019, to a total of 20.5 years in prison: 13.5 years on the Child Prostitution count with a consecutive 7-year term

Docket Code 187                    Form R000A                          Page 1

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CR2016-000667-001 DT                                          01/25/2022

on the Involving or Using Minors in a Drug Offense count; his sentence also included a probation tail on the remaining four counts.

Defendant timely filed a *Notice of Request for Post-Conviction Relief* on May 23, 2019. The court appointed counsel to assist defendant. This is defendant's first petition.

Defendant raises five arguments in his *Petition*: (1) a guilty except insane defense was not raised on his behalf; (2) his constitutional right to confront his accusers was violated; (3) the prosecutor committed prosecutorial abuse of power; (4) ineffective assistance of counsel by failing to raise defendant's mental health issues as a defense; and (5) the plea was defective.

## I.    Defendant's Constitutional Claims

**THE COURT FINDS** that defendant's first three arguments are precluded because of his February 7, 2019, guilty plea. *See* Rule 33.2(a)(1) Ariz.R.Crim.Proc. A "guilty plea waives all nonjurisdictional defects." *State v. Carter*, 151 Ariz. 532, 533, 729 P.2d 336, 337 (App. 1986) (citation omitted). The U.S. Supreme Court has stated:

> a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

**IT IS ORDERED** that defendant's claims for post-conviction relief relating to an allegation that a guilty except insane defense was not raised, that his constitutional right to confront his accusers was violated, and that the prosecutor abused her power are precluded as a matter of law by his February 7, 2019, guilty plea.

## II.    Defendant's Claim for Ineffective Assistance of Counsel

The seminal case for ineffectiveness of counsel is *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* sets forth a two-part test to determine whether an attorney's assistance was so defective that a reversal is warranted. First, counsel's performance must be deficient. Second, the deficient performance prejudiced the defendant. *Id.* at 687. Arizona follows the *Strickland* test.

Docket Code 187                          Form R000A                                 Page 2

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CR2016-000667-001 DT                                         01/25/2022

*See State v. Bennett*, 213 Ariz. 562, 567, ¶ 21, 146 P.3d 63, 68 (2006) ("To state a colorable claim of ineffective assistance of counsel, **a defendant must show both** that counsel's performance fell below objectively reasonable standards and that this deficiency prejudiced the defendant.") (emphasis added).

To determine if counsel's performance was deficient, defendant "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland* 466 U.S. at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690; *see also State v. Santanna*, 153 Ariz. 147, 149, 735 P.2d 757, 760 (1987) ("defendant must specify the acts or omissions of counsel that allegedly constitute ineffective assistance").

Defendant argues that his lawyer was ineffective for failing to recognize and raise the defendant's mental health issues as a defense, specifically a guilty except insane defense. He claims that if such a defense had been raised "during pretrial proceedings[,] a disposition could have been reached where Petitioner would have been placed in a mental health institution, and been treated, rather than put in prison." *Petition*, page 23, lines 1 – 3.

"The burden of establishing ineffectiveness of trial counsel is on the claimant. [Citations omitted.] Proof of ineffectiveness must be a demonstrable reality rather than a matter of speculation." *State v. McDaniel*, 136 Ariz. 188, 198, 665 P.2d 70, 80 (1983) *abrogated on other grounds by State v. Walton*, 159 Ariz. 571, 769 P.2d 1017 (1989). Here, defendant merely speculates that a different disposition "could have been reached" without providing any evidence to justify that conclusion. He failed to provide "any affidavits, records, or other evidence currently available to the defendant supporting the allegations in the petition." Rule 33.7(e) Ariz.R.Crim.Proc. Without such "demonstrable" evidence, defendant's claim fails.

In this case, defendant's original trial counsel asked the court to have defendant evaluated pursuant to Rule 11 Ariz.R.Crim.Proc. *See* December 20, 2016, *Motion for Rule 11 Evaluations*. The court granted the motion on December 21, 2016. The parties then stipulated for the determination of defendant's competency based on experts' reports. *See* stipulation filed February 28, 2017. Based on those reports, the court found defendant competent. *See* March 8, 2017, minute entry, page 2.

For whatever strategic or tactical reason, defendant's trial counsel never raised a guilty except insane defense. "Disagreements as to trial strategy or errors in trial will not support a claim of ineffective assistance of counsel as long as the challenged conduct could have some

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CR2016-000667-001 DT                                01/25/2022

reasoned basis." *State v. Meeker*, 143 Ariz. 256, 260, 693 P.2d 911, 915 (1984). Different standards must be met to find a defendant competent to stand trial versus guilty except insane. *Compare* Rule 11 Ariz.R.Crim.Proc. and A.R.S. § 13-4501 *et seq.* with A.R.S. § 13-502.[1] These different standards could be the reason why defense counsel chose not to raise a guilty except insane defense. Unfortunately, defendant failed to present any evidence as to why his trial counsel chose not to do so. Without any such evidence, this court will defer to counsel's trial strategy.

Both factors, deficient performance and prejudice, must be established to present a colorable claim for ineffective assistance of counsel. *State v. Kolmann*, 239 Ariz. 157, 160, ¶ 9, 367 P.3d 61, 64 (2016). "[A] petition that fails to state a colorable claim may be dismissed without an evidentiary hearing." *Id.* at 160, ¶ 8, 367 P.3d at 64.

**THE COURT FINDS** that defendant failed to identify any acts or omissions by his counsel that fell below an objective standard of reasonableness, so he has failed to make a colorable claim for ineffective assistance of counsel. The court need not address the prejudice prong. No evidentiary hearing is needed.

**IT IS ORDERED** that defendant's claim for ineffective assistance of counsel is dismissed.

### III.   Claim of a Defective Plea

Defendant claims his plea was defective "because he was unaware of the defense of 'Guilty except Insane' in A.R.S. § 13-502." *Petition*, page 23, lines 22 – 23. He also argues his plea was defective because of alleged misconduct by the prosecutor and investigating police officer to force a plea. *Id.* page 24, lines 6 –7. Defendant also argues that the plea was defective because the prosecutor prevented his attorney from questioning the victims to challenge their credibility. *Id.* lines 11 – 13. Finally, he argues that the plea was not entered knowingly, intelligently, and voluntarily. *Id.* lines 15 – 16.

Defendant provided no affidavits or other evidence to establish whether his trial counsel ever advised him of the guilty except insane defense or how the prosecutor and police officer conspired to force him to enter a plea. Moreover, defendant failed to provide evidence how the

---

[1] One of these standards is that, to be found guilty except insane, a defendant must prove by clear and convincing evidence that he is legally insane due to a mental disease or defect of such magnitude that he did not know his actions were wrong. *See* A.R.S. § 13-502(A) & (C).

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CR2016-000667-001 DT                                          01/25/2022

prosecutor prevented him from interviewing the victims. Actually, the Arizona's Victim's Bill of Rights allows the victim to refuse to be interviewed by the defendant or the defendant's attorney. *See* ARIZONA CONSTITUTION, § 2.1(A)(5); *see also State v. Leonardo*, 226 Ariz. 593, 594, ¶ 5, 250 P.3d 1222, 1223 (App. 2011). Thus, it is more likely that the Victim's Bill of Rights in the Arizona Constitution prevented defendant from interviewing the witnesses, not the prosecutor. Finally, defendant fails to explain how his plea was not entered knowingly, intelligently, and voluntarily when there is no evidence that the trial court did not comply with Rule 17.2 Ariz.R.Crim.Proc. during the plea hearing on February 7, 2019.

**THE COURT FINDS** that defendant failed to provide any evidence to show that his plea was defective in any way.

**THE COURT FURTHER FINDS** that defendant's plea was knowingly, intelligently, and voluntarily made.

**IT IS ORDERED** that defendant's claim of a defective plea is dismissed.

## IV.   Conclusion

"If, after identifying all precluded and untimely claims, the court determines that no remaining claim presents a material issue of fact or law that would entitle the defendant to relief under this rule, the court must summarily dismiss the petition." Rule 33.11(a) Ariz.R.Crim.Proc.

**THE COURT FINDS** that defendant's claims for post-conviction relief relating to an allegation that a guilty except insane defense was not raised, that his constitutional right to confront his accusers was violated, and that the prosecutor abused her power are precluded as a matter of law by his February 7, 2019, guilty plea.

