Projective testing also showed numerous signs of insecurity, inadequacy, and dependency, along with depression. Projective testing indicated that Mr. Longhini had "a very strong tendency to misperceive events and form mistaken impressions of people and what their actions mean. As a result he tends to be quite impaired in his social perceptions, quite vulnerable to misperceiving what other people are thinking or feeling, and to have little idea why they act in the ways they do." It was noted that he was "quite vulnerable to engaging in inappropriate social behaviors, and/or maladaptive social interactions."

Dr. Col noted that the combination of social/perceptual difficulties and impulsivity resulted in a lack of social skills and very significant problems in interpersonal relations. Mr. Longhini was described as "unable to understand the intentions, motivations, or actions of others."

Dr. Col rendered diagnoses of cognitive disorder NOS, with a prominent disturbance of social relations; attention deficit/hyperactivity disorder, predominantly inattentive type; dysthymic disorder, and relational problems secondary to organic brain dysfunction. He recommended consideration of antidepressant medication, stimulant medication, weekly counseling and social skills training outside of the school setting, classroom accommodations for auditory attention deficit, and closer interaction with school counselor/advocate.

On July 1, 2011, Dr. Col saw Mr. Longhini, then 25 years old, for re-examination. Only about every other page of the report is available. Mr. Longhini was noted to exhibit severe problems with attention and impulse control on a continuous performance test. Other executive functions were variable. He did well on conceptual tasks for the most part and was able to maintain multiple lines of thought reasonably well. Dr. Col described Mr. Longhini as essentially "clueless" in the interpersonal realm, with difficulties in the perception of vocal rate and tone, facial expression, body language, etc. Dr. Col attributed this to brain damage suffered at the time of the perinatal stroke and/or high fever at the age of six weeks. He rendered diagnoses of ADHD, combined type, severe, mixed receptive-expressive language disorder, and cognitive disorder NOS. He noted that Mr. Longhini also exhibited abnormalities on a quantitative EEG. He recommended neurofeedback as a treatment option. He indicated that it would be very difficult for Mr. Longhini to "ever be able to make his way in life without substantial ongoing assistance from outside resources."

-10-

On the SRS-2 Mr. Longhini's responses reflect severe deficiencies in reciprocal social behavior which would lead to severe and enduring interference with everyday social interactions. His results are similar to individuals with a diagnosis of autism. His responses reflect difficulty in perceiving social cues and severe difficulty in interpreting such cues, along with difficulties in social communication, social motivation, and in exhibiting restricted interests and repetitive behaviors.

Mr. Longhini's responses to the AQ reflect a high probability of a diagnosis on the autistic spectrum.

On July 12, 2013, Mr. Keith Breswick, Civil Commitment Coordinator in the Addictions and Mental Health Division of the Oregon Health Authority, noted that Jackson County Mental Health had recommended civil commitment for Mr. Longhini based on a finding of probable cause that Mr. Longhini was a mentally ill person.

When Mr. Longhini was 15 years old, the examining psychologist wrote that he had "a very strong tendency to misperceive events and form mistaken impressions of people and what their actions mean. As a result, he tends to be quite impaired in his social perceptions, quite vulnerable to misperceiving what other people are thinking or feeling, and to have little idea why they act in the ways they do." It was noted that he was "quite vulnerable to engaging in inappropriate social behaviors, and/or maladaptive social interactions." At that time the examining psychologist Dr. Col, rendered diagnoses of cognitive disorder NOS, with a prominent disturbance of social relations; attention deficit/hyperactivity disorder, predominantly inattentive type; dysthymic disorder, and relational problems secondary to organic brain dysfunction.

When Mr. Longhini was examined again at the age of 25, Dr. Col described Mr. Longhini as essentially "clueless" in the interpersonal realm, with difficulties in the perception of vocal rate and tone, facial expression, body language, etc. Dr. Col again attributed this to brain damage suffered at the time of the perinatal stroke and/or high fever at the age of six weeks. He rendered diagnoses of ADHD, combined type, severe; mixed receptive-expressive language disorder, and cognitive disorder NOS. He noted that Mr. Longhini also exhibited abnormalities on a quantitative EEG. He indicated that it would be very difficult for Mr. Longhini to "ever be able to make his way in life without substantial ongoing assistance from outside resources."

The results of the current examination confirm previously identified problems and document their ongoing, chronic nature. While Mr. Longhini performs within normal limits on tasks of non-social cognition such as registration of verbal material and verbal abstraction, his verbal expression of judgment is in the deficient range compared to healthy elderly subjects and in the average range compared to individuals with a diagnosis of Alzheimer's disease.

-11-

Mr. Longhini's responses to structured behavioral questionnaires indicate difficulties in social interactions similar to those of individuals on the autistic spectrum. His social cognition and his ability to maintain socially acceptable interpersonal conduct are deficient or incompetent. He is extremely insecure in interpersonal interactions and interpersonal relationships, and he tends to interact with those whose approval he seeks in an obliging and submissive manner. He repeatedly seeks reassurance from others and has an intense fear of separation from those whom he sees as providing support. He is vulnerable to exploitation and abuse. He may experience delusional and paranoid thinking at times, and he believes that he has been betrayed or forsaken by persons whose support he had hoped to gain.

Mr. Longhini's behavior in interview with investigating officers reflects obvious confusion. He admits to inappropriate interactions with one of the alleged victims that the victim herself denies.

His statements reflect emotional immaturity and emotional confusion. In his interactions with the described victims, from a social and emotional standpoint, he was, in effect, dealing, at best, with peers.

One certainly cannot rule out the possibility that Mr. Longhini is magnifying problems or responding in a self-serving manner, but, once again, documentation of Mr. Longhini's emotional and social deficiencies was initially accomplished many years before the events in question.

Mr. Longhini's mother, while also possibly presenting information in a manner intended to be circumstantially helpful to Mr. Longhini, describes his behavior in a manner consistent with clinical information.

H. Daniel Blackwood, Ph.D.

## Summary of excerpts from Dr. Col and Dr. Blackwood's reports.

a. **Dr. Col Report**, 9/12/2001, (age 15), "... Stroke at birth... fever six weeks old... cognitive disorder... organic brain dysfunction... quite impaired in his social perceptions... quite vulnerable to misperceiving what other people are thinking or feeling and have little idea why they act in the ways they do... unable to understand the intentions, motivations, or actions of others... quite vulnerable to engaging in inappropriate social behaviors."

b. **Dr. Col Report**, 7/1/2011, (age 25), "... Did well on occupational tasks... (but) essentially 'clueless' in the interpersonal realm... difficulties in perception of vocal rate and tone, facial expression, body language... attribute these problems to brain damage... very difficult for Mr. Longhini to ever be able to make his way in life without substantial ongoing assistance from outside resources."

c. **Dr. Blackwood Report**, "... Significant deficiencies in reciprocal social behavior which would lead to severe and enduring interference with everyday social interactions... difficulties in perceiving social cues and severe difficulty in interpreting such cues... current examination confirms previously identified problems, (Dr. Col's report) and their ongoing chronic nature...). Mr. Longhini performs within normal limits on tasks of non-social cognition... difficulties in social interactions similar to those of individuals on the 'autistic spectrum'... He is vulnerable to exploitation and abuse."

d. **Dr. Blackwood Report,** "... Mr. Longhini's behavior in interview with investigating officers reflects obvious confusion. He admits to inappropriate interactions with one of the alleged victims that the victim herself denies. His statements reflect emotional immaturity and emotional confusion... Mr. Longhini's mother describes behavior in a manner consistent with clinical information."

e. **Dr. Blackwood Report,** "... In his interactions with described victims, from a social and emotional standpoint, he was, in effect, dealing, at best, with 'peers'...

-13-

documentation of Mr. Longhini's emotional and social deficiencies was initially accomplished many years ago before the events in question, (Dr. Col's reports)".

f. **Keith Breswick Report**, (7/12/2013), **Civil Commitment Coordinator** for the State of Oregon Health Authority, "... there was a recommendation of civil commitment of Mr. Longhini based on a finding of probable cause that he was a mentally ill person."

g. **Nowhere in Dr. Col or Dr Blackwood's reports** did they state Mr. Longhini was dangerous, violent, or a pedophile.

Dr. Blackwood's report, and Dr. Col's report Dr. Blackwood referred to, undeniably shows that if their findings and conclusions were brought out as an affirmative defense pursuant to A.R.S. §13-502 during the Superior Court proceedings, there would be more than a reasonable probability the results would have been different, in favor of Mr. Longhini, and the disposition in his case would be different, hospitalization instead of prison.

An important distinction must be made in Mr. Longhini's case to understand his relationship with the girls. Dr. Blackwood's diagnosis described Mr. Longhini as being on the 'Autistic spectrum'. A person on the Autistic spectrum can display conflicting behavior: Be disabled in some skills, normal in some skills and brilliant in other skills. (*See 60 minutes T.V. segment on Autism, aired October 2, 2020*), that shows Autistic young adults displaying brilliant skills, and explaining the different abilities and disabilities Autistic people can have. (*See also, NeuroTribes, The Legacy of Autism and*

-14-

*the Future of Neurodiversity*), a book written by Steve Silberman, (New York Times bestseller), which explains Mr. Longhini's conduct.

Dr Blackwood and Dr Col's reports concluded that in social relationships, (like the one Mr. Longhini had with the girls), Mr. Longhini would be "clueless or "at best dealing with peers".

Mr. Longhini's Autistic disability explains his relationship with the girls; How they could manipulate him into doing things that were illegal; How he perceived the girls' conduct as consensual and; How he would think he was doing nothing wrong in his relationship with the girls.

Based on the diagnoses and conclusions in Dr. Blackwood and Dr. Col's reports, there is more than enough evidence to support the defense of 'Guilty except Insane" set out in A.R.S. §13-502. Therefore, Mr. Longhini was denied his Constitutional right to Due Process, to presented defense in his case.

## II. Mr. Longhini Received Ineffective Assistance Of Counsel.

In view of the findings and conclusions in Dr. Blackwood and Dr. Col's reports, counsel was 'ineffective' when he did not do the necessary research to find law, A.R.S §13-502, that provided for an affirmative defense based on Mr. Longhini's mental defect. A defense under A.R.S. §13-502 was critical because Mr. Longhini had no other defenses. The defense was based on strong undisputed evidence presented in Dr.

Blackwood and Dr. Col's reports. The record is clear defense counsel was not aware of the defense in A.R.S. §13-502 during the Superior Court proceedings.

Not only does A.R.S. §13-502 specifically provide for an affirmative defense; it provides an alternate disposition to prison; it only needs a finding of 'clear and convincing evidence' and; it would not be considered a criminal conviction for sentence enhancement purposes.