**THE COURT FURTHER FINDS** that defendant's claim for ineffective assistance of counsel is not colorable because he failed to establish any deficient performance by his attorney.

**THE COURT FURTHER FINDS** that defendant's plea was not defective.

Therefore,

**IT IS ORDERED** summarily dismissing defendant's November 16, 2020, *Petition for Post-Conviction Relief* pursuant to Rule 33.11(a) of the Arizona Rules of Criminal Procedure.

Anders V. Rosenquist, Bar #002724
**ROSENQUIST & ASSOCIATES**
**ATTORNEYS AT LAW**
42104 N. Venture Drive, Ste. A122
ANTHEM, AZ 85086
TELEPHONE: (480) 861-7115
rosenquistlegal@gmail.com
*Attorney for Petitioner*
*Ernest Longhini*

# ARIZONA COURT OF APPEALS
# DIVISION ONE

| | |
|---|---|
| STATE OF ARIZONA, | Case No. _____ |
| Plaintiff, | Maricopa County Superior Court No. CR2016-000667-001 |
| v. | |
| ERNEST JOSEPH LONGHINI III, | **PETITION FOR REVIEW OF DENIAL OF POST-CONVICTION RELIEF** |
| Defendant/Petitioner. | |

Defendant, Ernest Joseph Longhini, III (hereinafter "Petitioner" or "Longhini") petitions the Arizona Court of Appeals pursuant to Ariz.R.Crim.P. 33.16 to review the summary dismissal of his Petition for Post-Conviction Relief.

## ISSUES PRESENTED FOR APPELLATE REVIEW

I.   Whether Petitioner's Constitutional Right to Present a Defense of Guilty Except Insane When Petitioner Suffered from A Mental Defect Pursuant to A.R.S §13-502 Was Violated?

II.  Whether Petitioner Received Ineffective Assistance of Counsel.?

Petitioner timely filed a Petition for Post-Conviction Relief on November 16, 2020. After briefing the trial court summarily dismissed the Petition for Post-Conviction Relief pursuant to Rule 33.11(a) of the Ariz. R. Crim. Proc. The Court found Petitioner's Constitutional claims relating to his attorney's failure to raise a 'mental defect' defense under A.R.S. §13-502; His right to confront his accusers and Prosecutorial abuse of power were precluded by his guilty plea. Appendix "A" decision.

## RESPONSE TO COURT'S DENIAL OF PETITION

In the denial Order the court stared, "The Court finds that defendant's first three arguments are precluded because of his February 7, 2019 guilty plea. *See* Rule 33.2(a)(1) Ariz. R. Crim. Proc." The Court cites a 1986 Arizona Court of Appeals decision and a 1973 U.S. Supreme Court decision to support the decision to reject Petitioner's first three claims.

The three claims precluded by the Court were:

I.    A CRITICAL DEFENSE OF GUILTY EXCEPT INSANE PURSUANT TO A.R.S §13-502 WAS NOT RAISED IN PETITIONER'S CASE.

II.   PETITIONER'S CONSTITUTIONAL RIGHT TO CONFRONT HIS ACCUSSERS WAS VIOLATED.

III.  THE PROSECUTOR COMMITED PROSECUTORIAL ABUSE OF POWER

The Court cited Rule 33.2(a)(1) as the basis for precluding the claims.

-3-

Rule 33.2 states, "**Preclusion of Remedy**." (**a**) states, "**Preclusion**." "A defendant is precluded from relief under Rule 33.1(a) based on any ground: (**1**) waived by pleading guilty or no contest to the offense."

"... Rules of the Supreme Court, by Order dated December 12, 2019 and on a permanent basis by Order dated February 5, 2020, effective Jan. 1, 2020. *COMMENT TO RULE 33.2(a)(1),*
*"A pleading defendant waives all non-jurisdictional defects and defenses, including claims of ineffective assistance of counsel, except those that relate to the acceptance or validity of the plea or to the sentence..."*

The Court wrongly precluded Petitioner's claim of Ineffective Assistance of Counsel because it relates to the validity of the plea, and the Court wrongly precluded Petitioner's claim of A Critical Defense of Guilty Except Insane Was Not Raised in Petitioner's Case because it relates to the validity of the plea.

In the denial Order it states, "Defendant provided no affidavits or other evidence to establish whether his trial counsel even advised him of the guilty except insane defense..." Defense counsel never advised Petitioner of the defense of 'guilt except insane', under A.R.S. §13-502, because counsel was unaware of the Statute before the plea was entered.

Defense counsel knew Petitioner had mental problems and made a motion for a Rule 11 Competency evaluation, which was ordered on January 4, 2017. When the evaluation was done the court ruled Petitioner was competent. However, after the Rule 11 evaluation, there was still concern by defense counsel and the Judge with Petitioner's

-4-

mental state. On June 1, 2017, the Judge ordered a complete evaluation of Petitioner's mental state. Dr. Blackwood was appointed to do the evaluation.

Dr. Blackwood's report is part of the record. Verbatim excerpts from the doctor's report, with his signature, are set out in the body of this appeal, and in the body of the Post-Conviction Petition.

This Petition and the Post-Conviction Petition refers to a book that explained Autism, and a television program, 60 minutes, that showed what autistic people can and cannot do. These references can't feasibly be turned into affidavits, exhibits or attachments, because of the large amount of information they contain that relates to Autism. The book and recording of the television program are available to the public, so if the State wanted to confirm the information used in the Petition, they would have been able to. The Petitions quote text messages from a conversation between the 'sisters' mother and Petitioner's mother, which the State could verify with the sisters' mother.

## STATEMENT OF FACTS AND ARGUMENTS

All the victims had a history of addiction to illegal drugs, stealing to get money to pay for the drugs, and being under court supervision (probation) for crimes they had committed.

The case against Petitioner was initiated when victim 'A' was stopped by a police officer walking away from Petitioner's house. She was questioned by the officer and told

-5-

him a litany of things that happened when she was with Petitioner. Petitioner was arrested and his house searched.

When the victims met Petitioner, they realized he had mental problems they could take advantage of, to manipulate him into doing anything they wanted by befriending him and making romantic overture's, with one promising to marry him.

The sisters talked Petitioner into letting them come to his house to do drugs. They would crawl through the window to his bedroom, do their drugs, and stay for a while enjoying the effects of the drugs. They did this because it was a place where they wouldn't get caught. The sisters also told Petitioner their dad was violent and when he threatened them, they needed a safe place to stay. Petitioner never had 'sex' with any of the victims at his house or any other place.

Petitioner's mother did not know what was going on in Petitioner's bedroom because she was working. She occasionally saw them when they came out of his room into the house. When Petitioner's mother was at work, the girls would go through the house and take things. They had a place they could sell stole items they took from her home and stores. They also stole Petitioner's medications.

When Petitioner's mother realized the girls were stealing things from her house she contacted the victims' mother about 'B', who she caught taking things. In text messages between the Petitioner's mother and the girls' mother, Petitioner's mother stated, *"**Knocking. She has stolen before, so she is not welcome back. My money and***

*possessions are for my family"*. The girl's mother replied, *"Please do not let her in your house I am very sorry please tell your son to not have any contact with her. I know he doesn't want to be mean to her but she will take advantage of any one she can right now." … "They are addicts and it is truly sad I never thought this would be our life as parents my husband and I are trying to work on her at least she has come home but can't say much else obviously." … "I will get them back if I see her as I said she has not come home I have police looking for her." … "If she shows up at your home please call the police she has a warrant for breaking the terms of her probation she also is a runaway."*

Petitioner's mother also received a text from another person who knew the 'sisters.' He stated, *"I have respect for you. So im (sic) deciding to tell you this, (B) is taking advantage of your son (Petitioner) to the max. I have a lot of information. If you would like to hear more, let me know. It's hard to watch so i (sic) need to say something. Chi."*

When the sisters kept going to Petitioner's house and stealing things, Petitioner's mother filed an "Injunction Against Harassment" against victim "A", at the Arrowhead Justice Court, Surprise Arizona, Case No. CC2017027262000. It did no good. The girls kept manipulating Petitioner into letting them come to his house while his mother was at work and do drugs, and steal things. At sentencing, Petitioner's mother told the court the sisters had stolen over $30,000,00 worth of her property.