A.R.S. §13-502, (Complete copy of Statute minus Sec. 'B', Death Penalty provision).

> **A.** *A person may be found guilty except insane if at the time of the commission of the criminal act the person was afflicted with a mental disease or defect of such severity that the person did not know the criminal act was wrong. A mental disease or defect constituting legal insanity is an affirmative defense.*
>
> . . . . . . . . . . . .
>
> **C.** *The defendant shall prove the defendant's legal insanity by clear and convincing evidence.*
>
> **D.** *If the finder of fact finds the defendant guilty except insane, the court shall determine the sentence the defendant could have received pursuant to section 13-707 or section 13-751, subsection A or the presumptive sentence the defendant could have received pursuant to section 13-702, section 13-703, section 13-704, section 13-705, section 13-706, subsection A, section 13-710 or section 13-1406 if the defendant had not been found insane, and the judge shall suspend the sentence and shall order the defendant to be placed under the jurisdiction of the psychiatric security review board and committed to a secure state mental health facility under the department of health services pursuant to section 13-3992 for the length of that sentence. In making this determination the court shall not consider the sentence enhancements for prior convictions under section 13-703 or 13-704. The court shall expressly identify each act that the defendant committed and separately find whether each act involved the death or physical injury of or a substantial threat of death or physical injury to another person.*

-16-

**E.** *A guilty except insane verdict is not a criminal conviction for sentencing enhancement purposes under section 13-703 or 13-704.*

Mr. Longhini's attorney's inaction cannot be characterized as a misstep or bad tactic. His inaction goes to the core of representation, especially in a serious criminal case, when the inaction would have made a major difference between no defense, and a strong defense based on undisputed medical evidence. A.R.S. §13-502 was specifically passed to handle insanity situations and was based on historic case law. To ignore the Statute is to violate a fundamental cornerstone of the State and Federal Constitutions, that an accused has a right to a competent defense. This right cannot be technically eliminated simply by procedurally restraints. Therefore, the previous courts decisions were wrong. Mr. Longhini's attorney's conduct violated his fundamental right to Due Process, because of Ineffective Assistance of Counsel.

## III.    Mr. Longhini's Guilty Plea Was Defective.

In addition to a duty to investigate, defense counsel must ensure that the defendant understands his plea. *Smith v. Mahoney*, 611 F.3d 978, 988 (9th Cir. 2010). A defendant must possess "an understanding of the law in relation to the facts." *Boykin v. Alabama*, 395 U.S. 238, 243 n.5, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). A guilty plea is only valid if it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

Mr. Longhini's plea was defective because; He was unaware of a critical defense in his case, A.R.S. §13-502; The impact of his mental defects was not considered or resolved before he entered his plea; His attorney was not aware of the defense in A.R.S. §13-502 at the time Mr. Longhini entered his plea, and; Mr. Longhini was forced to enter a plea to whatever the prosecution offered, or face over 100 years in prison if he went to trial. Therefore, Mr. Longhini's plea was not knowingly, intelligently, or voluntarily entered.

## CONCLUSION

Important issues of law and fact have been incorrectly decided in Mr. Longhini's case. Therefore, Mr. Longhini requests the Court grant review and vacate his convictions and remand the case for an evidentiary hearing.

There needs to be an evidentiary hearing to resolve the disparity in what happened in the incidents, and what the prosecutor charged. The girls are adults now and can testify to the facts of what happened, that the prosecutor based the charges on. The girls' interviews showed they had no animosity toward Mr. Longhini and were not afraid of him. At a hearing the girls could confirmed that they had no sexual relationship with Mr. Longhini, which disputes the charges. The girls could testify that many of the charges were based only on their conduct even though Mr. Longhini was present. Mr. Longhini's doctors could testify so their evaluations could be adequately explained, and questioned. The court could then make an informed decision on Mr. Longhini's mental state, and

-18-

whether Mr. Longhini should be considered insane pursuant to the provisions of A.R.S. §13-502.

RESPECTFULLY SUBMITTED this __17th__ day of January 2023.

**ROSENQUIST & ASSOCIATES**

By: __/s/ Anders V. Rosenquist__

Anders V. Rosenquist
*Attorney for Defendant/Petitioner*

-19-



## Supreme Court

**STATE OF ARIZONA**

**ROBERT BRUTINEL**
Chief Justice

**ARIZONA STATE COURTS BUILDING**
1501 WEST WASHINGTON STREET, SUITE 402
PHOENIX, ARIZONA 85007
TELEPHONE: (602) 452-3396

**TRACIE K. LINDEMAN**
Clerk of the Court

April 10, 2023

**RE:    STATE OF ARIZONA v ERNEST JOSEPH LONGHINI III**
Arizona Supreme Court No. CR-23-0016-PR
Court of Appeals, Division One No. 1 CA-CR 22-0089 PRPC
Maricopa County Superior Court No. CR2016-000667-001

GREETINGS:

The following action was taken by the Supreme Court of the State
of Arizona on April 7, 2023, in regard to the above-referenced
cause:

**ORDERED: Petition for Review = DENIED.**

**Justice Montgomery did not participate in the determination of
this matter.**

Tracie K. Lindeman, Clerk

TO:
Alice Jones
Daniel Strange
Anders V Rosenquist Jr
Amy M Wood
jd

SECOND PETITION

## POST CONVICTION FORM NO. 1
### SUPREME COURT OF ARIZONA

| | |
|---|---|
| <u>Ernest Joseph Longhini, III, #335286</u> )<br>Full name and prison number )<br>(if any) of Petitioner, )<br> )<br> )<br>PETITIONER, )<br>vs. )<br> )<br><u>Ryan Thornell, Director of the ADCRR</u> )<br>Name of Respondent )<br>(Name of person--Sheriff, )<br>Jailor or Warden--who has )<br>you in custody.) )<br> )<br>RESPONDENT. )<br> )<br> ) | Case No: <u>HC - 24 - 003</u><br>(To be supplied by Clerk)<br><br><br>PETITION FOR<br>WRIT OF HABEAS CORPUS |

### INSTRUCTIONS--READ CAREFULLY

In order for this petition to receive consideration by the Court, it shall be in writing, (legibly handwritten or typewritten) signed by the Petitioner and verified (notarized), and it shall set forth in concise form the answers of each applicable question. If necessary, Petitioner may finish his answer to a particular question on the reverse side of the page or on an additional blank page. Petitioner shall make it clear to which question any such continued answer refers.

Since every petition for habeas corpus must be sworn to under oath, any false statement of a material fact therein may serve as the basis of prosecution and conviction for perjury. Petitioners should therefore exercise care to assure that all answers are true and correct.

When the petition is complete, the original and one copy (a total of two) shall be mailed to the Clerk of the Supreme Court of Arizona, State Courts Building, 1501 West Washington, Phoenix, Arizona, 85007, and one copy to the Attorney General of Arizona, 1275 West Washington, Phoenix, Arizona, 85007.

(b)  the proceedings in which each ground was raised:

i.  _____ N/A _____

ii.  _____ N/A _____

iii.  _____ N/A _____

16. If any ground set forth in (10) has not previously been presented to any court, state or federal, set forth the ground, and state concisely the reasons why such ground has not previously been presented:

(a.) My sentence is illegal and must be corrected pursuant to A.R.C. § 13-4037(A).

The factual basis needed to establish degree of culpability was insufficient and is now invalid due to the fact that A.R.S. § 13-4433(B) has been found unconstitutional.

A.R.S. § 13-4037(A) generates a state created liberty interest:

"Generally, for a state statute or regulation to create a liberty interest protected by the Constitution, two things must be true: First, the law must set forth substantive predicates to govern official decision making and, second, it must contain explicitly mandatory language..." Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 462-63 (1989). See also Wolf v. McDonnell, 418 U.S. 539, 556-58 (1974).

"Upon an appeal by the defendant either from a judgment of conviction or from sentence, if an illegal sentence has been imposed upon a lawful verdict or finding of guilty by the trial court, the supreme court shall correct the sentence to correspond to the verdict or finding. The sentence as corrected shall be enforced by the court from which the appeal was taken." Arizona Revised Statute § 13-4037(A).

The proper resolution of an illegal sentence within a stipulated plea agreement was established by this court in State v. Robertson, 486 P.3d 1217 (2020):

"The statute expressly requires this court to correct an illegal sentence and its terms do not exempt sentences imposed pursuant to stipulated plea agreements.

6

Orig.

1. Place of detention _Arizona State Prison Complex Lewis, Barchey Unit_

2. Name and location of court which imposed sentence_Maricopa County Superior Court; Phoenix, AZ_

3. The indictment or information number or numbers (if known) upon which, and the offense or offenses for which, sentence was imposed.

   (a) _CR2016-000667-001; CR2016-132403-001_

   (b) _Child Sex Trafficking w/Minor 15-17 YOA (ARS § 13-3212B2)(F2)_

   (c) _Involve/Use Minor in Drug Offense (ARS § 13-3409)(F2)_

4. The date upon which sentence was imposed and the terms of the sentence:

   (a) _April 23, 2019_

   (b) _13.5 years as to ARS § 13-3212B2_

   (c) _7 years as to ARS § 13-3409_

5. Check whether a finding of guilty was made:

   (a) after a plea of guilty _YES_

   (b) after a plea of not guilty _N/A_

6. If you were found guilty after a plea of not guilty, check whether that finding was made by:

   (a) a jury _N/A_

   (b) a judge without a jury _N/A_

7. Did you appeal from the judgment of conviction or the imposition of sentence?

   _NO_

8. If you answered "yes" to (7), list

   (a) The name of each court to which you appealed:
      i. _N/A_

      ii. _N/A_

2

iii. _____ N/A _____

(b) the result in each such court to which you appealed:
   i. _____ N/A _____

   ii. _____ N/A _____

   iii. _____ N/A _____

(c) the date of each such result:
   i. _____ N/A _____

   ii. _____ N/A _____

   iii. _____ N/A _____

(d) if known, citations of any written opinion or orders entered pursuant to such results:
   i. _____ N/A _____

   ii. _____ N/A _____

   iii. _____ N/A _____

9. If you answered "no" to (7), state your reasons for not so appealing:

(a) A timely post-conviction relief petition was the only avenue for relief in a plea.

(b) _____ N/A _____

10. State concisely the grounds on which you base your allegations that you are being held in custody unlawfully:

(a) My sentence is illegal and must be corrected pursuant to ARS § 13-4037(A)

(b) _____ N/A _____

(c) _____ N/A _____

11. State concisely and in the same order the facts which support each of the grounds set out in (10):

(a) A proper investigation into the facts relevant to sentencing was not accomplished under the strictures of State v. Blanton, 173 Ariz. 517 (1992), and State v. Cazares, 205 Ariz. 425 (2003).