-7-

The only evidence in the case are the statements made by the girls in interviews with the police, which were video, and audio recorded. Their statements are highly suspect because of the girls' history of lying to the police and others and stealing to support their drug addiction.

[1] Victim 'A'. The first 19 counts in the Indictment are based on statements she made during her (video) interview by the police. The interview was done in the afternoon of the same day she said she had taken a large amount of Heroin in the morning. At the beginning of the interview, she started crying and begged the officer not to make her go through the interview and to let her go back to rehab. The interview lasted an hour and a half. At the end of the interview, she cried when she was told she had to be examined by a nurse before she could leave. During the interview she appeared to be going through withdrawal, (from the drugs she took that morning). She made the following statements during her interview: She started using Heroin at age 13; She used drugs before she met Petitioner; She never had sex with Petitioner; and she was confused.

[2] Victim 'B'. The next 9 counts, 20 to 28, in the Indictment were based on statements she made during her (audio) interview by the police. (She was in a treatment facility recovering from drug addiction when she was interviewed). She made the following statements during her interview: She was on probation; It was easy to manipulate Petitioner; and she was a thief and addict.

[3] Victim 'C'. Charges 29, 30, 31, & 34, in the Indictment were based on statements she made during her (video) interview by the police: She said she was on probation; She was addicted to Heroin before she met Petitioner; She did not have sex with Petitioner; She ran away from home and stayed in Petitioner's bedroom for several days because if she went home her mother would call the police and turn her in for violating probation; Petitioner would talk about marrying 'A'; All he (Petitioner) wanted was companionship; She got her drugs from a drug dealer named Rickey; She would shoplift at Walmart, Target, Lowes, and other stores; and she would hang out with a group of people in the neighborhood and do drugs and got high with them.

[4] Victim 'D'. Charges 32, 33, 35, & 36, were based on statements she made during her (video) interview by the police; She was a methamphetamine addict; She had been in drug rehabilitation; Petitioner was weird and had a mental problem but was nice; and she did not have sex with Petitioner. During the interview the police officer interviewing her said, "Joe (Petitioner) was going to be a CI, (Confidential Informant), but it fell apart".

The Petition raises other reasons why the victims' statements are suspect. The police gave the victims the opportunity to set out all the crimes they committed without being punishment. They were given immunity for any crime they admitted to during the interview. The victims realized the police were trying to build a case against Petitioner, and to satisfy them and ensure their immunity they gave them what they wanted.

All the girls had to do was make changes in their statements about what happened to shift blame to Petitioner and make themselves out as victims. Even though the victims were underage, they were not naive, they were 'street smart', based on their experiences with the police and courts. The interviews show the police officers that interviewed them pried for information on Petitioner and accepted everything they said as the truth, without questioning the basis for the statements.

The lead police officer was a seasoned narcotics officer, so he would know people who us illegal drugs and stealing to support their addiction, lie the keep from getting caught. Yet he took every statement the girls made as the truth, without questioning the basis for the statements.

The prosecutor ignoring the victims' motives and criminal history, which provided ample reason to question the girls' truthfulness. Yet took every statement the girls made implicating Petitioner as the truth and made it a charge. Counts 1 thru 36 out of the 40 counts in the Indictment were based solely on statements the girls made in their interviews.

The prosecutor did not want a trial where the girls' criminal history of lying and stealing would be exposed. The prosecutor protected the victims' from being exposed by relying on a strict interpretation of the statute that allows a victim to refuse to be interviewed, ignoring the law that provides an exception when there is an issue of credibility. The defense attorney requested an interview of one of the girls, it was denied.

-10-

The prosecutor also protected the victims' statements from being scrutinized by putting the Petitioner in a position where he had to either plead or risk a possible sentence of over 100 years if he went to trial, where the victim's history of lying would be exposed.

The State did not offer any evidence contradicting the evidence presented in the Post-Conviction Petition: That Petitioner was suffering from mental defects caused by a brain injury and fever; That the mental defects caused by the injuries affected his ability to make decisions in social situations: and that there was more than a reasonable possibility Petitioner's mental defects rendered him unable to know or understand the things he allegedly did were wrong.

Two doctors evaluated Petitioner, Dr. Col and Dr. Blackwood. Dr. Col evaluated him three times as he was growing up, and Dr. Blackwood evaluated him in reference to the charges in the case. Both doctors agreed Petitioner had multiple disorders that caused defects in his thinking ability. They concluded that in social situations, like the one Petitioner was in with the girls, Petitioner was 'clueless' and 'at best dealing with peers' in his relationship with the girls.

Based on the doctor's conclusions, Petitioner had a Constitutional right to present the defense set out in A.R.S. §13-502, Guilty Except Insane, which includes situations where a person has s mental defect that caused them not to know what they are doing is wrong.

## REASONS WHY THIS PETITION SHOULD BE GRANTED

**I.    PETITIONER'S CONSTITUTIONAL RIGHT TO DUE PROCESS WAS VIOLATED WHEN A CRITICAL DEFENSE OF GUILTY EXCEPT INSANE (MENTAL DEFECT) PURSUANT TO A.R.S §13-502 WAS NOT RAISED IN HIS CASE.**

A defendant has a Constitutional right to present a defense. The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S. Ct. 1038, 1045 (1973). "[T]he Constitution guarantees criminal defendant's a meaningful opportunity to present a complete defense." *Nevada v. Jackson*, 569 U.S. 505, 509, 133 S. Ct. 1990, 1992 (2013), citing *Crane* v. *Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986).

Due process rights are guaranteed in the Arizona Constitution at Article 2, Section 4: This guarantee is congruent with the U.S. Constitution, Amendments 5 and 14. *State v. Herrera-Rodriguez*, 164 Ariz. 49, 52, 790 P.2d 747, 750 (App.1989). Due process of law is the primary and indispensable foundation of individual freedom in our legal system. *Application of Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

The Arizona Supreme Court has held that denial of due process is a denial of fundamental fairness, shocking to a universal sense of justice. *Oshrin v. Coulter*, 142 Ariz. 109, 688 P.2d 1001 (1984).

A Rule 11 examination was done that found Petitioner competent. Defense counsel filed a motion to have a complete mental examination done, based on the extent

of Petitioner mental problems. The court appointed Dr. Blackwood to do the examination. Dr. Col had examined Petitioner previously.

DR. BLACKWOOD AND DR. COL'S REPORTS SHOW:

1. Dr. Blackwood administered numerous tests, examined medical records, court records, police reports, statements of the victims, statements of Petitioner, and interviewed Petitioner three times for the evaluation.

2. Dr. Col evaluated Petitioner three times from age 15.

3. Dr. Blackwood referred to Dr. Col's report and agreed with Dr Col's evaluation of Petitioner.

4. Petitioner had significant brain damage from an injury at birth and from a sustained high fever at age 6 weeks.

5. Petitioner had multiple disabilities: Bipolar, ADHD, Retardation, Autistic tendencies, and 'comparable to a person with Alzheimer's disease.

6. The brain injuries caused cognitive problems that affected his ability in certain skills. Among those skills was his inability to understand and deal with social relationships.

7. In a social relationship Petitioner had with the girls, Petitioner could be manipulated into doing things the girls wanted him to do that could be considered illegal, without knowing he was doing anything wrong.

8. Petitioner has normal skills in some areas and disabilities in others.

-13-



9. In areas of non-social cognition Petitioner could perform at normal levels.

10, Dr. Col described Petitioner's relationship with the girls. as being "clueless."

11. Dr. Blackwood described Petitioner's relationship with the girls as "dealing, at best, with peers."

12. Dr. Blackwood, from his interview of Petitioner, pointed out an example of Petitioner's disability, "Mr. Longhini in interview with investigation officers reflects obvious confusion. He admits to inappropriate interactions with one of the alleged victims that the victim herself denies."

Dr. Blackwood's Report clearly shows Petitioner has a serious mental 'defect' that would qualify for the affirmative defense under A.R.S. §13-502, Guilty Except Insane, that includes mental defects.