(b) Sentencing error occured due to impedement of unconstitutional statute ARS § 13-4433(b), abrogated by Arizona. Attorneys for Criminal Justice v. Ducey, 2022 WL 16631088 (11/2/22).

3

(c) Sentencing error rose to the level of "reasonable probability" that sentence would have been different if not for said error (United States v. Gonzalez-Aguilar, 718 F.3d 1185 (9ᵀᴴ Cir. 2013)).

12. Prior to this petition, have you filed with respect to this conviction:

(a) any petition for a Writ of Habeas Corpus or other post-conviction relief in any court of the State of Arizona? ___YES___

(b) any such petition in any other court? ___NO___

(c) any petitions in the United States Supreme Court for certiorari other than petitions, if any, already specified in (8)? ___NO___

(d) any other petitions, motions or applications in this or any other court?
___NO___

13. If you answered "yes" to any part of (12), list with respect to each petition, motion or application:

(a) the specific nature thereof:

   i. Petition for Post-Conviction Relief Under Rule-33 (of right/timely)

   ii. Petition for Review of Denial of Post-Conviction Relief

   iii. Petition for Review

   iv. ___N/A___

(b) the name and location of the court in which each was filed:

   i. Maricopa County Superior Court; Phoenix, AZ

   ii. Arizona Court of Appeals, Division One; Phoenix, AZ

   iii. The Supreme Court of the State of Arizona; Phoenix, AZ

   iv. ___N/A___

4

(c) the disposition thereof:

i. _Summary dismissal._

ii. _Review granted, relief denied._

iii. _Review denied_

(d) the date of each such:

i. _January 25, 2022_

ii. _December 15, 2022_

iii. _April 7, 2023_

iv. _N/A_

(e) if known, citations of any written opinions or orders entered pursuant to each such disposition:

i. _Arizona v. Longhini, CR2016-000667-001 DT, 1/25/22._

ii. _Arizona v. Longhini, 1 CA-CR 22-0089 PRPC, 12/15/22._

iii. _Arizona v. Longhini, CR-23-0016-PR, 4/7/23._

iv. _N/A_

14. Has any ground set forth in (10) been previously presented to this or any other court, state or federal, in any petition, motion or application which you have filed?

_NO_

15. If you answered "yes" to (14), identify:

(a) which grounds have been previously presented:

i. _N/A_

ii. _N/A_

iii. _N/A_

5

(b)  the proceedings at which each such attorney represented you:

    i.  *Arraignment: Nathaniel J. Walters.*

    ii.  *Plea & Sentencing: Brian G. DiPietro.*

    iii.  *Post-Conviction Relief: Chris & Alison Stavris, Anders V. Rosenqvist.*

Wherefore, petitioner prays that he be discharged from custody and restraint.


STATE OF ARIZONA   )
                )                 ss
COUNTY OF_____)

I,_____, being first sworn under oath, state that the information contained in the foregoing petition is true and correct.


_____
Signature of Petitioner

Subscribed and sworn to before me this_____day of_____,_____.


_____
Notary Public

_____
My Commission Expires

8

"The prohibition on illegal sentences is well-settled. In Coy, the court of appeals held that a defendant may challenge an illegal sentence even if the plea agreement expressly authorized it. 200 Ariz. at 444 ¶ 6. Although principles of contract law typically govern plea agreements, the court determined that where the sentence exceeded the authority authorized by the law, the 'judge breached the law, not the plea agreement.' Id. at 445 ¶ 10. The court also noted that, because the state is in control of the plea terms, it 'bears the risk' of mistake should the plea result in an illegal sentence. Id. at 446 ¶ 13."

Due to the state created liberty interest created by A.R.S. § 13-4037 (A), if this court does not correct my sentence my state remedies will have been exhausted under the A.E.D.P.A. and I may immediately proceed to federal habeas review.

17. Were you represented by an attorney at any time during the course of:

(a) your arraignment and plea? _____YES_____

(b) your trial, if any? _____N/A_____

(c) your sentencing? _____YES_____

(d) your appeal, if any, from the judgment of conviction or the imposition of sentence?

_____N/A_____

(e) Preparation, presentation or consideration of any petitions, motions on applications with respect to this conviction, which you filed?

_____YES_____

18. If you answered "yes" to one or more parts of (17), list:

(a) the name and address of each attorney who represented you:

i. Arraignment: Nathaniel J. Walters, Maricopa County Defenders Office, Phoenix, AZ

ii. Plea & Sentencing: Brian G. DiPietro, 301 W. Warner Rd., Ste. 133, Tempe, AZ 85284-2964
PCR1 (State Appointed): Christopher & Alison Stavris, 11445 E. Via Linda, Ste. 2-504, Scottsdale, AZ 85259

iii. PCR2 (Hired): Anders V. Rosenquist, Esq., 42104 N. Venture Dr., Ste. A-122, Anthem, AZ 85086

*I llegal  Sentence must be reversed by sip CT*

IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

STATE OF ARIZONA,
*Appellee,*

v.

DEMITRES ROBERTSON,
*Appellant.*

No. CR-19-0175-PR
Filed August 12, 2020

Appeal from the Superior Court in Maricopa County
The Honorable John R. Doody, Judge Pro Tempore
No. CR 2002-015076

Opinion of the Court of Appeals, Division One
246 Ariz. 438 (2019)
**VACATED AND REMANDED**

COUNSEL:

Mark Brnovich, Arizona Attorney General, Michael T. O'Toole, Chief Counsel, Andrew S. Reilly (argued), Jana Zinman, Assistant Attorneys General, Phoenix, Attorneys for State of Arizona

James J. Haas, Maricopa County Public Defender, Lawrence S. Matthew (argued), Deputy Public Defender, Phoenix, Attorneys for Demitres Robertson

Joel Feinman, Pima County Public Defender, David J. Euchner (argued), Abigail Jensen, Deputy Public Defenders, Tucson, Attorneys for Amicus Curiae Arizona Attorneys for Criminal Justice

*7-8-21*

*State v. Robertson*
*486 P. 3d 1217 (2020)*
*You Requested*
*However we Re-*
*And Thought you*
*me. Not This is*
*with we round*
*in google*

*Prob + Cert.*

STATE v. ROBERTSON
Opinion of the Court

JUSTICE LOPEZ authored the opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, AND JUSTICES BOLICK and GOULD joined.*

---

JUSTICE LOPEZ, opinion of the Court:

¶1          We consider whether an appellate court may apply the invited error doctrine to preclude review of an illegal, stipulated sentence in a plea agreement. We hold that it may not.

## BACKGROUND

¶2          In August 2002, the State charged Demitres Robertson with one count of first degree murder and two counts of intentional child abuse for acts that occurred in November 2001. If convicted, she faced a mandatory sentence of life imprisonment for the first degree murder charge and a potential mandatory consecutive sentence of up to twenty-eight years' imprisonment for the intentional child abuse charges.

¶3          Pursuant to a plea agreement, Robertson pleaded guilty to reduced charges of manslaughter and reckless child abuse. The agreement stipulated a sentencing range of eight to fifteen years' imprisonment for the manslaughter conviction and a consecutive term of lifetime probation for the child abuse conviction. The probation terms provided that "if [she] violate[d] any of the written conditions of [her] probation, [her] probation may be terminated and [she could] be sentenced to any term or terms state[d] [in the agreement] . . . without limitation." Consistent with the agreement, the trial court sentenced Robertson to ten years' imprisonment for manslaughter and a consecutive term of lifetime probation for child abuse.

¶4          Robertson completed her prison sentence in 2010 and commenced her lifetime probation term. She violated her probation in 2014 and in 2016, and the trial court reinstated her probation with additional conditions. In March 2017, following another probation violation, the court imposed intensive probation. In May 2017, the State filed a petition to revoke probation, alleging Robertson violated her intensive probation. She contested the petition and argued for the first time at her probation

---

* Justices James P. Beene and William G. Montgomery have recused themselves from this matter.

2

STATE v. ROBERTSON
Opinion of the Court

violation hearing that her convictions for manslaughter and child abuse comprised a single criminal act against a single victim. Therefore, the stipulated consecutive sentences in her plea agreement resulted in illegal double punishment in violation of A.R.S. § 13-116, which provides, "[a]n act or omission which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent."

¶5            The trial court denied Robertson's oral motion to dismiss the petition, revoked her probation, and ordered that she be imprisoned for the presumptive term of three-and-a-half years with 260 days of presentence incarceration credit. Robertson timely appealed.

¶6            The court of appeals declined to address the merits of the sole issue presented on appeal, to wit: whether A.R.S. § 13-116 barred imposition of a consecutive prison sentence on the offense for which Robertson was serving probation. Rather, the court affirmed Robertson's probation revocation and consecutive sentence, finding that she was precluded from challenging her sentence on appeal because she had invited any potential error by stipulating to consecutive sentences in her plea agreement. *State v. Robertson*, 246 Ariz. 438, 440 ¶ 13, 441 ¶¶ 17–18 (App. 2019).

¶7            We granted review to address whether an appellate court may apply the invited error doctrine to preclude review of an allegedly illegal, stipulated sentence in a plea agreement. (We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.)

## DISCUSSION

¶8            The court of appeals erred by effectively eliminating a defendant's right to appeal a probation revocation sentence consistent with a plea agreement stipulation. The court of appeals' decision conflicts with *State v. Regenold*, 226 Ariz. 378 (2011), and misapplies the invited error doctrine.

¶9            As an initial matter, we note that the court of appeals resolved this appeal on the basis that Robertson invited sentencing error by entering into the plea agreement, an issue not raised, briefed, or argued by either party or ruled on by the trial court. Although our appellate courts may choose to address issues the parties fail to address in the briefs, *State v. Lopez*, 217 Ariz. 433, 438 ¶ 17 n.4 (App. 2008), they should heed the principles underlying the waiver doctrine intended "to prevent the court from deciding cases with no research assistance or analytical input from the parties," *Meiners v. Indus.*

3

STATE v. ROBERTSON
Opinion of the Court

Comm'n, 213 Ariz. 536, 538–39 ¶ 8 & n.2 (App. 2006) (quoting *Childress Buick Co. v. O'Connell*, 198 Ariz. 454, 459 ¶ 29 (App. 2000)).

I.

¶10        The court of appeals acknowledged *Regenold's* holding that a defendant's "guilty plea does not waive all challenges to a subsequent sentence imposed after a probation violation," but the court reasoned that *Regenold* did not dictate the outcome here. *Robertson*, 246 Ariz. at 440 ¶ 12 (citing *Regenold*, 226 Ariz. at 379–80 ¶¶ 8, 12). We disagree.