A.R.S. §13-502, (Complete Statute minus Sec. 'B', Death Penalty cases), states:

**A.** *A person may be found guilty except insane if at the time of the commission of the criminal act the person was afflicted with a mental disease or defect of such severity that the person did not know the criminal act was wrong. A mental disease or defect constituting legal insanity is an affirmative defense.*

**C.** *The defendant shall prove the defendant's legal insanity by clear and convincing evidence.*

**D.** *If the finder of fact finds the defendant guilty except insane, the court shall determine the sentence the defendant could have received pursuant to section 13-707 or section 13-751, subsection A or the presumptive sentence the defendant could have received pursuant to section 13-702, section 13-703, section 13-704, section 13-705, section 13-706, subsection A, section 13-710 or section 13-1406 if the defendant had not been found insane, and the judge shall suspend the sentence and shall order the defendant to be placed under the jurisdiction of the psychiatric security review board and committed to a secure state mental health facility under the department of health services pursuant to section 13-3992 for the length of that sentence. In making this determination the court shall not consider the sentence enhancements for prior convictions under section 13-703 or 13-704. The court shall expressly identify each act that the defendant committed and separately find whether each act*

-14-

*involved the death or physical injury of or a substantial threat of death or physical injury to another person.*

**E.** *A guilty except insane verdict is not a criminal conviction for sentencing enhancement purposes under section 13-703 or 13-704.*

Excerpts from Dr. Blackwood's report.

# NEUROPSYCHOLOGY ASSOCIATES, P.C.

### 1515 EAST MISSOURI AVENUE, #110
### PHOENIX, ARIZONA 85014

H. Daniel Blackwood, Ph.D., ABPP
Board Certified in Clinical Neuropsychology

Appointments available in Prescott

PHONE: (602) 230-8324
FAX: (602) 274-7402

## INDEPENDENT NEUROPSYCHOLOGICAL EVALUATION

Name:    Ernest Joseph Longhini III
         CR2016-000667-001

Age: 32
Date of Birth: January 31, 1986
Education: GED
Tests Administered: Performance/Symptom Validity Tests, Aphasia Screening Tests, Clock Drawing Test, Wechsler Memory Scale-Fourth Edition (WMS-IV) (Stories), Hopkins Verbal Learning Test-R, Similarities subtest of the Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV), Rey Complex Figure (immediate production and memory), Stroop Color-Word Test, Affect Naming subtest of the Advanced Clinical Solutions, Problems in Everyday Living Test (PEDL), Social Responsiveness Scale (SRS-2), Autism Questionnaire (AQ), MCMI-III
Referred by: Brian Di Pietro, Esq.
Places of Evaluation:  Phoenix Office and Maricopa County Courthouse
Dates of Evaluation: January 15, 2018, January 23, 2018, January 24, 2018,

History from Records

Information from records provided by Mr. Longhini's mother, Ms. Erin Bishop, includes the following.

Mr. Longhini's responses to a structured behavioral questionnaire indicated serious problems with social functioning. He was described as feeling threatened and potentially overwhelmed by social interactions. He was described as being inhibited,

introverted, having problems with family conflict, issues of sexual insecurity and/or discomfort, and poorly controlled acting-out tendencies.

-15-

Projective testing also showed numerous signs of insecurity, inadequacy, and dependency, along with depression. Projective testing indicated that Mr. Longhini had "a very strong tendency to misperceive events and form mistaken impressions of people and what their actions mean. As a result he tends to be quite impaired in his social perceptions, quite vulnerable to misperceiving what other people are thinking or feeling, and to have little idea why they act in the ways they do." It was noted that he was "quite vulnerable to engaging in inappropriate social behaviors, and/or maladaptive social interactions."

Dr. Col noted that the combination of social/perceptual difficulties and impulsivity resulted in a lack of social skills and very significant problems in interpersonal relations. Mr. Longhini was described as "unable to understand the intentions, motivations, or actions of others."

Dr. Col rendered diagnoses of cognitive disorder NOS, with a prominent disturbance of social relations; attention deficit/hyperactivity disorder, predominantly inattentive type; dysthymic disorder, and relational problems secondary to organic brain dysfunction. He recommended consideration of antidepressant medication, stimulant medication, weekly counseling and social skills training outside of the school setting, classroom accommodations for auditory attention deficit, and closer interaction with school counselor/advocate.

On July 1, 2011, Dr. Col saw Mr. Longhini, then 25 years old, for re-examination. Only about every other page of the report is available. Mr. Longhini was noted to exhibit severe problems with attention and impulse control on a continuous performance test. Other executive functions were variable. He did well on conceptual tasks for the most part and was able to maintain multiple lines of thought reasonably well. Dr. Col described Mr. Longhini as essentially "clueless" in the interpersonal realm, with difficulties in the perception of vocal rate and tone, facial expression, body language, etc. Dr. Col attributed this to brain damage suffered at the time of the perinatal stroke and/or high fever at the age of six weeks. He rendered diagnoses of ADHD, combined type, severe, mixed receptive-expressive language disorder, and cognitive disorder NOS. He noted that Mr. Longhini also exhibited abnormalities on a quantitative EEG. He recommended neurofeedback as a treatment option. He indicated that it would be very difficult for Mr. Longhini to "ever be able to make his way in life without substantial ongoing assistance from outside resources."

-16-

On the SRS-2 Mr. Longhini's responses reflect severe deficiencies in reciprocal social behavior which would lead to severe and enduring interference with everyday social interactions. His results are similar to individuals with a diagnosis of autism. His responses reflect difficulty in perceiving social cues and severe difficulty in interpreting such cues, along with difficulties in social communication, social motivation, and in exhibiting restricted interests and repetitive behaviors.

Mr. Longhini's responses to the AQ reflect a high probability of a diagnosis on the autistic spectrum.

On July 12, 2013, Mr. Keith Breswick, Civil Commitment Coordinator in the Addictions and Mental Health Division of the Oregon Health Authority, noted that Jackson County Mental Health had recommended civil commitment for Mr. Longhini based on a finding of probable cause that Mr. Longhini was a mentally ill person.

When Mr. Longhini was 15 years old, the examining psychologist wrote that he had "a very strong tendency to misperceive events and form mistaken impressions of people and what their actions mean. As a result, he tends to be quite impaired in his social perceptions, quite vulnerable to misperceiving what other people are thinking or feeling, and to have little idea why they act in the ways they do." It was noted that he was "quite vulnerable to engaging in inappropriate social behaviors, and/or maladaptive social interactions." At that time the examining psychologist, Dr. Col, rendered diagnoses of cognitive disorder NOS, with a prominent disturbance of social relations; attention deficit/hyperactivity disorder, predominantly inattentive type; dysthymic disorder, and relational problems secondary to organic brain dysfunction.

When Mr. Longhini was examined again at the age of 25, Dr. Col described Mr. Longhini as essentially "clueless" in the interpersonal realm, with difficulties in the perception of vocal rate and tone, facial expression, body language, etc. Dr. Col again attributed this to brain damage suffered at the time of the perinatal stroke and/or high fever at the age of six weeks. He rendered diagnoses of ADHD, combined type, severe; mixed receptive-expressive language disorder, and cognitive disorder NOS. He noted that Mr. Longhini also exhibited abnormalities on a quantitative EEG. He indicated that it would be very difficult for Mr. Longhini to "ever be able to make his way in life without substantial ongoing assistance from outside resources."

The results of the current examination confirm previously identified problems and document their ongoing, chronic nature. While Mr. Longhini performs within normal limits on tasks of non-social cognition such as registration of verbal material and verbal abstraction, his verbal expression of judgment is in the deficient range compared to healthy elderly subjects and in the average range compared to individuals with a diagnosis of Alzheimer's disease.

-17-

Mr. Longhini's responses to structured behavioral questionnaires indicate difficulties in social interactions similar to those of individuals on the autistic spectrum. His social cognition and his ability to maintain socially acceptable interpersonal conduct are deficient or incompetent. He is extremely insecure in interpersonal interactions and interpersonal relationships, and he tends to interact with those whose approval he seeks in an obliging and submissive manner. He repeatedly seeks reassurance from others and has an intense fear of separation from those whom he sees as providing support. He is vulnerable to exploitation and abuse. He may experience delusional and paranoid thinking at times, and he believes that he has been betrayed or forsaken by persons whose support he had hoped to gain.

Mr. Longhini's behavior in interview with investigating officers reflects obvious confusion. He admits to inappropriate interactions with one of the alleged victims that the victim herself denies.

His statements reflect emotional immaturity and emotional confusion. In his interactions with the described victims, from a social and emotional standpoint, he was, in effect, dealing, at best, with peers.