¶11        In *Regenold*, the defendant pleaded guilty to one count of luring a minor for sexual exploitation after soliciting sexual conduct with a detective impersonating a fourteen-year-old girl. 226 Ariz. at 378–79 ¶ 2; *see State v. Regenold ("Regenold II")*, 227 Ariz. 224, 225 ¶ 2 (App. 2011). The plea agreement stipulated a sentencing range of five to fifteen years in prison. *Id.* The superior court suspended imposition of the sentence and placed Regenold on lifetime probation. *Id.* Later, following a probation violation, the court revoked Regenold's probation and sentenced him, consistent with his plea agreement, to six-and-a-half years in prison. *Id.* at 379 ¶ 3. Regenold appealed. The court of appeals held it had no jurisdiction to consider the appeal because, under A.R.S. § 13-4033(B), "a defendant may not appeal from a judgment or sentence entered pursuant to a plea agreement or an admission to a probation violation." *Id.* We reversed, finding that a pleading defendant who is sentenced to prison following a contested probation violation hearing does not receive a sentence pursuant to the plea agreement, but rather as a consequence of the probation violation. *Id.* ¶ 8. Consequently, because Regenold contested the probation violation, he was entitled to appeal the probation violation and sentence. *Id.* ¶ 12.

¶12 ·       Here, the court of appeals concluded that Robertson's case eluded *Regenold's* reach. *See Robertson*, 246 Ariz. at 440 ¶¶ 12–13. In so doing, the court announced an implicit "favorability" rule wherein a particularly favorable stipulated sentence pursuant to a plea agreement waives a defendant's appellate rights. The court reasoned that Robertson "affirmatively entered into a plea agreement with the State wherein she avoided the possibility of life in prison plus a consecutive sentence, and she stipulated to a prison sentence on one reduced count and a consecutive term of probation on another reduced count," whereas Regenold merely "plead[ed] guilty and face[d] various potential sentences provided by law." *Id.* The court also noted that Robertson "explicitly bargained for and accepted the possibility of a consecutive prison sentence if she were found to have committed a subsequent violation of the terms of her probation."

4

*Id.* at 441 ¶ 17. Thus, because Robertson negotiated a favorable plea agreement, and knew the potential consequences of a probation violation, the court held she may not appeal her alleged illegal sentence under § 13-116. *Id.* at 440 ¶ 13.

¶13    We find *Regenold* indistinguishable from this case in all material respects. First, *Regenold* does not distinguish between types of probation violation sentences. *See Regenold*, 226 Ariz. at 379 ¶ 8 ("*Any* punishment imposed after a probation revocation hearing is a consequence that would not exist but for the defendant's violation of probation." (emphasis added)). Second, the "favorability" of a plea agreement is irrelevant to the analysis and is otherwise an unworkable standard because all plea agreements, to some degree, are beneficial to defendants. If stipulating to a plea agreement is always invited error, there could never be an appeal from an illegal sentence imposed after a probation violation, rendering *Regenold* a nullity.

II.

¶14    We turn now to the crux of the case—the court of appeals' application of the invited error doctrine to preclude Robertson from challenging the error on appeal. *Robertson*, 246 Ariz. at 441 ¶ 17. We conclude that the court misapplied the doctrine as its decision conflicts with invited error jurisprudence from our Court and the court of appeals.

¶15    "The invited error doctrine prevents a party from injecting error into the record and then profiting from it on appeal." *State v. Rushing*, 243 Ariz. 212, 217 ¶ 14 (2017); *see also State v. Logan*, 200 Ariz. 564, 566 ¶ 11 (2001). We have cautioned against application of the doctrine unless it is clear from the facts that the party asserting the error on appeal is responsible for introducing the error into the record. *State v. Escalante*, 245 Ariz. 135, 145 ¶ 38 (2018) ("[I]f defense counsel invited trial error, strategically or carelessly, the defendant cannot obtain appellate relief . . . ."). Therefore, courts must look "to the source of the error, which must be the party urging the error," before applying the doctrine against a party. *See Logan*, 200 Ariz. at 566 ¶ 11; *State v. Anderson*, 210 Ariz. 327, 337 ¶ 20, 344 ¶¶ 66–67 (2005) (finding defendant invited error by specifically requesting erroneous jury instructions and verdict forms); *State v. Moody*, 208 Ariz. 424, 453 ¶ 111 (2004) (finding a party invited error where he elicited the testimony in question). Courts should be cautious in applying the doctrine, however, because its application precludes appellate relief even when error is fundamental and prejudicial. *See Escalante*, 245 Ariz. at 145 ¶ 38.

5

STATE v. ROBERTSON
Opinion of the Court

¶16        The Arizona court of appeals has held, consistent with our cases, that the invited error doctrine only applies when the facts show the party urging the error initiated, or at least actively defended, the error rather than passively acquiescing in it. *See, e.g., State v. Lucero*, 223 Ariz. 129 (App. 2009); *State v. Thues*, 203 Ariz. 339 (App. 2002). In *Lucero*, the court of appeals concluded that the defendant's counsel was not the source of the error raised on appeal because he neither initiated, nor argued in favor of, the error – rather, he merely acquiesced in it. 223 Ariz. at 138–39 ¶¶ 32–33. And in *Thues*, even though a stipulation had been entered in the record that the defendant had a prior conviction, the court rejected the state's claim of invited error because "[t]he record [did] not reflect which party proposed the stipulation and therefore served as the source of the alleged error." *Thues*, 203 Ariz. at 340 ¶ 4 n.2.

¶17        Here, the court of appeals equated the terms of a plea agreement with a joint evidentiary or instructional stipulation and concluded that the source of an erroneous joint stipulation is irrelevant for purposes of invited error analysis. *See Robertson*, 246 Ariz. at 440 ¶ 15. But the court's conclusion conflicts with *Lucero* and *Thues*. *See Lucero*, 223 Ariz. at 136 ¶ 19 ("[T]he doctrine requires an affirmative invitation of the error by the party now raising the challenge rather than passive acquiescence to it." (quoting 8 Arizona Practice § 29:7 (2008–2009 ed.))); *Thues*, 203 Ariz. at 340 ¶ 4 n.2 ("The record does not reflect which party proposed the stipulation and therefore served as the source of the alleged error."). Yet, the court dismissed those rulings, reasoning that *Lucero* and *Thues* misread *Logan*, and asserting that "neither *Logan* nor other cases from our supreme court support the proposition that only the initial party to propose the stipulation is subject to invited-error analysis." *See Robertson*, 246 Ariz. at 440–41 ¶ 15.

¶18        We reject the court of appeals' interpretation of *Logan*, *Lucero*, and *Thues* and reiterate that courts may apply the invited error doctrine only if the party asserting the error is the source of the error. To hold otherwise would contravene *Logan*'s clear directive. *See Logan*, 200 Ariz. at 566 ¶ 11 (holding the court must look to the "source of the error, which *must* be the party urging the error" (emphasis added)); *Escalante*, 245 Ariz. at 145 ¶ 38 ("'Invited error' occurs when the [appealing party] is the source of that error."). Although the party urging the error need not always be "the initial party to propose" it, the record must be clear that the party urging the error engaged in affirmative, independent action to create the error or argue in favor of it. *See, e.g., State v. Pandeli*, 215 Ariz. 514, 528 ¶¶ 48–50 (2007) (finding that defendant invited error where he responded to judge's question about why prosecution witness' testimony was admissible and then proffered reasons to the court supporting his conclusion).

6

¶19        The court of appeals cited *State v. Parker*, 231 Ariz. 391 (2013), in support of the propriety of applying the invited error doctrine to situations "where an error results from stipulations in a voluntary plea agreement." *Robertson*, 246 Ariz. at 441 ¶ 16. In *Parker*, the defendant stipulated to admission of his videotaped interviews with police. 231 Ariz. at 405 ¶ 61. We held that the defendant's stipulation "preclude[d] him from asserting on appeal that their admission was error" without discussing whether the state or the defendant was the source of the stipulation. *Id.* Thus, the court of appeals reasoned that *Parker* supported its conclusion that there is no need to inquire as to who proposed the stipulations in the agreement because they reflected "the final product of compromises arrived at after off-the-record negotiations among the parties." *Robertson*, 246 Ariz. at 441 ¶ 16.

¶20        Although *Parker* may invite confusion on this point, we disagree that it permits application of the invited error doctrine to stipulated plea agreements without determining the source of the error. It is true that *Parker* held that the defendant's stipulation to admit a videotape at trial precluded him from claiming error on appeal, and mentioned invited error, but it did not include any discussion of the invited error doctrine. *See Parker*, 231 Ariz. at 406 ¶ 61. Further, *Parker* proceeded to conduct fundamental error analysis and find that any error in admitting the videotape was not fundamental, which is wholly inconsistent with the invited error doctrine and diminishes its precedential value on this point. *Id.; cf. Escalante*, 245 Ariz. at 145 ¶ 38 (noting that the invited error doctrine precludes appellate relief even when error is fundamental and prejudicial).

¶21        Thus, in the context of stipulated plea agreements, the invited error doctrine should apply only where "the party took independent affirmative unequivocal action to initiate the error [or actively defended the error] and did not merely fail to object to the error or merely acquiesce in it." *Lucero*, 223 Ariz. at 136 ¶ 21. Because a stipulated plea agreement is a compromise between the state and the defendant, where both parties are involved in creating and agreeing to the terms, it must be clear from the record that the defendant not only agreed to the error but either initiated it or actively defended it. We note, however, given the unequal bargaining power between the state and a defendant, the latter is usually in no position to dictate that specific terms be included in plea agreements. *See, e.g., Coy v. Fields*, 200 Ariz. 442, 446 ¶ 12 (App. 2001) ("The State is generally in the better position to know the correct law . . . and the State must be deemed to know the law it is enforcing." (quoting *State v. Patience*, 944 P.2d 381, 387–88 (Utah App. 1997))).

7

STATE v. ROBERTSON
Opinion of the Court

### III.

¶22      The court of appeals' opinion is also inconsistent with Arizona law concerning illegal sentences. Although the invited error doctrine may apply to stipulated plea agreements in limited circumstances, a court cannot apply the invited error doctrine to prevent review of a potentially illegal sentence stemming from a stipulated plea agreement. To do so would confer on the courts authority to impose an illegal sentence in contravention of Arizona cases and statutory law.

¶23      Arizona Revised Statute § 13-4037(A) provides that trial courts lack authority to impose an illegal sentence:

> Upon an appeal by the defendant either from a judgment of conviction or from sentence, if an illegal sentence has been imposed upon a lawful verdict or finding of guilty by the trial court, the supreme court shall correct the sentence to correspond to the verdict or finding. The sentence as corrected shall be enforced by the court from which the appeal was taken.