One certainly cannot rule out the possibility that Mr. Longhini is magnifying problems or responding in a self-serving manner, but, once again, documentation of Mr. Longhini's emotional and social deficiencies was initially accomplished many years before the events in question.

Mr. Longhini's mother, while also possibly presenting information in a manner intended to be circumstantially helpful to Mr. Longhini, describes his behavior in a manner consistent with clinical information.

H. Daniel Blackwood, Ph.D.

Summary of excerpts from Dr. Col and Dr. Blackwood's reports.

a. **Dr. Col Report**, 9/12/2001, (age 15), "... Stroke at birth... fever six weeks old... cognitive disorder... organic brain dysfunction... quite impaired in his social perceptions... quite vulnerable to misperceiving what other people are thinking or feeling and have little idea why they act in the ways they do... unable to understand the intentions, motivations, or actions of others... quite vulnerable to engaging in inappropriate social behaviors."

b. **Dr. Col Report**, 7/1/2011, (age 25), "... Did well on occupational tasks... (but) essentially 'clueless' in the interpersonal realm... difficulties in perception of vocal rate and tone, facial expression, body language... attribute these problems to brain damage... very difficult for Mr. Longhini to ever be able to make his way in life without substantial ongoing assistance from outside resources."

c. **Dr. Blackwood Report**, "... Significant deficiencies in reciprocal social behavior which would lead to severe and enduring interference with everyday social interactions... difficulties in perceiving social cues and severe difficulty in interpreting such cues... current examination confirms previously identified problems, (Dr. Col's report), and their ongoing chronic nature... Mr. Longhini performs within normal limits on tasks of non-social cognition... difficulties in social interactions similar to those of individuals on the 'autistic spectrum'... He is vulnerable to exploitation and abuse."

d. **Dr. Blackwood Report,** "... Mr. Longhini's behavior in interview with investigating officers reflects obvious confusion. He admits to inappropriate interactions with one of the alleged victims that the victim herself denies. His statements reflect emotional immaturity and emotional confusion... Mr. Longhini's mother describes behavior in a manner consistent with clinical information."

e. **Dr. Blackwood Report**, "... In his interactions with described victims, from a social and emotional standpoint, he was, in effect, dealing, at best, with 'peers'...

documentation of Mr. Longhini's emotional and social deficiencies was initially accomplished many years ago before the events in question, (Dr. Col's reports)".

f. **Nowhere in Dr. Col or Dr Blackwood's reports** did they state Petitioner was dangerous, violent, or a pedophile.

g. **Keith Breswick Report**, (7/12/2013), **Civil Commitment Coordinator** for the State of Oregon Health Authority, "... there was a recommendation of civil commitment of Mr. Longhini based on a finding of probable cause that he was a mentally ill person."

An important distinction in Petitioner's evaluations needs to be made to understand how it relates to his behavior. The distinction between Petitioner's 'normal' abilities in certain areas, and disability in other areas.

Dr. Blackwood's diagnosis described Petitioner as being on the 'Autistic spectrum'. A person on the Autistic spectrum can display conflicting behavior: Be disabled in some skills, normal in other skills and very bright in different skills. (*See 60 minutes T.V. segment on Autism, aired October 2, 2020*), that shows Autistic young adults displaying brilliant skills, and explains the different abilities and disabilities an Autistic people can have. (*See also, NeuroTribes, The Legacy of Autism and the Future of Neurodiversity*), a book written by Steve Silberman, (New York Times bestseller), which explains Petitioner's problem: Why he appears and acts normal in certain situations and can perform normal skills, yet in other situations he has no understanding.

-20-

Regardless of the victims' statements and Petitioner's statements to the police, Petitioner's Autistic disability explains his relationship with the victims: How they could manipulate him into doing things that could be considered illegal; How he perceives their conduct as consensual and believes what they say, and; How he thinks he is doing nothing wrong when he does what they want him to do.

Conclusions in Petitioner's Rule 11, 'Competency to Stand Trial' evaluations, that found Petitioner competent to stand trial, do not apply when determining the issue of a mental defect, that causes Autism and other mental disorders. Rule 11 conclusions are limited in scope. They only focus on a particular ability, Petitioner's ability to understand court proceedings.

Based on the diagnoses and conclusions in Dr. Blackwood and Dr. Col's reports, there is more than enough evidence to support the defense of 'Guilty except Insane" set out in A.R.S. §13-502. Therefore, Petitioner had a Constitutional right have this defense presented in his case.

## II.   IT WAS INEFFECTIVE ASSISTANCE OF COUNSEL TO FAIL TO RAISE THE DEFENSE OF PETITIONER'S MENTAL DEFECT PERSUANT TO A.R.S. §13-502.

After reading Dr. Blackwood's report counsel did nothing further except argue some of the facts in the report at Petitioner's sentencing. Counsel was 'ineffective' when he did not do the necessary research to find an important law, A.R.S §13-502, that

-21-

provided an affirmative defense based on a mental defect. A defense under A.R.S. §13-502 was critical because Petitioner had no other defense. A.R.S. §13-502 states, in part,

"*A.  A person may be found guilty except insane if at the time of the commission of the criminal act the person was afflicted with a mental disease or defect of such severity that the person did not know the criminal act was wrong. A mental disease or defect constituting legal insanity is an affirmative defense.*"

In Petitioner's case the defense was critical because it goes to the key element of the alleged crimes, "intent" - … *the person did not know the criminal act was wrong…* ". The defense was also critical because it undermines the State's evidence against Petitioner. If the defense had been raised and used in resolving Petitioner's case the results would have been different. This conduct by Petitioner's attorney is clearly Ineffective assistance of counsel.

## III.    THE PLEA ENTERED BY PETITIONER WAS DEFECTIVE.

In addition to a duty to investigate, defense counsel must ensure that the defendant understands his plea. *Smith v. Mahoney*, 611 F.3d 978, 988 (9th Cir. 2010). A defendant must possess "an understanding of the law in relation to the facts." *Boykin v. Alabama*, 395 U.S. 238, 243 n.5, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). A guilty plea is only valid if it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

Petitioner's plea was defective because he was unaware of an important defense that would have affect his case. His attorney was also unaware of the defense at the time the plea was entered.

Petitioner's attorney knew the facts of the case and knew Petitioner had a serious mental problem and filing a motion to have Petitioner examined by an expert, so he had to know the results of the Dr. Blackwood's examination, yet he did nothing further.

Because of Petitioner's attorney's ineffective assistance, Petitioner faced the charges with no credible defense, which forced him to plead guilty to whatever the prosecution offered, or face over 100 years in prison if he lost at trial.

If Petitioner had known the defense in A.R.S. §13-502 he could have chosen to go to trial and presented the defense. The jury could have then found him 'guilty except insane' and the sentence would have been much different: A.R.S. §13-502 states, in part:

*"D. If the finder of fact finds the defendant guilty except insane, the court shall determine the sentence the defendant could have received... if the defendant had not been found insane, ...the judge shall suspend the sentence and shall order the defendant to be placed under the jurisdiction of the psychiatric security review board and committed to a secure state mental health facility under the department of health services ... for the length of the sentence."* (Citations omitted).

If Petitioner had a trial where the affirmative defense was presented, he could have also been found not guilty, because of the victim's lack of credibility, and the conclusion by the jury that Petitioner had a mental defect that caused him not to know

-23-

the criminal acts he was accused of committing were wrong, and that he was not a pedophile and not a danger to society.

If Petitioner's attorney had known about the defense, he could have used it to negotiate a better plea, or the prosecutor could have dismissed the case because of the kind of trial the girls would have to go through, and the possibility Petitioner could be found guilty except insane, or not guilty.

Therefore, the plea was defective because it could not have been knowingly and intelligently entered under the circumstances set out in this Petition.

## CONCLUSION

Petitioner set forth colorable claims for relief and is entitled at a minimum to an evidentiary hearing. *See State v. Bennett*, 213 Ariz. 562, 568-69, 146 P.3d 63, 69-70 (2006) *citing State v. Watton*, 164 Ariz. 323, 328, 793 P.2d 80, 85 (1990). It was error for the trial court to summarily dismiss Mr. Longhini's Petition for Post-Conviction Relief.