The statute expressly requires this Court to correct an illegal sentence and its terms do not exempt sentences imposed pursuant to stipulated plea agreements.

¶24      The prohibition on illegal sentences is well-settled. In *Coy*, the court of appeals held that a defendant may challenge an illegal sentence even if the plea agreement expressly authorized it. 200 Ariz. at 444 ¶ 6. Although principles of contract law typically govern plea agreements, the court determined that where the sentence exceeded the authority authorized by the law, the "judge breached the law, not the plea agreement." *Id.* at 445 ¶ 10. The court also noted that, because the state is in control of the plea terms, it "bears the risk" of mistake should the plea result in an illegal sentence. *Id.* at 446 ¶ 13.

¶25      More recently, in *State ex rel. Polk v. Hancock*, we held that, regardless of a defendant's agreement to a term, the state may not authorize an illegal condition in a plea agreement, nor may a court enforce an illegal provision, because "parties cannot confer authority on the court that the law proscribes." 237 Ariz. 125, 129 ¶ 10 (2015). We further determined that the state may not rescind a plea agreement because an illegal term is excised from the agreement. *Id.* at 131 ¶ 22; *see State v. Kinslow*, 165 Ariz. 503, 507 (1990) ("The sentencing provisions enacted by our legislature are mandatory and may not be circumvented by agreements between prosecutors and defendants."); *In re Webb*, 150

8

STATE v. ROBERTSON
Opinion of the Court

Ariz. 293, 294 (1986) ("Courts have power to impose sentences only as authorized by statute and within the limits set by the legislature.").

¶26        The court of appeals on remand in *Regenold* also recognized this principle. The court ruled in Regenold's favor on the merits and ordered that the trial court vacate his sentence and resentence him under the proper range. *Regenold II*, 227 Ariz. at 226–27 ¶ 9. There, the court rejected the state's argument that Regenold "should not be allowed to challenge the legality of a sentence entered in accordance with a plea agreement he voluntarily signed," reasoning that it is impermissible to "allow the superior court to impose an illegal sentence, even if the defendant has agreed to it." *Id.* at 226 ¶ 8.

¶27        Arizona law uniformly prohibits illegal sentences, but we note that other jurisdictions also recognize this prohibition, even when the defendant expressly agreed to the sentence in a plea agreement. *See, e.g., State v. Phelps*, 57 P.3d 624, 628 (Wash. App. 2002) (refusing to apply the invited error doctrine to a sentence where "the sentencing court exceeded its statutory authority"); *State v. Misquadace*, 644 N.W.2d 65, 71 (Minn. 2002) (only allowing a plea agreement to depart from sentencing guidelines in a small number of cases where "substantial and compelling circumstances exist").

¶28        Thus, if Robertson's sentence violates § 13-116, it is an illegal sentence that must be corrected—regardless of whether she invited the error. *See Polk*, 237 Ariz. at 129 ¶ 13 ("The state and a defendant 'may negotiate concerning, and reach an agreement on, any aspect of the case,' Ariz. R. Crim. P. 17.4(a), except as limited by public policy or the law.")

IV.

¶29        Finally, we note that our recent opinion in *Chaparro v. Shinn*, 248 Ariz. 138 (2020), is inapplicable here. In *Chaparro*, the trial court sentenced the defendant to prison for life without the possibility of parole for twenty-five years despite a statutory prohibition on parole for Chaparro's crime of conviction. *Id.* at 140 ¶ 3. The state did not appeal Chaparro's illegal sentence. *Id.* After serving twenty-four years of his sentence and being notified of his parole ineligibility, Chaparro sought relief in federal court to enforce his illegal sentence. *Id.* ¶ 5. On special action to this Court, the state argued that the sentence was illegal and unenforceable. *Id.* ¶ 7. We rejected the state's argument because, absent an appeal by the state, we lacked jurisdiction to correct the illegal sentence. *Id.* at 142 ¶ 19. We also concluded that the sentence could not be collaterally attacked on its face because "the 'order [was] voidable, rather than void.'" *Id.* ¶ 22 (quoting Ariz. Const. art. 6, § 14). Here, unlike in *Chaparro*, the court of appeals has

9

STATE v. ROBERTSON
Opinion of the Court

jurisdiction to consider Robertson's appeal and, if it determines that her sentence violates § 13-116, to correct her illegal sentence.

## CONCLUSION

¶30        We vacate the holding of the court of appeals' opinion and remand to that court to consider the merits of Robertson's appeal concerning the legality of her sentence under § 13-116 in the first instance.

10

MOTION FOR
STAY

U.S. District Court

DISTRICT OF ARIZONA

Notice of Electronic Filing

The following transaction was entered on 2/28/2024 at 3:32 PM MST and filed on 2/26/2024

Case Name:    Longhini #335286 v. Thornell

Case Number:   2:24-cv-00402-DJH--CDB

Filer:    Ernest Joseph Longhini, III

Document Number:     1

Docket Text:

PETITION for Writ of Habeas Corpus (State/2254) (Motion for Stay of Extension of Time) filed by Ernest Joseph Longhini, III (25 pages).(DXD)


2:24-cv-00402-DJH--CDB Notice has been electronically mailed to:


.

Ernest Joseph Longhini, III &nbsp &nbsp Lewis_Barchey_Red_scanner@azcorrections.gov


2:24-cv-00402-DJH--CDB Notice will be sent by other means to those listed below if they are affected by this filing:

The following document(s) are associated with this transaction:


Document description:Main Document

Original filename:n/a

Electronic document Stamp:

[STAMP dcecfStamp_ID=1096393563 [Date=2/28/2024] [FileNumber=25615081-

0] [6ace1d19936618cd809b2c7350ae6dd86ba0f22ef7c246b86a798d360229333869

0994f2756076d3c14e2c229952d5bb243908ac8b09ebf3cafe13d92aed87f5]]

☒ FILED    ☐ LODGED

**FEB 26 2024**

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

Ernest Joseph Longhini, III (ADC#:335286)

A.S.P.C. Lewis-Barchey

P.O. Box 70

Buckeye, AZ 85326

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

ERNEST JOSEPH LONGHINI, III,

   Petitioner,

vs.

RYAN THORNELL, et al.,

   Respondents,

Case No. CV-24-402-PHX-DJH (CDB)

MOTION FOR STAY

OR EXTENSION OF TIME

  Now comes the Petitioner, Ernest Longhini, in prasrie persona, who humbly requests that this court grant his Motion for Stay in regards to his AEDPA filing deadline. This motion is supported by the following memorandum of points and authorities. Or, if it is warranted, a 90-day extension of time is requested.

1 of 5

## MEMORANDUM OF POINTS

On April 7TH, 2023, Petitioner's AEDPA timeline began to toll (Ex. A). On November 7TH, 2023, Petitioner was involuntarily moved to Bacchey Unit, in Buckeye, AZ, from Cook Unit, in Florence, AZ. Within 60 days of having been moved from one Unit to the other, Petitioner discovered that witness interview DVD's from his criminal case were not transferred to his new Unit and began the grievance resolution process on January 4TH, 2024. Said ESI (electronically stored information) had been in the custody and control of the Cook Unit Librarian for years, as Petitioner was not allowed to retain them himself.

Petitioner has been diligently and competently attempting to resolve this issue through his prisons' institutional procedures to no current avail (Ex. B). Push back from prison staff can be evinced in their having left his grievance on this critical matter "Unprocessed." However, Petitioner is taking every step possible and necessary to resolve this matter, including contacting the ADCRR Director, personally (Ex. C), the Maricopa County Attorney's Office (Ex. D), his trial counsel Brian G. DiPietro (Ex. E), and his post-conviction relief counsel Anders V. Rosenquist, Esq. (Ex. F), too.

## MEMORANDUM OF AUTHORITIES

### I. Necessitation of Stay.

While the full range of stay-and-abeyance circumstances are not yet clear (Heleva v. Brooks, 581 F.3d 187, 192 (3rd Cir. 2009)), due diligence on the part of the Petitioner is a clear prong in warranting a Stay. The ultimate question of whether a Petitioner exercised due diligence is one of fact which will be set aside only if it is clearly erroneous (Wilson v. Beard, 426 F.3d 653, 660 (3rd Cir. 2005)). Here Petitioner is pursuing multiple avenues to reassemble evidence vital to his case, while also alerting this court to issues at hand well before the end of his timeline. (See Valverde v. Stinson, 224 F.3d 129, 134 (2nd Cir. 2000); discussing the link between reasonable diligence and extraordinary circumstances.) Consequently, Petitioner contends that he has met the diligence prong for receiving a Stay.

In Menominee Indian Tribe of Wisconsin v. United States, 577 U.S. 250, 257 (2016), the Supreme Court held that "where the circumstances that caused a litigant's delay are both extraordinary and beyond [his/her] control" the extraordinary prong is met. Here Petitioner was never in custody or control of evidence vital to his case (except when viewing them in the prison library) and the failure of officers to transfer materials under their control to the custody of a new prison unit's library is an extraordinary circumstance. (See Calderon v. United States District Court, 128 F.3d 1283, 1288-89 (9th Cir. 1998): Discussing how "extraordinary circum stances' beyond a prisoners control mak[ing] it impossible to file a petition on time" may warrant equitable tolling.) The extraordinary actions of officers have left Petitioner devoid of materials critical to his future petition (Crane v. Kentucky, 476 U.S. 683, 690 (1986): The "opportunity to present a complete defense" would be an empty one if the state were permitted to exclude competent, reliable evidence.), leaving Petitioner scrambling to retrieve them through any means necessary, and all while having to compile his pro-se federal Petition for a Writ of Habeas Corpus in a timely fashion. As such, Petitioner contends that his situation meets both the 'extraordinary circumstances' and 'beyond control' prongs of the Menominee decision.

II. Value of Materials Lost by State.

In Clark v. Oklahoma, 468 F.3d 711, 714 (10th Cir. 2006), the Tenth Circuit Court of Appeals reasoned that in order for equitable tolling to apply to a petitioner seeking such stay-like relief from the court, Petitioner must show that the lack of such records arises to the level of a state imposed impediment and that he has been diligent in the pursuit of his claim. As diligence has already been established, the prong of 'state imposed impediment' must now be shown.