Therefore, Petitioner respectfully requests: (1) the Court grant the Petition for Review and vacate Petitioner's convictions, or (2) remand the case to the trial court for an evidentiary hearing.

RESPECTFULLY SUBMITTED this 25th day of February 2022.

**ROSENQUIST & ASSOCIATES**

By: /s/ Anders V. Rosenquist
Anders V. Rosenquist
*Attorney for Defendant/Petitioner*

-24-

NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

# IN THE
# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Respondent,*

*v.*

ERNEST JOSEPH LONGHINI, III, *Petitioner.*

No. 1 CA-CR 22-0089 PRPC
FILED 12-15-2022

Appeal from the Superior Court in Maricopa County
No. CR2016-000667-001
The Honorable Michael C. Blair, Judge

### REVIEW GRANTED; RELIEF DENIED

## COUNSEL

Maricopa County Attorney's Office, Phoenix
By Daniel Strange
*Counsel for Respondent*

Rosenquist & Associates, Anthem
By Anders V. Rosenquist, Jr.
*Counsel for Petitioner*

STATE v. LONGHINI
Decision of the Court

---

## MEMORANDUM DECISION

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Michael J. Brown joined.

---

M O R S E, Judge:

¶1          Ernest Joseph Longhini III ("Petitioner") petitions for review of the summary dismissal of his first petition for post-conviction relief. We have considered the petition for review and, for the reasons stated, grant review and deny relief.

### FACTS AND PROCEDURAL BACKGROUND

¶2          Petitioner pled guilty to (1) child sex trafficking, (2) attempted sexual conduct with a minor, (3) involving or using a minor in a drug offense, (4) attempted involving or using a minor in a drug offense, and (5) two counts of attempted sexual assault. The offenses involved four minor victims. The superior court sentenced Petitioner to a stipulated term of 13.5 years' imprisonment for child sex trafficking and a consecutive term of seven years' imprisonment for involving or using a minor in a drug offense. The court imposed stipulated terms of lifetime probation for the remaining counts.

¶3          Petitioner filed a timely petition for post-conviction relief pursuant to Arizona Rule of Criminal Procedure ("Rule") 33. The court found that Petitioner failed to present any colorable claims for relief and summarily dismissed the petition pursuant to Rule 33.11(a). Petitioner now seeks review. We have jurisdiction under Rule 33.16 and A.R.S. § 13-4239(C).

### DISCUSSION

¶4          Petitioner presents three issues for review: (1) the failure to raise a guilty-except-insane defense under A.R.S. § 13-502 violated Petitioner's right to due process; (2) Petitioner's trial counsel was ineffective

2

STATE v. LONGHINI
Decision of the Court

because he failed to raise a guilty-except-insane defense under A.R.S. § 13-502; and (3) Petitioner's plea was "defective."[1]

¶5        When a court determines that a petition for post-conviction relief presents no "material issue of fact or law that would entitle the defendant to relief under [Rule 33], the court *must* summarily dismiss the petition." Ariz. R. Crim. P. 33.11(a) (emphasis added). When the court finds that a petition for post-conviction relief does not present a colorable claim, we review for an abuse of discretion. *State v. Amaral*, 239 Ariz. 217, 219, ¶ 9 (2016) (addressing the former Rule 32). Abuse of discretion is "an exercise of discretion which is manifestly unreasonable, exercised on untenable grounds or for untenable reasons." *State v. Woody*, 173 Ariz. 561, 563 (App. 1992) (quoting *Williams v. Williams*, 166 Ariz. 260, 265 (App. 1990)). The abuse of discretion must "affirmatively appear[]" in the record on review. *State v. Bowers*, 192 Ariz. 419, 422, ¶ 10 (App. 1998). We "cannot substitute our discretion for that of the trial judge," and will affirm if "a judicial mind, in view of the law and circumstances, could have made the ruling without exceeding the bounds of reason." *Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 571 (1985) (quoting *Davis v. Davis*, 78 Ariz. 174, 179 (1954) (Windes, J., specially concurring)).

I.    Failure To Raise a Guilty-Except-Insane Defense.

¶6        Petitioner argues that the failure to raise a guilty-except-insane defense under A.R.S. § 13-502 violated his right to due process. Petitioner does not present this issue in the context of ineffective assistance of counsel. Petitioner does not argue any action or inaction of counsel fell below objectively reasonable standards and does not cite any case law that addresses ineffective assistance of counsel. Petitioner simply argues the failure to raise a guilty-except-insane defense violated his right to due process.

¶7        The superior court did not abuse its discretion when it found Petitioner waived this issue by pleading guilty. A plea agreement waives all non-jurisdictional defenses, errors, and defects that occurred prior to the plea. *State v. Moreno*, 134 Ariz. 199, 200 (App. 1982). Waiver of non-jurisdictional defects includes deprivations of constitutional rights. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a

---

[1]    The statement of facts in the petition for review argues the evidence and the credibility of the victims at length. We only address the issues Petitioner expressly presents as grounds for relief in the petition for review.

3

STATE v. LONGHINI
Decision of the Court

criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that *occurred prior to the entry of the guilty plea.*"). Thus, we deny relief on this issue.

## II.    Ineffective Assistance of Counsel Based on Failure To Present a Guilty-Except-Insane Defense.

¶8         Petitioner argues that he had ineffective assistance of counsel because his counsel failed to present a defense of guilty except insane under A.R.S. § 13-502. Specifically, Petitioner argues counsel failed to "find an important law, A.R.S. § 13-502, that provided an affirmative defense based on a mental defect." Petitioner further argues the results "would have been different" if counsel had raised the defense.

¶9         The only evidence Petitioner cites to support the claim that he has a "mental defect" sufficient to raise the affirmative defense of guilty except insane is a 2018 psychologist's report prepared at the request of Petitioner's trial counsel. That report was included in the petition for post-conviction relief but is not otherwise contained in the superior court record. Petitioner further relies on that report's references to reports from other medical professionals. Those other reports, however, are not included in the superior court record and are neither attached to the petition for post-conviction relief nor the petition for review.

¶10        To state a colorable claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below objectively reasonable standards and that the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Nash*, 143 Ariz. 392, 397 (1985). To show prejudice, a defendant must prove that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* If a defendant fails to make a sufficient showing for either prong of the *Strickland* test, the superior court need not determine whether the defendant satisfied the other prong. *State v. Salazar*, 146 Ariz. 540, 541 (1985).

¶11        When reviewing claims of ineffective assistance of counsel, we owe deference to both the defendant's counsel and the superior court. *Dunn v. Reeves*, 141 S. Ct. 2405, 2410 (2021). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of

4

STATE v. LONGHINI
Decision of the Court

reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). *To do this, a defendant* must show that counsel's performance fell outside the acceptable "range of competence" and failed to meet "an objective standard of reasonableness." *Id.* at 687-88. "[T]he showing must be that of a provable reality, not mere speculation." *State v. Rosario*, 195 Ariz. 264, 268, ¶ 23 (App. 1999). "[E]ven if there is reason to think that counsel's conduct 'was far from exemplary,' a court still may not grant relief if '[t]he record does not reveal' that counsel took an approach that no competent lawyer would have chosen." *Dunn*, 141 S. Ct. at 2410 (quoting *Burt v. Titlow*, 571 U.S. 12, 23-24 (2013)). Finally, mere disagreements over strategy "will not support a claim of ineffective assistance of counsel as long as the challenged conduct could have some reasoned basis." *State v. Meeker*, 143 Ariz. 256, 260 (1984).

¶12        *Petitioner offers nothing but speculation to support the* proposition that Petitioner's counsel failed to "find" A.R.S. § 13-502 or that the result "would have been different" had counsel presented the affirmative defense of guilty except insane under A.R.S. § 13-502.[2] Petitioner offers no evidence that (1) counsel was not fully aware of A.R.S. § 13-502 and the affirmative defense of guilty except insane; (2) counsel did not fully investigate the possibility of asserting that defense in this matter; or (3) counsel did not make the strategic decision to forgo the affirmative defense of guilty except insane after receiving the psychologist's report. In short, Petitioner provides no evidence that any act or omission of counsel failed to meet objectively reasonable standards.