Petitioner is in the care, custody, and control of the Arizona Department of

3 of 5

Corrections, Rehabilitation, and Reentry (ADCRR). Simultaneously, Petitioner's evidentiary DVD's have also been in the care, custody, and control of the ADCRR, without ever being in Petitioner's possession, aside from times he would view them in the prison library. As the ADCRR is a branch of the government (State), that has impeded Petitioner by their continuous retention of materials critical to his case (as a matter of practice), and their failure to transfer such materials with Petitioner when they moved him, it is hard to see how Petitioner wasn't impeded from access to his legal materials, even before the ADCRR lost them. (See United States v. Loud Hawk, 628 F.2d 1139 (9TH Cir. 1979): Discussing a framework for evaluating government conduct in regards to lost or destroyed evidence, and factors relevant to prejudice of the petitioner.) As such, Petitioner contends that the practice of keeping his legal materials away from him in what amounts to scalable perpetuity, not only reaches the level of 'state imposed impedement, but also amounts to a ticking time bomb set to go off in situations just like these.

## III. Warranting Equitable Tolling.

In Fisher v. Johnson, 174 F.3d 710, 713 (5TH Cir. 1999), the court stated that equitable tolling is 'a discretionary doctrine that turns on the facts and the circumstances of a particular case." It "does not lend itself to bright-blue rules, but we draw on general principles to guide when equitable tolling is appropriate." And "we [are] cautious not to apply the statute of limitations too harshly. As such, and for all of the aforementioned reasons above, Petitioner contends that his sitution warrants the equitable tolling of a Stay. (See Mena v. Long, 813 F.3d 907, 910 (9TH Cir. 2016): "AEDPA does not elliminate district courts' authority to issue stays in habeas proceedings.)

4 of 5

## PRAYER FOR RELIEF

For these reasons, Petitioner respectfully asks that the court grant his request for a Stay, so that he may continue pursuing the recovery of evidence vital to his case, as no prior application for this relief has been requested, and this Motion for Stay is made in good faith — not for purposes of delay. If warranted, a 90-day extension of time is also requested.

The Court's consideration in this matter is deeply appreciated.

Respectfully submitted on February 26, 2024.

By _Ernest Longhini_

Ernest Joseph Longhini, III (ADC#:335286)

5 of 5

EXHIBIT A



# Supreme Court

**STATE OF ARIZONA**

ROBERT BRUTINEL.
Chief Justice

ARIZONA STATE COURTS BUILDING
1501 WEST WASHINGTON STREET, SUITE 402
PHOENIX, ARIZONA 85007
TELEPHONE: (602) 452-3396

TRACIE K. LINDEMAN
Clerk of the Court

April 10, 2023

**RE:** **STATE OF ARIZONA v ERNEST JOSEPH LONGHINI III**
Arizona Supreme Court No. CR-23-0016-PR
Court of Appeals, Division One No. 1 CA-CR 22-0089 PRPC
Maricopa County Superior Court No. CR2016-000667-001

GREETINGS:

The following action was taken by the Supreme Court of the State
of Arizona on April 7, 2023, in regard to the above-referenced
cause:

**ORDERED: Petition for Review = DENIED.**

**Justice Montgomery did not participate in the determination of
this matter.**

Tracie K. Lindeman, Clerk

TO:
Alice Jones
Daniel Strange
Anders V Rosenquist Jr
Amy M Wood
jd

EXHIBIT  B

**Arizona Department of Corrections**
**Rehabilitation and Reentry**
**Inmate Letter**

Requests are limited to one page and one issue   NO ATTACHMENTS PERMITTED     Please print all information

6B-14L

| INMATE NAME (Last First M.I.) (Please print) | ADC NUMBER | INSTITUTION/UNIT | DATE (mm/dd/yyyy) |
|---|---|---|---|
| LONGHINI, ERNEST J. | 335286 | LEWIS - BARCHEY | 1/4/2024 |

TO

T. Dixon, Librarian

LOCATION

Cook Unit Library @ Eyman Complex

State briefly but completely the problem on which you desire assistance. Provide as many details as possible.

Dear Ms. Dixon,

It's been almost two months since I left Cook Unit and our librarian still has not been forwarded the interview DVD's in your possession for my criminal case. Can you please send them on to him now? There are 3 or 4 of them.

Thank you.

Sincerely,

INMATE SIGNATURE
Ernest Longhini

DATE (mm/dd/yyyy)
1/4/2024

Have you addressed this with Department staff?     ☐ Yes  ☐ No

If yes, give the staff member's name and the date you addressed with them

_____      _____
(Staff Member's Name) (Please print)          (Date addressed)

*Note: Using profanity, insulting, obscene, or abusive language and/or addressing staff with inappropriate names or making inappropriate remarks in this written correspondence (or verbal communication to staff concerning this correspondence), will not be tolerated and may result in no response to the correspondence and/or discipline pursuant to Department Order 803, Inmate Disciplinary Procedure*

Distributed:   Original – Master File                                    916-1

**Arizona Department of Corrections**
**Rehabilitation and Reentry**

**Inmate Informal Complaint Resolution**

Complaints are limited to one page and one issue.

Please print all information.

IVr.C #2069 C03
1/30/24

6B-14L

| INMATE PRINTED NAME (Last, First M.I.) | ADCRR NUMBER | INSTITUTION/UNIT | DATE (mm/dd/yyyy) |
|---|---|---|---|
| LONGHINI, ERNEST J. | 335286 | LEWIS-BARCHEY | 1/30/2024 |

| TO | LOCATION |
|---|---|
| T. Dixon, Librarian | Cook Unit Library @ Eyman Complex |

State briefly but completely the problem on which you desire assistance. Provide as many details as possible.

I WAITED THE APPROPRIATE AMOUNT OF TIME FOR A RESPONSE TO MY INMATE LETTER AND HAVE YET TO RECEIVE ONE (SEE ATTACHED).
WHEN I LEFT COOK UNIT, 3 OR 4 DVD's OF WITNESS INTERVIEWS IN MY CRIMINAL CASE WERE IN THE LIBRARIANS POSESSION, AS I WAS TOLD YEARS AGO THAT I WAS NOT ALLOWED TO HAVE THEM AND COULD ONLY REVIEW THEM IN THE LIBRARY.
HOWEVER, IT IS COMING UP ON 3 MONTHS SINCE I LEFT COOK UNIT AND OUR LIBRARIAN HERE (MR. HAMILTON) HAS ASSURED ME THAT THEY HAVE NOT BEEN FORWARDED TO HIM.
MY FEDERAL HABEAS CORPUS FILING DEADLINE IS APRIL 10TH, AND DUE TO RECENT CHANGES IN ARIZONA LAW, I WILL NEED SAID INTERVIEWS FOR TRANSCRIPTION WELL BEFORE THAT TIME.
AS SUCH, MY PROPOSED RESOLUTION IS TO FIND THE DVD's IN THE LIBRARIANS POSESSION AND HAVE THEM SENT TO ME IMMEDIATELY.
THANK YOU.

Sincerely,

| INMATE SIGNATURE | DATE (mm/dd/yyyy) |
|---|---|
| Ernest Longhini | 1/30/2024 |

Have you discussed this with institution staff?   ☒ Yes   ☐ No

If yes, give the staff member name: HAMILTON, Librarian

Distribution:  INITIAL: White and Canary or Copies – Grievance Coordinator; Pink or Copy – Inmate
FINAL: White – Inmate; Canary – Grievance Coordinator File

802-11
11/16/21

**Arizona Department of Corrections, Rehabilitation & Reentry**

Grievance Details



# Inmate Grievance/Informal Response Notice
## Non-Medical

Inmate Name: ERNEST LONGHINI

Prison/Unit: LEWIS/LEWIS BARCHEY

ADC#: 335286

Bldg/Bed: L72 D-6B14L

## Case #:24-068566

### Informal Complaint

Type: Informal Response

Date Received: 02/01/2024 07:49 PM

Response Author: POMERANTZ, CRYSTAL M

Responded On: 02/21/2024 10:48:58 AM

Decision:

### Case Details

Case Number: 24-068566

Grievance Status: Unprocessed

### Case Data

Prison of Complaint: LEWIS

Unit of Complaint: LEWIS BARCHEY

Opened Date: 02/01/2024 07:49 PM

Grievance Stage: Informal Answered

Grievance Category: Property

### Informal Grievance Response

Grievance Date: 01/30/2024 12:00:00 AM

Issue: Legal CD's

Response Due: 02/23/2024 07:49 PM

Responder: POMERANTZ, CRYSTAL M

Response: This is being unprocessed as being past time frames. Per DO 802 you have 10 days from the date of incident to file an /informal complaint. You arrived at the Barchey unit on 11/7/2023 and received your property on the same day. You waited until 1/30/2024 to file your informal complaint regarding your legal CD's this is well past your 10 day time frame.

☑ Unprocessed

Reason(s) not processed:
Past the time frame

Officer's Name: CRYSTAL POMERANTZ

Notice:  If you are dissatisfied with the Informal Complaint Response, you may file a formal grievance (form 802-1 Inmate Grievance, and/or form 802-7 GF Supplement) within five (5) workdays from receipt of the above response to the Grievance Coordinator by:
• Placing a single complaint on a single inmate Grievance form.

  NOTE:  If multiple unrelated issues are on a single form or if a duplicate complaint is filed, the grievance shall be rejected and returned unprocessed.

**Arizona Department of Corrections**
**Rehabilitation and Reentry**

**Inmate Grievance**

NOTE: You may appeal the Grievance Coordinator's decision by filing form 802-3 within 10 calendar days of receipt of this notice.

**RECEIVED BY** InC

**TITLE** CO3

**BADGE NUMBER** 21101

**DATE (mm/dd/yyyy)** 2/28/24

| INMATE NAME (Last First M.I.) (Please print) | ADC NUMBER | DATE (mm/dd/yyyy) |
|---|---|---|
| LORIGIANZ, ERNEST J | 335286 | 2/23/2024 |

| INSTITUTION/UNIT | CASE NUMBER |
|---|---|
| LEWIS/BACHNY | 24-068566 |

TO: GRIEVANCE COORDINATOR

**Description of Grievance** (to be completed by the inmate)

MY INFORMAL COMPLAINT RESOLUTION WAS LEFT UNPROCESSED AND SHOULD HAVE BEEN FOR THE FOLLOWING REASONS.

DO 802 § 1.5.1.5 STATES THAT "EXTENUATING CIRCUMSTANCES" MAY ALLOW FOR THE UNTIMELY FILING OF AN INFORMAL COMPLAINT. § 1.2.2 STATES THAT "THE INFORMAL COMPLAINT MUST BE SUBMITTED WITHIN 10 WORKDAYS FROM THE DATE OF THE ACTION THAT CAUSED THE COMPLAINT."