¶13        To the contrary, the psychologist's report on which Petitioner relies shows counsel investigated Petitioner's mental health as part of counsel's investigation of potential defenses to the charges. The superior court found Petitioner competent after a Rule 11 evaluation by two medical professionals. Petitioner's counsel later filed a motion for a court-appointed expert to evaluate Petitioner's mental health for possible mitigation purposes and "to meet the state's allegations." The superior court granted the motion and ordered that counsel be provided funds to retain an expert. Counsel retained a psychologist that evaluated Petitioner over three different dates and later prepared a report for counsel.

---

[2] Petitioner did not support his petition for post-conviction relief with affidavits from Petitioner or Petitioner's counsel.

5

STATE v. LONGHINI
Decision of the Court

¶14          The psychologist's report does not suggest that the result after trial "would have been different." The report addresses Petitioner's "emotional and social deficiencies" at length, but nowhere in the report does the psychologist express the opinion or otherwise suggest that, at the times Petitioner committed the offenses, Petitioner "was afflicted with a mental disease or defect of such severity that [Petitioner] did not know the criminal act was wrong," i.e., that Petitioner was legally insane. A.R.S. § 13-502(A); see also State v. Malone, 247 Ariz. 29, 31, ¶ 8 (2019) (noting that under Arizona law a mental disease or defect that does not rise to legal insanity is not admissible to challenge the mens rea of a charged offense).

¶15          For these reasons, the superior court did not abuse its discretion when it held Petitioner failed to present a colorable claim of ineffective assistance of counsel. We also deny relief on this issue.

III.     The Validity of The Plea.

¶16          We reject Petitioner's argument that his plea was "defective." Petitioner argues his plea was defective because counsel failed to make Petitioner aware of the possibility of a guilty-except-insane defense, and so Petitioner was "forced" to plead guilty as he had no other viable defenses. Petitioner further argues that had he known of the affirmative defense of guilty except insane, he "could" have rejected the plea offer and chosen to go to trial.

¶17          Petitioner offers no evidence, affidavit or otherwise, that he was unaware of the possibility of a guilty-except-insane defense. Further, Petitioner does not assert he would have rejected the plea had he known of the possibility of a guilty-except-insane defense, only that he "could" have rejected the plea. When a defendant challenges the validity of a plea based on counsel's actions or inactions, "a defendant must show a reasonable probability that, 'but for counsel's errors, [defendant] would not have pleaded guilty and would have insisted on going to trial.'" State v. Nunez-Diaz, 247 Ariz. 1, 5, ¶ 13 (2019) (emphasis added) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). Merely arguing, without evidence, that Petitioner "could" have rejected the plea is insufficient. The superior court did not abuse its discretion when it held Petitioner failed to present a colorable claim that the plea was defective. Consequently, we deny relief on this issue.

IV.     Remaining Issues.

¶18          Petitioner also asserts that the plea was defective because Petitioner's counsel was unaware of the availability of a guilty-except-

6

STATE v. LONGHINI
Decision of the Court

insane defense. Additionally, in his reply to the State's response, Petitioner argues the indictment was defective. Petitioner did not present either of these issues in the petition for post-conviction relief filed in the superior court. A petition for review may not present issues not first presented to the superior court. Ariz. R. Crim. P. 33.16(c)(2)(B); *State v. Bortz*, 169 Ariz. 575, 577-78 (App. 1991); *State v. Ramirez*, 126 Ariz. 464, 468 (App. 1980); *see State v. Smith*, 184 Ariz. 456, 459 (1996) (holding there is no review for fundamental error in a post-conviction relief proceeding); *State v. Swoopes*, 216 Ariz. 390, 403, ¶¶ 40-42 (App. 2007) (same). Further, this Court will not consider arguments or issues first raised in a party's reply. *See State v. Watson*, 198 Ariz. 48, 51, ¶ 4 (App. 2000).

## CONCLUSION

¶19        For the above reasons, we grant review and deny relief.



AMY M. WOOD • Clerk of the Court
FILED:    AA

7

Anders V. Rosenquist, Bar #002724
**ROSENQUIST & ASSOCIATES**
**ATTORNEYS AT LAW**
42104 N. Venture Drive, Ste. A122
ANTHEM, AZ  85086
TELEPHONE: (480) 861-7115
rosenquistlegal@gmail.com
*Attorney for Petitioner*
*Ernest Longhini*

# IN THE SUPREME COURT
## STATE OF ARIZONA

| | |
|---|---|
| STATE OF ARIZONA, | Supreme Court Case No._____ |
| Plaintiff, | Court of Appeals Case No. 1CA-CR 22-0089-PRPC |
| v. | |
| ERNEST JOSEPH LONGHINI III, | Maricopa County Superior Court No. CR2016-000667-001 |
| Defendant/Petitioner. | **PETITION FOR REVIEW** |

Defendant, Ernest Longhini ("Mr. Longhini"), requests this Court grant his Petition for Review because important issues of fact and law have been incorrectly decided in this case.

## STATEMENT OF ISSUES

1)    Whether Mr. Longhini's Constitutional Right to Due Process to Present a Defense Was Violated?

2)   Whether Mr. Longhini Received Ineffective Assistance of Counsel?

3)   Whether Mr. Longhini's Guilty Plea Was Defective?

## STATEMENT OF FACTS

### A. Relevant Facts & Evidence.

On September 21, 2016, Mr. Longhini was indicted on 40 charges. The charges consisted of selling, supplying, or injecting illegal drugs, sexual contact, pornography, and prostitution, with a minor. There were four victims involved, ages 15 and older. In the Indictment the victims are referred to as 'A', 'B', & 'C' (collectively referred to as "sisters"), and 'D', a girl who lived in the neighborhood, (all collectively referred to as "victims" or "girls"). The only evidence against Mr. Longhini was statements the victims made in police (video and audio) interviews. The charges involving the three sisters occurred over a ten-month period. The charges involving "D" occurred over a three-year period. Each count alleged a single act with a victim.

On February 7, 2019, Mr. Longhini pled guilty to one count of Child Prostitution, three counts of Attempted Sexual Assault, one count of Involving or Using Minors in a Drug Offense, and one count of Attempted Involving or Using Minors in a Drug Offense. On April 23, 2019 Mr. Longhini was sentenced to a total of 20.5 years in prison.

It was later determined Mr. Longhini had serious mental health problems caused by injures at birth and a high temperature after birth, that seriously affected his thinking ability. Mr. Longhini was psychologically evaluated three times from age 15. The court

-2-

was concerned enough about Mr. Longhini's mental condition it paid $5000.00 to have a complete independent psychological evaluation done on Mr. Longhini. The three previous evaluations and the evaluation instituted by the court showed Mr. Longhini had serious defects in his thinking and reasoning ability.

The doctors' reports were too long to include the whole reports in the Post-Conviction Relief Petition, (here in after referred to as "Petition"). Counsel elected to use excerpts of relevant statements and conclusions from doctors in the Petition. Both doctors agreed Mr. Longhini had multiple defects in thinking and reasoning ability, and they were caused by injuries at birth and a high temperature after birth. Both doctors concluded that in social situations Mr. Longhini was either "clueless" or "at best dealing with peers".

The record shows Mr. Longhini's attorney did not know about the defense in A.R.S. §13-502, 'Guilty Except Insane' during the Superior Court proceedings.

A.R.S. §13-502 in part states:

**A.** *A person may be found guilty except insane if at the time of the commission of the criminal act the person was afflicted with a mental disease or defect constituting legal insanity is an affirmative defense. defect of such severity that the person did not know the criminal act was wrong.*

The case against Mr. Longhini was initiated when victim 'A' was stopped by a police officer walking away from Mr. Longhini's home. She was questioned by the officer and Mr. Longhini was subsequently arrested, and his home searched.

-3-

The victims had a long history of addiction to illegal drugs, stealing, and being under court supervision for crimes they had committed.

The 'sisters' talked Mr. Longhini into letting them come to his house to do drugs. Mr. Longhini was at home most of the time because of his mental illness. The sisters would crawl through the window to his bedroom, do their drugs and crash. In their interviews the girls never said Mr. Longhini molested or had sex with them.