AS I WAS ONLY MADE AWARE ON 1/4/24 THAT LEGAL DAYS NOT HAVING EVER BEEN UNDER MY CARE, CUSTODY OR CONTROL AT COOK UNIT HAD NOT BEEN TRANSFERRED WITH ME TO BACHNY UNIT - AS IS NOT MY RESPONSIBILITY TO FACILITATE SAID OFFICERS AT COOK UNIT WOULD HAVE NEVER ALLOWED. (CONTINUED ON SUPPLEMENT)

**Proposed Resolution** (What informal attempts have been made to resolve the problem? What action(s) would resolve the problem?)

MY SUGGESTED RESOLUTION IS TO PROCESS MY ORIGINAL INFORMAL COMPLAINT IN AN EXPEDITED MANNER AND ENSURE MY LEGAL DOCS ARE TRANSFERRED HERE FROM YDR UNIT.

THANK YOU

| INMATE'S SIGNATURE | DATE (mm/dd/yyyy) | GRIEVANCE COORDINATOR'S SIGNATURE | DATE (mm/dd/yyyy) |
|---|---|---|---|
| Ernest Longh | 2/23/2024 | | |

Action taken by _____    Documentation of Resolution or Attempts at Resolution.

| STAFF MEMBER'S SIGNATURE | BADGE NUMBER | DATE (mm/dd/yyyy) |
|---|---|---|
| | | |

**ARIZONA DEPARTMENT OF CORRECTIONS**

2 of 2

**Inmate Grievance – GF Supplement**

| INMATE'S NAME (Last, First M.I.) (Please print) | ADC NUMBER | INSTITUTION/FACILITY | CASE NUMBER |
|---|---|---|---|
| LONGHINI, EARNEST J. | 335286 | LEWIS-BARCHEY | 24-068566 |

ME TO RETAIN THEM IN THE FIRST PLACE – THE "DATE OF ACTION" CAUSING MY COMPLAINT SHOULD BE FROM WITHIN 10 DAYS OF THE ~~EX~~ EXPIRATION OF MY INMATE LETTER ATTEMPT TO RESOLVE THE ISSUE (i.e. FEBRUARY 7th). CONSEQUENTLY, D.O. 1104 § 4.5.1 STATES THAT WHEN MEDICAL RECORDS ARE TRANSFERRED, STAFF SHALL "VERIFY RECEIPT OF THE INMATES MEDICAL INFORMATION FROM THE SENDING INSTITUTION/FACILITY" SUCH IS ALSO LIKELY THE CASE FOR OTHER INSTITUTIONAL RECORDS (e.g. PROPERTY OR DISCIPLINARY) WARRANTING SIMILAR PROTECTIONS FOR LEGAL MATERIALS ALSO NOT ALLOWED FOR MY OWN RETENTION.

IN MENOMINEE INDIAN TRIBE OF WISCONSIN v. UNITED STATES 557 U.S. 280, 297 (2016), THE SUPREME COURT OF THE UNITED STATES HELD THAT "WHERE THE CIRCUMSTANCES THAT CAUSED A LITIGANTS DELAY ARE BOTH EXTRAORDINARY AND BEYOND HIS OR HER CONTROL" EQUITABLE TOLLING IS WARRANTED. AS SUCH, THE EXTRAORDINARY CIRCUMSTANCES OF COOK UNIT STAFF NOT FOLLOWING APPROPRIATE RECORDS TRANSFER PROCEDURES, COUPLED WITH SUCH SPECIFIC RESPONSIBILITIES AND THE RECORDS IN QUESTION BEING OUT OF MY CONTROL AMOUNTS TO THE "EXTENUATING CIRCUMSTANCES" PROMULGATED IN D.O. 802 § 1.3.1.5.

| SIGNATURE | DATE (mm/dd/yyyy) |
|---|---|
| Earnest Longhini | 2/23/2024 |

INITIAL DISTRIBUTION:   GF Supplement – White and Canary or Copies - Grievance Coordinator
Pink, or Copy - Inmate

FINAL DISTRIBUTION:   White or Copy – Inmate
Canary or Copy – Grievance File

802-7
12/12/13



**Arizona Department of Corrections Rehabilitation and Reentry**

**Inmate Informal Complaint Resolution**

Complaints are limited to one page and one issue

Please print all information.   #11607

6B-14L      mejeer, nm. COI

| INMATE PRINTED NAME (Last, First M.I.) | ADCRR NUMBER | INSTITUTION/UNIT | DATE (mm/dd/yyyy) |
|---|---|---|---|
| LONGHINI, ERNEST J. | 335286 | LEWIS-BARCHEY | 2/26/2024 |

TO
COIV Pomerantz

LOCATION
Barchey Unit

State briefly but completely the problem on which you desire assistance. Provide as many details as possible.

ON FRIDAY, FEBRUARY 23, LIBRARIAN HAMILTON INFORMED ME THAT HE HAD RECEIVED AN EMAIL FROM COOK UNIT LIBRARIAN T. DIXON STATING THAT SHE DID NOT HAVE ANY WITNESS INTERVIEW DVD's FROM MY CRIMINAL CASE IN HER POSESSION, AS IT WAS HER RESPONS-IBILITY TO INSURE THAT THEY EITHER WENT WITH ME WHEN I MOVED (WHICH THEY DIDN'T), OR WERE TRANSPORTED VIA APPROPRIATE INSTITUTIONAL CHANNELS (WHICH THEY WEREN'T). I AM GRIEVING THE FACT THAT CRITICAL LEGAL MATERIALS THAT WERE IN THE CUSTODY OF THE LIBRARIAN ARE NOW LOST.

THIS ISSUE CONSTITUTES A SEPERATE CAUSE OF ACTION APART FROM MY GRIEVANCE IN CASE #24-068566 FOR TWO REASONS. ONE, THAT THE EMAIL TO LIBRARIAN HAMILTON WAS ONLY RECEIVED ON THE ABOVE MENTIONED DATE, INITIATING MY 10-DAY TIMELINE UNDER D.O. 802 § 2.2, AND THAT IN MY PRIOR GRIEVANCE THE DISCS IN QUESTION MAY HAVE BEEN IN HER POSESSION, BUT NOW THEY ARE DEFINATELY NOT. AS SUCH, THIS CAUSE OF ACTION IS NEW AND BEGS THEIR REPLACEMENT FROM HAVING BEEN DEF-INITIVELY LOST, WHILE THE OTHER WAS STILL UNDER A FALSE IMPRESSION ABOUT THEIR LOCATION AND THE LIBRARIANS ABILITY TO FIND THEM.

MY PROPOSED RESOLUTION IS TO FIND MY WITNESS INTERVIEW DVD's, WHEREVER THEY ARE BETWEEN EYMAN COMPLEX AND LEWIS COMPLEX, AND/OR REPLACE THEM AS THEY APPEAR TO BE LOST.

THANK YOU.

| INMATE SIGNATURE | DATE (mm/dd/yyyy) |
|---|---|
| Ernest Longhini | 2/26/2024 |

Have you discussed this with institution staff?    ☒ Yes    ☐ No

If yes, give the staff member name: Librarian Hamilton

Distribution    INITIAL   White and Canary or Copies   Grievance Coordinator, Pink or Copy – Inmate
FINAL   White – Inmate; Canary – Grievance Coordinator File

802-11
11/16/21

EXHIBIT C

**Arizona Department of Corrections**
**Rehabilitation and Reentry**
**Inmate Letter**

Requests are limited to one page and one issue. NO ATTACHMENTS PERMITTED. Please print all information.

6B-14L

| INMATE NAME (Last, First M I) (Please print) | ADC NUMBER | INSTITUTION/UNIT | DATE (mm/dd/yyyy) |
|---|---|---|---|
| LONGHINI, ERNEST J. | 335286 | LEWIS-BARCHEY | 2/26/2024 |

TO
Director Ryan Thornell

LOCATION
Central Office

State briefly but completely the problem on which you desire assistance. Provide as many details as possible.

Re: Lost, misplaced, or destroyed DVD's from Case # CR2016-000667-001.

Dear Director Thornell,

Attached to this Inmate Letter is a copy of a letter I've sent to you at Central Office, via Certified Return Recipt USPS mail. In it I describe the troubling issues I'm having while trying to track down legal materials that should have come with me when I was moved from Cook Unit, as part of the mass-moves that took place in October and November of 2023. I have also included copies of my multiple attempts to resolve this through the grievance process, letters to my attorneys and the MCAO trying to obtain new copies of the evidence in question, and a Motion for Stay to the district Court as I try to resolve this matter in time to file my Federal Habeas Courpus petition.

Please review the attached materials and get back to me as soon as possible.

Thank you.

Sincerely,

| INMATE SIGNATURE Ernest Longhini | DATE (mm/dd/yyyy) 2/26/2024 |
|---|---|

Have you addressed this with Department staff?   ☒ Yes ☐ No

If yes, give the staff member's name and the date you addressed with them:

Librarian Hamilton; COIV Pomerantz      2/23/24 ; 1/30/24
(Staff Member's Name) (Please print)          (Date addressed)

Note: Using profanity, insulting, obscene, or abusive language and/or addressing staff with inappropriate names or making inappropriate remarks in this written correspondence (or verbal communication to staff concerning this correspondence), will not be tolerated and may result in no response to the correspondence and/or discipline pursuant to Department Order 803, Inmate Disciplinary Procedure.

Distribution   Original – Master File

916-1

Ernest Longhini #335286
ASPC Lewis - Barchey
P.O. Box 70
Buckeye, AZ 85326

2/26/2024

To: Director Ryan Thornell
Arizona Department of Corrections, Rehabilitation, and Reentry
701 E. Jefferson St.
Phoenix, AZ 85034

Re: Lost, misplaced, or destroyed DVD's from Case #: CR2016-000667-001.

Dear Director Thornell,

I am writing you directly to assist in my recovering of electronically stored information (ESI) in CD/DVD format, from witness interviews in criminal case # CR2016-000667-001, State v. Longhini.

These discs were sent in by my trial lawyer, Brian G. Silvestro, via First Class U.S. Mail. When they were received by Cook Unit Mail and Property, they were seized upon receipt by COII Velasco. After considerable efforts, they were then transferred to the custody of the Cook Unit Library (i.e. Majors Wilson then T. Dixon) where I viewed them multiple times.

On November 7TH, 2023, I was involuntarily transferred to Barchey Unit in Lewis Complex while said discs were still in the possession of the Cook Unit Librarian, T. Dixon. By January 4TH, 2024, after finally settling in, I discovered that they were not sent with me, as the Barchey Unit Librarian, Mr. Hamilton, informed me that he had yet to receive them. This is contrary to what I was told when I requested to take them with me from Cook Unit, as I was assured that they would go with me, by transport staff, when I directly asked the transferring officers to get my legal materials from the library.