In text messages between Mr. Longhini's mother and "B"'s mother, Mr. Longhini's mother stated, *"Knocking. She has stolen before, so she is not welcome back"*. The girl's mother replied, *"Please do not let her in your house I am very sorry please tell your son to not have any contact with her. I know he doesn't want to be mean to her but she will take advantage of any one she can right now." … "They are addicts and it is truly sad I never thought this would be our life as parents my husband and I are trying to work on her at least she has come home but can't say much else obviously." … "I will get them back if I see her as I said she has not come home I have police looking for her." … "If she shows up at your home please call the police she has a warrant for breaking the terms of her probation she also is a runaway."*

The statements by the girls are highly suspect because of their criminal history, and they were given immunity for crimes they admitted in their interview. The prosecutor ignored these facts and based each charge on a single statement the girl made during their interview.

-4-

**B. Post-Conviction Proceedings.** *See* Appendix "A" (Copy of Superior Court decision).

Mr. Longhini timely filed a Petition for Post-Conviction Relief on November 16, 2020. The State did not offer any evidence disputing the evidence presented in the doctors' reports, which were set out in the Petition. Mr. Longhini's Petition was dismissed by the trial court on January 25, 2022, based on Rule 33.11(a) of the Ariz. R. Crim. Proc. The Court found Mr. Longhini's Constitutional claims were precluded by his guilty plea. In the denial Order the court stated, "The Court finds that defendant's first three arguments are precluded because of his February 7, 2019, guilty plea. *See* Rule 33.2(a)(1) Ariz. R. Crim. Proc." The three precluded claims were:

I. A Critical Defense of Guilty Except Insane Pursuant to A.R.S §13-502 Was Not Raised in Petitioner's case.
II. Petitioner's Constitutional Right to Confront His Accusers Was Violated.
III. The Prosecutor Committed Prosecutorial Abuse of Power.

The trail court cited Rule 33.2(a)(1) as the basis for precluding Mr. Longhini's claims. Rule 33.2 states, "Preclusion of Remedy." (a) states, "Preclusion." "A defendant is precluded from relief under Rule 33.1(a) based on any ground: (1) waived by pleading guilty or no contest to the offense." However,

"… Rules of the Supreme Court, by Order dated December 12, 2019 and on a permanent basis by Order dated February 5, 2020, effective Jan. 1, 2020. COMMENT TO RULE 33.2(a)(1),
*"A pleading defendant waives all non-jurisdictional defects and defenses, including claims of ineffective assistance of counsel **except those that relate to the acceptance or validity of the plea or to the sentence…"** (Emphasis added).

The court wrongly precluded Mr. Longhini's claim of Ineffective Assistance of Counsel because it directly relates to the validity of the plea. The record shows Mr. Longhini's defense counsel failed to find and use the defense set out in A.R.S. §13-502 after he read Dr. Blackwood's report. Defense counsel only used Dr. Blackwood's report for mitigation at sentencing. The court also wrongly precluded Mr. Longhini's right to present the defense of "Guilty Except Insane, Mental Defect, which is the only defense that applied to Mr. Longhini's case and would have a reasonable probability of changing the outcome of the case.

The court's denial Order states, "Defendant provided no affidavits or other evidence to establish whether his trial counsel even advised him of the guilty except insane defense..." But Mr. Longhini asserted in his Petition that defense counsel never advised Mr. Longhini of the defense of 'guilty except insane', under A.R.S. §13-502.

The record in the case shows Mr. Longhin's was never advised of the statutory defense of 'Guilty Except Insane' by his attorney, because his attorney was not aware of the defense during the court proceedings. Therefore, Mr. Longhini could not have been advised or sign an affidavit that he was not advised by counsel of the defense.

**C. Court of Appeals Proceedings.** *See* Appendix "B" (Copy of Court Appeals decision).

Mr. Longhini filed a timely Petition for Review with the Arizona Court of Appeals. On December 15, 2022, the Court of Appeals issued its Memorandum Decision granting review but denying relief. *Id.* The Court of Appeals found, "The superior court did not

abuse its discretion when it found Petitioner waived the issues raised in his Petition by pleading guilty." *Id.* As to the claim of ineffective assistance of counsel and the defective guilty plea, the Court of Appeals found that Mr. Longhini "failed to present a colorable claim." *Id.*

## REASONS TO GRANT THE PETITION

The Courts used lack of affidavits and preclusion to support their denial of relief. The Courts never disputed the critical evidence presented in the Petition, that proved Mr. Longhini suffered from serious mental defects. If the defense in A.R.S. §13-502 had been presented and argued it would have undermined and weakened the State's case, and lead to a different disposition, hospitalization instead of prison.

Excerpts from the doctors' reports were set out in the Petition. The findings in the doctor's reports were never challenged by the State. The doctor's reports unequivocally show that there is more than a reasonable probability the outcome the case would have been in Petitioner's favor.

An Affidavit from Dr. Blackwood would have served no purpose, unless his signature on the report (set out in the Petition), carried no weight. Dr. Blackwood's report was approved and paid for by the court because the court had serious concerns about Mr. Longhini's mental state. Dr. Blackwood was not hired to prepare a favorable evaluation of Mr. Longhini, or give an opinion on whether Mr. Longhini, *"… did not know the criminal act(s) were wrong"*, as stated in A.R.S. §13-502. The appropriate place for his

-7-

opinion would have been at a hearing where he could present his findings and be questioned. An affidavit from defense counsel would serve no purpose because the record is clear defense counsel did not raise the defense in A.R.S.§13-504 during the Superior Court proceedings. Defense counsel only argue Dr. Blackwood's report as mitigation at sentencing. Yet the courts used the lack of affidavits to support a denial of the Petition.

## I.    Mr. Longhini's Constitutional Right to Due Process Was Violated.

The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S. Ct. 1038, 1045 (1973). "[T]he Constitution guarantees criminal defendant's a meaningful opportunity to present a complete defense." *Nevada v. Jackson*, 569 U.S. 505, 509, 133 S. Ct. 1990, 1992 (2013), citing *Crane* v. *Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986).

Due process rights are guaranteed in the Arizona Constitution at Article 2, Section 4: This guarantee is congruent with the U.S. Constitution, Amendments 5 and 14. *State v. Herrera-Rodriguez*, 164 Ariz. 49, 52, 790 P.2d 747, 750 (App.1989). The Arizona Supreme Court has held that denial of due process is a denial of fundamental fairness, shocking to a universal sense of justice. *Oshrin v. Coulter*, 142 Ariz. 109, 688 P.2d 1001 (1984). The serious mental defects Mr. Longhini suffered all his life cannot be ignored. To deny consideration of his mental defects is a clear violation of his Constitution right to present a valid defense based on A.R.S. §13-502.

**Excerpts from Dr. Blackwood's report presented in Mr. Longhini's Post-Conviction Relief Petition. (Summary of excerpts follow).**

# NEUROPSYCHOLOGY ASSOCIATES, P.C.
### 1515 EAST MISSOURI AVENUE, #110
### PHOENIX, ARIZONA 85014

H. Daniel Blackwood, Ph.D., ABPP
Board Certified in Clinical Neuropsychology

Appointments available in Prescott

PHONE: (602) 230-8324
FAX: (602) 274-7402

## INDEPENDENT NEUROPSYCHOLOGICAL EVALUATION

Name:    Ernest Joseph Longhini III
         CR2016-000667-001

Age: 32
Date of Birth: January 31, 1986
Education: GED
Tests Administered: Performance/Symptom Validity Tests, Aphasia Screening Tests, Clock Drawing Test, Wechsler Memory Scale-Fourth Edition (WMS-IV) (Stories), Hopkins Verbal Learning Test-R, Similarities subtest of the Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV), Rey Complex Figure (immediate production and memory), Stroop Color-Word Test, Affect Naming subtest of the Advanced Clinical Solutions, Problems in Everyday Living Test (PEDL), Social Responsiveness Scale (SRS-2), Autism Questionnaire (AQ), MCMI-III
Referred by: Brian Di Pietro, Esq.
Places of Evaluation: Phoenix Office and Maricopa County Courthouse
Dates of Evaluation: January 15, 2018, January 23, 2018, January 24, 2018.

History from Records

Information from records provided by Mr. Longhini's mother, Ms. Erin Bishop, includes the following.

Mr. Longhini's responses to a structured behavioral questionnaire indicated serious problems with social functioning. He was described as feeling threatened and potentially overwhelmed by social interactions. He was described as being inhibited, introverted, having problems with family conflict, issues of sexual insecurity and/or discomfort, and poorly controlled acting-out tendencies.

-9-