1 of 3

When I found this out, I diligently and competently attempted to retrieve my legal documents through the exercise of ADCRR policies and procedures. As far as I can tell, however, there is no policy or procedure in place governing the transfer of legal materials retained by a Library or Librarian.

My exercise of the grievance procedure included the following:

1. An Inmate Letter sent to T. Sixon at the Cook Unit Library on 1/4/24 that was never responded to.

2. An Informal Complaint Resolution sent to T. Sixon on 1/30/24.

3. An unprocessed response to said Informal, received from COIV Pomerantz on 2/23/24, stating that I had exceeded my timeline.

4. My next level Grievance sent on 2/23/24.

5. That same Friday (2/23/24) our Librarian, Mr. Hamilton, said he received an email response from Mr. Sixon stating that she did not have the aforementioned discs.

6. On 2/26/24 I started a new round of grievance procedures with an informal stating how I was informed on Friday, February 23, that Ms. Sixon did not have my legal discs.

I need your personal involvement in assisting me in retrieving this critical and materially relevant ESI as soon as possible. I respectfully request that you instruct your senior in house counsel to contact the Eyman Complex Warden for assistance in finding these discs.

It is my position and belief that my discs should have never been in the sole possession of the Librarian to begin with. I am unaware of any policy allowing legal evidence to be stored in the library or the custody of the librarian, and it is well

2 of 3

documented that the Cook Unit Librarian (T. Dixon) has inserted herself in the legal storage process without authority or support from policy and procedure.

This is a time sensitive issue as my Federal Habeas AEDPA filing deadline is April 7th, 2024. I need an answer no later than 10 calendar days from the receipt of this letter, or at least a written acknowledgement from the ADCRR that this issue is being investigated so I can submit it to the District Court. And if the lost or misplaced discs can not be found, I'm requesting that you, Director Thornell, have the Maricopa County Attorney's Office replace the missing discs.

Attached are all of my grievance procedure attempts so far, request letters to my attorney and the MCAO, and a motion containing all of them as exhibits that I now must file in the District Court.

Thank you for your time. I look forward to your response.

Respectfully,

Ernest Longhini

Ernest Joseph Longhini, III, (ADC#335286

CC: Maricopa County Attorney's Office, Appellate Division
CC: United States District Court, District of Arizona
CC: Brian G. DiPietro
CC: Anders V. Rosenquist, Esq.

3 of 3

EXHIBIT D

Ernest Longhin #335286
ASPC Lewis - Barchey
P.O. Box 70
Buckeye, AZ 85326

2/26/2024

To: Maricopa County Attorney's Office
Appellate Division
301 W. Jefferson, 5TH Floor
Phoenix, AZ 85003

Re: The ADCRR's loss of my witness interview DVD's.

Dear MCAO Appellate Division,

Recently, during mass-moves in the Department of Corrections, the DVD's that contain all of my witness interviews were not transported with me and may now be lost.

Since I need these interviews for my Federal Petition for a Writ of Habeas Corpus, I am pursuing all available avenues to have them found or replaced. As such, I am reaching out to you, my trial attorney, my PCR attorney, and using the institutional grievance process to accomplish this as I also attempt to stay my petition in the District Court. Attached are are all of my letters and motions to the above mentioned parties, along with my letter to the director of the ADCRR, asking for his help as well.

If you have copies of these interviews available would you please send them to me as soon as possible? My Motion for Stay has this, as well as all other letters, attached to it to make my pursuit as effective as possible.

Thank you.

Sincerely,

Ernest Longhin

EXHIBIT E

Ernest Longhini #335286
ASPC Lewis-Barchey
P.O. Box 70
Buckeye, AZ 85326

2/26/2024

To: Brian G. DiPietro
301 W. Warner Rd.
Suite 133
Tempe, AZ 85284-2964

Re: The ASCRR's loss of my witness interview DVD's.

Dear Brian,

Recently, during mass-moves in the Department of Corrections, the DVD's you once sent me containing all of my witness interviews were not transported with me and may now be lost.

Since I need these interviews for my Federal Petition for a Writ of Habeas Corpus, I am pursuing all available avenues to have them found or replaced. As such, I am reaching out to you, my PCR attorney, the MCAO, and using the institutional grievance process to accomplish this as I also attempt to Stay my petition in the District Court. Attached are all of my letters and motions to the above mentioned parties, along with my letter to the director of the ASCRR, asking for his help as well.

If you have copies of these interviews available would you please send them to me as soon as possible? My Motion for Stay has this, as well as all other letters attached to it to make my pursuit as effective as possible.

Thank you.

Sincerely,

Ernest Longhini

EXHIBIT F

Ernest Longhini #335286
ASPC Lewis-Barclay
P.O. Box 70
Buckeye, AZ 85326

2/26/2024

TO: Anders V. Rosenquist, Esq.
42104 N. Venture Dr.
Suite A-122
Anthem, AZ 85086

Re: The ADCRR's loss of my witness interview DVD's.

Dear Anders,

Recently, during mass-moves in the Department of Corrections, the DVD's that contain all of my witness interviews were not transported with me and may now be lost.

Since I need these interviews for my Federal Petition for a Writ of Habeas Corpus, I am pursuing all available avenues to have them found or replaced. As such, I am reaching out to you, my trial attorney, the MCAO, and using the institutional grievance process to accomplish this as I also attempt to Stay my petition in the District Court. Attached are all of my letters and motions to the above mentioned parties, along with my letter to the director of the ADCRR, asking for his help as well.

If you have copies of these interviews available would you please send them to me as soon as possible? My Motion for Stay has this, as well as all other letters, attached to it to make my pursuit as effective as possible.

Thank you.

Sincerely,

Ernest Longhini

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ernest Joseph Longhini, III, | NO. CV-24-00402-PHX-DJH (CDB) |
| Petitioner, | |
| v. | JUDGMENT IN A CIVIL CASE |
| Ryan Thornell, | |
| Respondent. | |

**Decision by Court.** This action came for consideration before the Court. The issues have been considered and a decision has been rendered.

IT IS ORDERED AND ADJUDGED that pursuant to the Court's Order filed March 14, 2024, Petitioner's Motion for Stay or Extension of Time is denied. Petitioner to take nothing and this action is hereby dismissed without prejudice.

Debra D. Lucas
District Court Executive/Clerk of Court

March 14, 2024

s/ D. Draper
By    Deputy Clerk

MDR

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ernest Joseph Longhini, III, | No. CV-24-00402-PHX-DJH (CDB) |
| Petitioner, | **ORDER** |
| v. | |
| Ryan Thornell, | |
| Respondent. | |

Self-represented Petitioner Ernest Joseph Longhini, III, who is confined in the Arizona State Prison Complex-Lewis, filed a "Motion for Stay or Extension of Time" (Doc. 1) seeking a stay regarding "his AEDPA filing deadline" or an extension of time. The Court will deny Motion and will dismiss this matter without prejudice.

Petitioner's Motion is not accompanied by a petition for writ of habeas corpus and the Court is not able to construe it as a petition for writ of habeas corpus because the document is not accompanied by the statutory filing fee or an application to proceed in forma pauperis, is not filed on the court-approved form for filing a petition for writ of habeas corpus, does not specify any grounds for habeas corpus relief, and does not set forth any facts supporting any grounds for relief. *See* Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts; LRCiv 3.5. Also, Petitioner's Motion does not provide any information about his conviction, such as the name and location of the court that entered the judgment of conviction, the date of the judgment of conviction, the crime(s) for which he was convicted, or the length of his sentence(s).

The Court will deny the Motion and will dismiss this matter without prejudice. Because this matter is being dismissed without prejudice, Petitioner is not prevented by this Order from filing a petition for writ of habeas corpus, accompanied by either the statutory filing fee or an Application to Proceed In Forma Pauperis. As a courtesy to Petitioner, the Court will direct the Clerk of Court to send Petitioner the court-approved forms for filing a petition for writ of habeas corpus and an Application to Proceed In Forma Pauperis. **Petitioner may not, however, file those documents in this case; he must file a new case**.

Any future petition filed by Petitioner must be filed on the court-approved form and must: (1) name Petitioner's current custodian as a respondent; (2) show how Petitioner is being held in custody in violation of the Constitution, laws, or treaties of the United States; (3) specify all the exhausted grounds for relief available to Petitioner; (4) set forth in summary form the facts supporting each of his grounds; and (5) provide information as to how Petitioner has first exhausted his state court remedies as to each ground on which he requests action by this Court.

In the event the respondent in any future habeas action filed by Petitioner raises the one-year period of limitation in 28 U.S.C. § 2244(d) as an affirmative defense, Petitioner will be free to argue that his petition is subject to statutory or equitable tolling. *See* 28 U.S.C. § 2244(d)(2) ("[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection"); *see also Corjasso v. Ayers*, 278 F.3d 874, 877 (9th Cir. 2002) (section 2244(d) is subject to equitable tolling based on a showing of "exceptional circumstances" beyond the prisoner's control).

Petitioner should take note that before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). An Arizona petitioner sentenced to less than the death penalty may exhaust his federal claims by presenting them

in a procedurally proper way to the Arizona Court of Appeals on direct appeal and/or in post-conviction proceedings, without seeking discretionary review in the Arizona Supreme Court. *Crowell v. Knowles*, 483 F. Supp. 2d 925, 928-30, 933 (D. Ariz. 2007) (following 1989 statutory amendment, Arizona Court of Appeals has jurisdiction over criminal convictions involving less than a death sentence); *cf. Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999) (citing pre-1989 statute). To exhaust a claim, a petitioner must describe "both the operative facts and the federal legal theory on which his claim is based so that the state courts [could] have a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim." *Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005) (quoting *Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir. 2003), *overruled in part on other grounds by Robbins v. Carey*, 481 F.3d 1143 (9th Cir. 2007)). The failure to exhaust subjects the petition to dismissal. *See Gutierrez v. Griggs*, 695 F.2d 1195, 1197 (9th Cir. 1983).

**IT IS ORDERED:**

(1)     Petitioner's Motion for Stay or Extension of Time (Doc. 1) is **denied** and this action is **dismissed without prejudice**; the Clerk of Court must enter judgment accordingly and close this case.

(2)     Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, in the event Petitioner files an appeal, the Court declines to issue a certificate of appealability because reasonable jurists would not find the Court's procedural ruling debatable. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

- 3 -

(3)    The Clerk of Court must mail Petitioner the current court-approved form for filing a "Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Non-Death Penalty)" **and** the current court-approved form for filing an Application to Proceed In Forma Pauperis (Habeas).

Dated this 13th day of March, 2024.

Honorable Diane J. Humetewa
United States District Judge

- 4 -